UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,

                                        Plaintiff,

        -against-

NADIM AHMED a/k/a NADIM KHAN,
MEHREEN SHAH a/k/a MONA SHAH,
NURIDE TRANSPORTATION GROUP, LLC,
NYC GREEN TRANSPORTATION GROUP, LLC,
MED TRANS EB-5 FUND, LLC,
NYC EV MOBILITY LLC,
GRAVITAS NYC REGIONAL CENTER, LLC
 f/k/a NYC TRANSPORTATION REGIONAL
CENTER, LLC, and
MONA SHAH & ASSOCIATES, PLLC,

                                        Defendants.

1:23-cv-10210-VSB

**ORAL ARGUMENT
REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
BY DEFENDANTS NADIM AHMED A/K/A NADIM KHAN,
NURIDE TRANSPORTATION GROUP, LLC, NYC GREEN
TRANSPORTATION GROUP, LLC, AND NYC EV MOBILITY LLC**

**MORRISON COHEN LLP**

909 Third Avenue
New York, NY 10022
(212) 735-8600

*Attorneys for Defendants Nadim Ahmed
a/k/a Nadim Khan, NuRide Transportation
Group, LLC, NYC Green Transportation
Group, LLC, and NYC EV Mobility LLC*

**TABLE OF CONTENTS**

**Page(s)**

PRELIMINARY STATEMENT ...................................................................................................1

ALLEGATIONS IN SEC COMPLAINT...................................................................................5

    A.    Between 2014 and 2018, Ahmed and NuRide Allegedly Make Misrepresentations in Marketing Unregistered Investments in NYC Green.................................................... 5

    B.    Between 2018 and 2022, Ahmed and NuRide Allegedly Participate in Marketing Unregistered Investments in Med Trans and EV Mobility........................................... 8

    C.    The Claims Against Ahmed, NuRide, NYC Green, Med Trans, and EV Mobility...... 8

ARGUMENT ...............................................................................................................................9

    I.    MOST OF THE SEC'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS ..................................................................................................... 9

    A.    Five-Year Statute of Limitations Applies to Claims Under the Securities and Exchange Acts, Barring the SEC from Proceeding on Purported Misconduct Occurring Before November 21, 2018........................................................................ 10

    B.    The NDAA, which Amends the Statute of Limitations Applicable to the Availability of Disgorgement as a Remedy for Claims Under the Securities Law, Does Not Apply Retroactively ..................................................................................................... 12

    II.    THE SEC'S CLAIMS FAIL TO ASSERT FRAUD WITH PARTICULARITY...... 20

    III.    THE SEC'S CLAIM THAT THE NURIDE DEFENDANTS ENGAGED IN THE IMPROPER SALE OF UNREGISTERED SECURITIES IS DEFICIENT.............. 22

CONCLUSION.........................................................................................................................23

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adams v. Woods*,
   2 Cranch 336 (1805) ...........................................................................................4, 18

*Am. Pipe & Const. Co. v. Utah*,
   414 U.S. 538 (1974)...................................................................................................9

*Bowen v. Georgetown Univ. Hosp.*,
   488 U.S. 204 (1988)..................................................................................................12

*Cambridge Cap. LLC v. Ruby Has LLC*, 565 F. Supp. 3d 420, 461
   (S.D.N.Y. 2021)..................................................................................................19, 20

*Calderon v. U.S. Dist. Court for the Cent. Dist. of Cal.*,
   128 F.3d 1283 (9th Cir. 1997) .................................................................................14

*Defer LP v. Raymond James Fin., Inc.*,
   654 F. Supp. 2d 204 (S.D.N.Y. 2009).......................................................................20

*Domond v. I.N.S.*,
   244 F.3d 81 (2d Cir. 2001)..................................................................................12, 13

*In re Enter. Mortg. Acceptance Co., LLC Sec. Litig.*,
   391 F.3d 401 (2d Cir. 2010)............................................................................... *passim*

*Gabelli v. United States*,
   568 U.S. 442 (2013)......................................................................................10, 11, 18

*Hughes Aircraft Co. v. U.S. ex rel. Schumer*,
   520 U.S. 939 (1997)..................................................................................................15

*INS v. St. Cyr*,
   533 U.S. 289 (2001)..............................................................................................12, 13

*Kansas Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*,
   61 F.3d 608 (8th Cir. 1995) .....................................................................................13

*Kokesh v. SEC*,
   581 U.S. 455 (2017)..................................................................................................10

*Landgraf v. USI Film Products*,
   511 U.S. 244 (1994) .......................................................................................... *passim*

*Lieberman v. Cambridge Partners, L.L.C.*,
   432 F.3d 482 (3d Cir. 2005).....................................................................................14

*Martin v. Hadix*,
  527 U.S. 343 (1999)........................................................................................................17

*In re Merrill Lynch Auction Rate Sec. Litig.*,
  704 F. Supp. 2d 378 (S.D.N.Y. 2010)............................................................................20

*Million v. Frank*,
  47 F.3d 385 (10th Cir. 1995) ..........................................................................................14

*Railroad Telegraphers v. Railway Express Agency, Inc.*,
  321 U.S. 342 (1944)..........................................................................................................9

*Rivers v. Roadway Exp., Inc.*,
  511 U.S. 298 (1994)........................................................................................................17

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004)............................................................................................19

*SEC v. CMKM Diamonds, Inc.*,
  729 F.3d 1248 (9th Cir. 2013) ........................................................................................12

*SEC v. Cohen*,
  332 F. Supp. 3d 575 (E.D.N.Y. 2018) ............................................................................10

*SEC v. Fowler*,
  6 F.4th 255 (2d Cir. 2021) ..............................................................................................12

*SEC v. Gallison*,
  588 F. Supp. 3d 509 (S.D.N.Y. 2022).............................................................................12

*SEC v. Pentagon Capital Mgmt. PLC*,
  725 F.3d 279 (2d Cir. 2013).............................................................................................19

*SEC v. Sharp*,
  626 F. Supp. 3d 345 (D. Mass. 2022) ...................................................................16, 17, 18

*SEC v. Stubos*,
  634 F. Supp. 3d 174 (S.D.N.Y. 2022)....................................................................16, 17, 18

*SEC v. Wey*,
  246 F. Supp. 3d 894 (S.D.N.Y. 2017)....................................................................19, 20, 21

*SEC v. Xia*,
  No. 21-CV-5350 (PKC) (RER), 2022 WL 17539124 (E.D.N.Y. Dec. 8, 2022) .....................16

*Shields v. Citytrust Bancorp, Inc.*,
  25 F.3d 1124 (2d Cir. 1994)............................................................................................19

*Stogner v. California*,
539 U.S. 607 (2003)...................................................................................................18

*TwoRivers v. Lewis*,
174 F.3d 987 (9th Cir. 1999) .....................................................................................14

*Wen v. New York City Reg'l Ctr., LLC*,
No. 22-CV-7383 (LJL), 2023 WL 6317995 (S.D.N.Y. Sept. 28, 2023) .................................10

*Whiteside v. Hover-Davis, Inc.*,
995 F.3d 315 (2d Cir. 2021)...................................................................................10

**Statutes**

28 U.S.C. § 2462.................................................................................................10, 12, 15

National Defense Authorization Act for Fiscal Year 2021...................................................... *passim*

Securities Act of 1933, Section 5(a) [15 U.S.C. §§ 77e(a)].................................................. *passim*

Securities Act of 1933, Section 5(c) [15 U.S.C. §§ 77e(c)].................................................. *passim*

Securities Act of 1933, Section 17(a) [15 U.S.C. § 77q(a)] ................................................. *passim*

Securities Exchange Act, Section 10(b) [15 U.S.C. § 78j(b)] ................................................ *passim*

**Regulations**

Rule 10b-5 [17 C.F.R. § 240.10b-5] ....................................................................... *passim*

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 9(b) ............................................................................................. *passim*

Defendants Nadim Ahmed a/k/a Nadim Khan, NuRide Transportation Group, LLC ("NuRide"), NYC Green Transportation Group, LLC ("NYC Green"), and NYC EV Mobility LLC ("EV Mobility") (together, the "NuRide Defendants") respectfully submit this memorandum of law in support of their motion to: (i) limit the SEC's claims under the November 21, 2023, complaint (the "Complaint") to encompass only alleged misconduct occurring within five years of the filing of the Complaint; (ii) dismiss the claims under Securities Act Section 17(a) and Exchange Act Section 10(b), and related claims for aiding and abetting, for failure to plead those claims with particularity; and (iii) dismiss the claims under Securities Act Sections 5(a) and (c). The NuRide Defendants join in the arguments asserted by co-Defendants Mehreen Shah a/k/a Mona Shah, Mona Shah & Associates PLLC, and Gravitas NYC Regional Center, LLC (the "Shah Defendants").

## PRELIMINARY STATEMENT

The NuRide Defendants, and their CEO Nadim Ahmed, operated several businesses dedicated to providing transportation for New Yorkers. In essence, these companies comprised a cab company in Queens. They were a leading source of "black car" rides to and from NYC-area airports, and provided blue-collar jobs for hundreds of New Yorkers, mostly from immigrant backgrounds.

Until December 2018, to help build their businesses, NuRide and NYC Green offered EB-5 qualifying investments in NYC Green. Between 2014 and 2018, approximately 100 independent investors invested, all at different times and in independent investment decisions, 99% of them before November 2018. Because these were EB-5 investments, these investors were eligible to apply for permanent green cards. Thus, the NuRide Defendants were providing the proverbial "American Dream" in two ways – good jobs for immigrant New Yorkers, and a pathway to permanent green cards for investors.

The COVID-19 pandemic that started in March 2020 was unsurprisingly devastating for a company that had previously operated transportation to and from New York's airports. In an effort to continue the businesses – both to protect their investors' investments, as well as their pending EB-5 green card applications – the NuRide Defendants moved more heavily into transportation for disabled New Yorkers, providing a fleet of wheelchair-accessible vans through Uber, in turn providing easier and more affordable transportation options for a disadvantaged community.

Then, in February 2022, the SEC decided to investigate. For the better part of a year, the SEC pounded this small taxi company with extraordinarily expensive subpoenas and other investigative requests. The SEC made wild accusations, most of which were rebutted (at great time and expense), and do not appear in the complaint. Some of the SEC's investigative requests intruded on religious and/or marital issues, displaying a remarkable insensitivity and intrusiveness. The SEC also sent intrusive subpoenas to the NuRide Defendants' banking partners and business partners, following which those banks stopped doing business with the NuRide Defendants, and several of the companies' business partners, including Uber (its largest contract), walked away. The NuRide Defendants were forced to lay off dozens of employees, and the loss of the Uber contract made it more difficult and expensive for disabled New Yorkers to get around town.

Having largely destroyed these businesses, and having created a wide swath of collateral damage, the SEC couldn't simply walk away. Instead, the SEC decided it had to justify its heavy-handedness by finding some fraud, so that it could blame the NuRide Defendants rather than itself for destroying these small businesses. After a year-long investigation, the best the

2

SEC could do was to assert vague and non-specific allegations of misrepresentations in a document written in 2014, pertaining to business plans that later changed.

None of that, of course, is in the Complaint. If the SEC told the whole story here, it would never survive a motion to dismiss. So, the SEC tells a vague half-story, hoping that its lack of specificity will obscure its gamesmanship on the statute of limitations issues, as well as its failure to provide the necessary specificity on its fraud allegations. This Court may review the Complaint and be left wondering, "to whom exactly was this alleged fraud made, and when?" The SEC has the answers to those questions, but is deliberately omitting them from its Complaint, knowing that pleading those facts with the particularly required to meet the strictures of Rule 9(b) would doom the SEC on most of its claims under the statute of limitations.

This brings us to what the Complaint does allege. The SEC claims that NuRide and NYC Green, along with principal Nadim Ahmed, made misrepresentations related to that investment offering, and marketed the offering to investors who did not meet the requirements of Regulation D, and accordingly are liable for violations of Sections 5 and 17(a)a of the Securities Act of 1933, violations of Section 10(b) of the Exchange Act of 1934 and Rule 10b-5 thereunder, and for aiding and abetting violations of the same. Similarly, the SEC claims that the NuRide Defendants also improperly marketed unregistered offerings in two other EB-5 qualifying investments – Med Trans and EV Mobility – to unaccredited investors, though the SEC does not allege that those offering materials contained misrepresentations.

According to the SEC, the NuRide Defendants made misrepresentations to 100 investors from "approximately between June 2014 and December 2018" to encourage investment in NYC Green. But the SEC provides no further detail on the timing of the alleged representations.

Between June 2014 and December 2018, a five-year statute of limitations applied to the SEC's causes of action. Because this Complaint was filed on November 21, 2023, the SEC's complaint only reaches back to conduct occurring on or after November 21, 2018. The SEC claims that the NuRide Defendants marketed two other offerings through 2022, but the SEC does not allege any misrepresentations relating to those offerings. This Court accordingly should limit the SEC's claims relating to the NYC Green offering – the only fraud claims in this case – to the NuRide Defendants' alleged misconduct occurring on or after November 21, 2018, five years before the date this Complaint was filed.

The SEC may argue that the William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021 ("NDAA") retroactively expanded the statute of limitations for scienter-based disgorgement claims from five years to ten years. But both the Supreme Court and Second Circuit have long held that Congress must express a clear intent for a statute to have retroactive rather than prospective effect. In this situation, in particular, retroactive application of the NDAA would impermissibly revive claims that expired, contrary to established case law and notions of fairness and notice that have been a bedrock of American jurisprudence since Chief Justice Marshall's time. *See, e.g.*, *Adams v. Woods*, 2 Cranch 336, 342 (1805) (it "would be utterly repugnant to the genius of our laws" if actions could "be brought at any distance of time").

In addition to being too late, the Complaint is too little – it fails to meet the SEC's pleading burden under Rule 9(b), which applies to the claims under Securities Act Section 17(a), Exchange Act Section 10(b) and Rule 10b-5, and the related aiding and abetting claims. The SEC does not make a single specific allegation regarding to whom misrepresentations were made and when any misrepresentations were made. Instead, the SEC resorts to pleading that

4

misrepresentations were made relating only to the NYC Green offerings to "more than 100 investors" or "at least 99 investors" or simply "investors" and generally "between approximately June 2014 and December 2018." Such cursory pleading fails to satisfy the particularity requirement of Rule 9(b). The reason for the SEC's vagueness is obvious: it is necessary for the SEC to avoid triggering the statute of limitations bar that precludes the vast majority of its claims relating to NYC Green.

This Court should hold the SEC to its pleading burden on fraud claims. The "who" and "when" of the alleged misrepresentations are critical, not just for establishing particularity under Rule 9(b), but also vital to understanding what allegations, if any, are timely.

## ALLEGATIONS IN SEC COMPLAINT

NYC Green, NuRide, and EV Mobility offer transportation-related services, including providing transportation for the disabled community, in the New York City area. Exhibit A ("Compl."), Declaration of Jason Gottlieb, dated January 22, 2023 ("Gottlieb Decl.") ¶¶ 3, 24-25, 51. NuRide is the manager of NYC Green. Compl. ¶ 25. Ahmed is the executive chairman of each of NuRide and EV Mobility. Compl. ¶¶ 22, 24-25, 27. NYC Green and EV Mobility operated in a manner to meet the requirements to qualify for the EB-5 program, under which investors can become eligible for unconditional permanent residency status if they make a qualifying investment in a new commercial enterprise in the United States that will create a certain number of permanent full-time jobs for qualified U.S. workers. Compl. ¶¶ 30-32.

A.    **Between 2014 and 2018, Ahmed and NuRide Allegedly Make Misrepresentations in Marketing Unregistered Investments in NYC Green**

The SEC generically alleges that Ahmed and NuRide marketed NYC Green EB-5 Offerings "throughout the United States and abroad on NuRide's website, through participation in seminars and conferences, and in publications and websites, including ones that catered to EB-

5 Program participants and members of the EB-5 industry." Compl. ¶ 35. While securities offerings like the NYC Green offering typically are required to be registered with the SEC, there are several exemptions to registration requirements, including if the offering is sold to "accredited investors," meaning who meet certain income or asset thresholds. Compl. ¶¶ 41-42. Without detail, the SEC alleges that Defendants offered and sold interests in NYC Green to multiple investors whose stated earnings and assets did not meet accredited investor criteria. Compl. ¶¶ 46-48, 69.

According to the SEC, "between approximately June 2014 and December 2018, Ahmed, NuRide, and NYC Green marketed interests in NYC Green using iterations of offering memoranda that proposed to develop or assemble a fleet of for-hire vehicles, including handicap accessible cars, to operate in all five boroughs." Compl. ¶¶ 50-51, 54. Over time, the offering memoranda were revised to reflect an expansion of the proposed plan, for example to increase the planned fleet of vehicles and number of employees. Compl. ¶ 52. The offering memoranda described that investors could become eligible for permanent residency in the United States, and stated that NYC Green intended to make distributions to investors. Compl. ¶ 58.

NYC Green initially raised $40 million, and then expanded its offering to allow for an additional $9.5 million in investments from a series of investors, which NYC Green again hoped to use "to create additional full-time permanent jobs" for "greater fleet expansion, job creation and technology upgrades," and to provide additional equity to investors. Compl. ¶¶ 61, 73. NYC Green ultimately raised its full offering amount from at least 99 investors, and also collected an additional administrative fee from each investor. Compl. ¶ 73.

The NYC Green Offering Memo represented that it would use the offering proceeds to "finance and develop the Project," and that "job creation will consist of direct employees and

6

who will receive wages directly" from NYC Green.  Compl. ¶¶ 82-84; *see also* Compl. ¶ 62.  To be clear, though, the NYC Green Offering Memo also stated that the administrative fee would be used to reimburse NuRide for organizational expenses and compensate NuRide for setting up NYC Green and conducting the offering, and that NuRide and its members or managers could receive additional economic benefits from the Project.  Compl. ¶¶ 75-76.

The Complaint alleges three purported misrepresentations to investors, all of which purportedly appear in or as an attachment to NYC Green Offering Memos dated in 2014 or 2015. First, the SEC alleges the Offering Memo provided that NYC Green had been formed with an initial investment of $11 million from its principals, relying on a provision of a 2014 version of the Offering Memo describing the likely required need for funding and use of funds.  Compl. ¶ 89.  Similar statements allegedly appear in offering memoranda dated from "at least November 2015 and later," and in business plans attached to the memoranda.  Compl. ¶¶ 88, 90.  The SEC asserts that despite this representation, NYC Green's principals, including NuRide, "made no $11 million investment in NYC Green."  Compl. ¶ 91.  The SEC does not allege which investors saw those statements, or when.[1]

Second, the SEC alleges that despite representations that NYC Green would be the new commercial entity and job creating entity for EB-5 purposes, Ahmed, through NuRide, arranged for NuRide to use NYC Green's assets and take contracts that should have gone to NYC Green. Compl. ¶ 92-95.  Though the SEC admits that NuRide transferred revenue to NYC Green to cover expenses such as employee salaries, the SEC maintains that the "structure and operation of NYC Green's business was inconsistent" with representations to investors that their funds would

---

[1]     The SEC's Complaint deliberately omits that it knew about this particular issue long ago; indeed, Mr. Ahmed provided testimony on this point to the SEC in March 2017, more than five years before this Complaint was filed.

be used to operate NYC Green's business and the creation of jobs through NYC Green," ultimately leading USCIS to question whether NYC Green was engaged in business activities supporting permanent residency for its investors under the EB-5 program.  Compl. ¶¶ 97-104.

Third, the SEC alleges that on or about February 5, 2018 (over five years before this Complaint was filed), Mr. Ahmed used funds from an investment in NYC Green to pay a portion of a settlement with the SEC in a previous unrelated matter for an entity Ahmed co-owned. Compl. ¶¶ 105-112.

**B.    Between 2018 and 2022, Ahmed and NuRide Allegedly Participate in Marketing Unregistered Investments in Med Trans and EV Mobility**

The SEC also alleges that between 2018 and 2022, Ahmed and NuRide offered and/or sold interests in a company called Med Trans and EV Mobility, each of which also participated in the EB-5 program.  Compl. ¶¶ 123, 125, 144, 152.  While the SEC points out several statements in each company's offering memoranda, the SEC does not allege any of those statements were false.  Rather, the SEC alleges only that the offering was not registered and instead relied on the exemption in Regulation D, but that "at least one investor who represented a net worth and annual income below that of an accredited investor was offered and sold interests in" each company.  Compl. ¶¶ 138-140, 153-155.

**C.    The Claims Against Ahmed, NuRide, NYC Green, Med Trans, and EV Mobility**

Based on the foregoing allegations, the SEC has asserted against the NuRide Defendants: (i) a violation of Securities Act Section 17(a) [15 U.S.C. § 77q(a)] against Ahmed, NuRide, and NYC Green for using the means or instruments of communications across state lines to defraud investors with an aiding and abetting count against Ahmed (Counts I and IV at Compl. ¶¶ 168-169 & 181-183); (ii) a violation of Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] against Ahmed, NuRide, and NYC Green based on the allegation

that they, in connection with the purchase and sale of securities, and using instrumentalities of interstate commerce, employed a scheme to defraud or made untrue statements of material fact or omitted material facts, along with aiding and abetting counts against Ahmed and NuRide (Counts II, V, & VII at Compl. ¶¶ 171-172, 185-187, & 193-195); and (iii) violations of Securities Act Sections 5(a) and (c) [15 U.S.C. §§ 77e(a) and 77e(c)] against the NuRide Defendants for improperly marketing unregistered securities (Count III at Compl. ¶ 178).

As relief, the SEC seeks (i) permanent injunctions prohibiting the NuRide Defendants from violating the above sections of the Securities Act and Exchange Act, prohibiting Ahmed and NuRide from participating in the sale of certain types of securities, and prohibiting Ahmed from serving as an officer or director of companies that market certain types of securities; (ii) disgorgement; and (iii) the payment of civil penalties.  Compl. Prayer for Relief.

**ARGUMENT**[2]

## I.   MOST OF THE SEC'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

The SEC asserts claims against each of the NuRide Defendants based on Securities Act Section 17(a) and Exchange Act 10(b) and Rule 10b-5, based on purported misrepresentations the NuRide Defendants made (or aided and abetted) in various securities offerings "approximately between June 2014 and December 2018."  (Compl. ¶¶ 1, 50, 73).  The SEC filed its Complaint on November 21, 2023, and thus the claims in the Complaint reach the NuRide Defendants' alleged actions only as of or after November 21, 2018.  This Court accordingly should limit the SEC's Complaint to encompass only the NuRide Defendants' alleged misconduct occurring on or after November 21, 2018.

---

[2]     The NuRide Defendants join in the Shah Defendants' argument that the SEC has not adequately pleaded that the NuRide Offerings are securities, which is a prerequisite requiring the dismissal of the Complaint.

9

**A.    A Five-Year Statute of Limitations Applies to Claims Under the Securities and Exchange Acts, Barring the SEC from Proceeding on Purported Misconduct Occurring Before November 21, 2018**

Statutes of limitations "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Railroad Telegraphers v. Railway Express Agency, Inc.*, 321 U.S. 342, 348-49 (1944). "The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation . . . ." *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974) (citation omitted). Statutes of limitation are "'vital to the welfare of society'" and rest on the principle that "'even wrongdoers are entitled to assume that their sins may be forgotten.'" *Kokesh v. SEC*, 581 U.S. 455, 461 (2017) (citing *Gabelli v. United States*, 568 U.S. 442, 449 (2013)).

A general five-year "catch-all" statute of limitations governs in actions brought by the federal government, absent any alternate express statute of limitations specified in a relevant statute:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon.

28 U.S.C. § 2462.

Through and until January 1, 2021, when Congress passed the NDAA amending the statute of limitations for the SEC in certain ways, this five-year statute of limitations applied to actions brought by the SEC that sought civil penalties, disgorgement, and certain types of injunctive relief. *See*, *e.g.*, *Gabelli*, 568 U.S. at 442 (holding five-year statute of limitations

10

applies to SEC action seeking civil penalties); *Kokesh*, 581 U.S. at 455 (holding disgorgement is a penalty, and holding five-year statute of limitations applies to SEC action seeking disgorgement); *SEC v. Cohen*, 332 F. Supp. 3d 575 (E.D.N.Y. 2018) (finding that an injunction operates in part as a penalty such that it was subject to the five-year statute of limitations).

A court may dismiss claims where it is apparent from the face of the complaint that the claims are time-barred. *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 319 (2d Cir. 2021) ("A court accordingly may dismiss a claim on statute-of-limitations grounds at the pleadings stage if the complaint clearly shows the claim is out of time"); *Wen v. New York City Reg'l Ctr., LLC*, No. 22-CV-7383 (LJL), 2023 WL 6317995, at *7 (S.D.N.Y. Sept. 28, 2023) (finding fraud-based claims in EB-5 context are time-barred because "a review of the complaint and other permissible documents reveals that the claims are prima facie time-barred") (citations and internal quotation marks omitted); *see also Gabelli*, 568 U.S. at 454 (reversing and dismissing SEC complaint on timeliness grounds).

Here, the SEC has asserted claims against the NuRide Defendants, seeking to permanently enjoin them from participating in certain types of securities offerings or engaging in certain business opportunities, and further seeks payment of civil penalties and disgorgement.

To bring these claims within the five-year statute of limitations that applies to SEC actions seeking the enforcement of any civil fine, penalty, or forfeiture, the SEC was required to plead that Defendants' alleged misconduct occurred after November 21, 2018.  The SEC has failed to meet this pleading burden.  Specifically, the SEC alleges that the NuRide made alleged misrepresentations to prospective investors in NYC Green "between approximately June 2014 and December 2018."  Compl. ¶ 50; *see also id*. ¶¶ 52, 73, 77, 88.  This Court accordingly

11

should limit the Complaint only to allegations of misconduct occurring on or after November 21, 2018.[3]

> **B.      The NDAA, which Amends the Statute of Limitations Applicable to the Availability of Disgorgement as a Remedy for Claims Under the Securities Law, Does Not Apply Retroactively**

In an effort to excuse its late pleading, the SEC may point to the NDAA, which became effective as of January 1, 2021.  The NDAA provides that for scienter-based claims, including claims under Securities Act Section 17(a) and Exchange Act Section 10(b), "[t]he Commission may bring a claim for disgorgement . . . not later than 10 years after the latest date of the violation that gives rise to the action or proceeding . . . ."  NDAA § 6501(a)(8)(A).  The NDAA's amendments are applicable only "to any action or proceeding that is pending on, or commenced on or after, the date [January 1, 2021] of enactment of this Act."  *Id.* § 6501(b).  Under the plain language of the statute and clear case law, the NDAA's amendment to the statute of limitations does not apply to actions for which the statute of limitations expired before the SEC filed suit.[4]

---

[3]      While the SEC again purposely does not allege when each investor invested, the SEC knows well that only <u>one single investor</u> invested in NYC Green after November 21, 2018. The SEC further does not plead with particularity that that investor was even provided with or relied upon the purported misrepresentations, or that that investor was not provided with any corrective disclosures that would cure the purported misrepresentations.   While the SEC's pleading standard on reliance is more lenient than in a private securities fraud complaint, the SEC still has to plead the basics.

[4]      Claims under Securities Act Sections 5(a) and (c) are not scienter-based claims, and thus there is no argument the statute of limitations applicable to those claims could be extended or that expired claims under those statutes can be revived by the NDAA.  *See, e.g.,* 15 U.S.C. § 77e(a), (c) (governing Sections 5(a) and (c) of the Securities Act and not requiring scienter); *SEC v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1256 (9th Cir. 2013) (noting that a majority of circuit courts have concluded that "scienter is not an element of Section 5 liability").  Further, the SEC has conceded in other cases that any claims civil monetary penalties remain subject to Section 2462's five-year statute of limitations.  *SEC v. Gallison*, 588 F. Supp. 3d 509, 519, n.14 (S.D.N.Y. 2022) ("The SEC concedes that 28 U.S.C. § 2462's five-year statute of limitations is still applicable to the SEC's claim for civil penalties.") (internal quotation marks omitted); *see also SEC v. Fowler*, 6 F.4th 255, 260 & n.5 (2d Cir. 2021) ("The SEC's claim for civil penalties against [defendant] remains subject to § 2462's five-year statute of limitations").

Unless Congress clearly expresses its intent to the contrary, courts presume that a law expanding a statute of limitations has no retroactive application to conduct predating a statute. *See Domond v. I.N.S.*, 244 F.3d 81, 85 (2d Cir. 2001); *see also In re Enter. Mortg. Acceptance Co., LLC Sec. Litig.*, 391 F.3d 401, 406 (2d Cir. 2010) ("The Supreme Court has recognized that though Congress is empowered to enact retroactive legislation, retroactive statutes raise such 'special concerns,' *INS v. St. Cyr*, 533 U.S. 289, 315, 121 S. Ct. 2271, 150 L. Ed. 2d 347 (2001), that 'congressional enactments . . . will not be construed to have retroactive effect unless their language *requires* this result,' *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988).") (emphasis in original) (cleaned up).

In *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), the Supreme Court set a two-part test for determining whether a statute applies retroactively. First, a court must "determine whether Congress has expressly prescribed the statute's proper reach." *Id.* at 280. If Congress has done so, the court enforces the statute as it is written. *See id.* If the statute is ambiguous or contains no command, the court proceeds to "determine whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* If the statute, as applied, would have such an effect, it will not be applied retroactively "absent clear congressional intent." *Id.; see also Enter. Mortg. Acceptance Co.*, 391 F.3d at 406; *Domond*, 244 F.3d at 85.

Under the first prong of the *Landgraf* test, the NDAA's language does not provide any intent for retroactive effect. "The standard for finding such unambiguous direction is a demanding one." *St. Cyr*, 533 U.S. at 316-17, *abrogated in other part, Nasrallah v. Barr*, 590 U.S. __ (2020). "[C]ases where this Court has found truly 'retroactive' effect adequately

13

authorized by statute have involved statutory language that was so clear that it could sustain only one interpretation." *Id.*; *see, e.g.*, *Enter. Mortg. Acceptance Co.*, 391 F.3d at 407 (setting examples including "the Corporation may bring an action . . . on such claim without regard to the expiration of the statute of limitation applicable under State law" and "no limitation shall terminate the period within which suit may be filed"); *Kansas Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 61 F.3d 608, 615 (8th Cir. 1995) (finding retroactive legislation stating "the provisions of this subsection shall revive such [expired] causes of action").

There is no such language in the NDAA. It provides that the extended statute of limitations will apply only "to any action or proceeding that is pending on, or commenced on or after," January 1, 2021. If Congress had intended that the statute applied retroactively, it easily could have said so – for example, using the word "retroactive," or, applying the extension specifically to any case that may later be commenced regardless of when the alleged activity took place. A number of courts have recognized that statutes using language similar to the NDAA do not indicate a Congressional intent for retroactivity. *Enter. Mortg. Acceptance Co.*, 391 F.3d at 406-08; *Lieberman v. Cambridge Partners, L.L.C.*, 432 F.3d 482, 489-91 (3d Cir. 2005).

Under the second prong of the *Landgraf* test, applying the NDAA retroactively would impermissibly revive stale claims. Numerous Courts of Appeals have recognized that a statute that retroactively revives a stale claim cannot pass scrutiny. *See*, *e.g.*, *Lieberman v. Cambridge Partners, L.L.C.*, 432 F.3d 482, 492 (3d Cir. 2005) *as amended* (2006) (holding that extending statute of limitations "to revive expired securities fraud claims would have an impermissible retroactive effect"); *Million v. Frank*, 47 F.3d 385, 390 (10th Cir. 1995) ("Applying the new time limit would alter the substantive rights of both the plaintiff and the defendant. Plaintiff would be

14

afforded relief where previously there was none to be gained. The defendant would be stripped of his right to raise a valid defense and would be forced to defend an action previously time-barred: defendant's liability would be substantially increased."); *see also Calderon v. U.S. Dist. Court for the Cent. Dist. of Cal.*, 128 F.3d 1283, 1286-87 (9th Cir. 1997), *abrogated on other grounds*, 163 F.3d 530 (9th Cir. 1998) ("But applying [the new] limitation period in this fashion would impermissibly attach new legal consequences to events completed before its enactment"); *TwoRivers v. Lewis*, 174 F.3d 987, 995 (9th Cir. 1999) (rejecting application of new statute of limitations, stating "[i]t is enough to conclude that retroactive operation of the new statute results in 'manifest injustice' and therefore its application here is inappropriate").

A number of courts have held that legislation will not revive expired claims absent some clear direction and extenuating circumstance. For example, in *Chenault v. U.S. Postal Service*, the Ninth Circuit held that "a newly enacted statute that lengthens the applicable statute of limitations may not be applied retroactively to revive a plaintiff's claim that was otherwise barred under the old statutory scheme because to do so would 'alter the substantive rights' of a party and 'increase a party's liability.'" 37 F.3d 535, 539 (9th Cir. 1994). The Supreme Court, while not ruling on the precise issue, has noted the *Chenault* decision favorably. *Hughes Aircraft Co. v. U.S. ex rel. Schumer*, 520 U.S. 939, 950 (1997) (citing *Chenault* and noting "[t]he 1986 amendment would revive that action, subjecting Hughes to previously foreclosed *qui tam* litigation, much like extending a statute of limitations after the pre-existing period of limitations has expired impermissibly revives a moribund cause of action"); *see also Enter. Mortg. Acceptance Co.*, 391 F.3d at 410 (2d Cir. 2004) (recognizing that "[e]xtending the statute of limitations retroactively increase[s] [a defendant's] liability for past conduct by increasing the period of time during which a defendant can be sued," creating impermissible retroactive effect).

15

The same result is called for here.  The SEC brings claims related to representations in offering memoranda that were shared "[b]etween approximately June 2014 and December 2018."  Compl. ¶ 50; *see also id.* ¶¶ 52, 73, 77, 88.  When those representations were made, the governing statute of limitations was five years.  28 U.S.C. § 2462.  Applying the NDAA retroactively to claims that accrued prior to the effective date of the NDAA would alter "the rights of the [NuRide Defendants]" and put them "back at risk at a point when [they] reasonably believe they are immune from litigation, stripping them of a complete affirmative defense they previously possessed . . . ."  *See Enter. Mortg. Acceptance Co.*, 391 F.3d at 410; *see also Chenault*, 37 F.3d 539.  As a result, a retroactive application of the NDAA would have "an *impermissible* retroactive effect," does not survive *Landgraf* scrutiny, and the Court should not give it retroactive effect.  *See Enter. Mortg. Acceptance Co.*, 391 F.3d at 410; *see also Hughes*, 520 U.S. at 950 (where a party had a defense that would "completely bar[]" a claim, a court should not retroactively apply a law that would remove that defense, "much like extending a statute of limitations after the pre-existing period of limitations has expired impermissibly revives a moribund cause of action") (citing *Winfree v. Northern Pacific R. Co.*, 227 U.S. 296, 301 (1913) ("It is hardly necessary to say that such [retroactive] statutes are exceptions to the almost universal rule that statutes are addressed to the future, not to the past.")).

In candor, three district courts have issued opinions finding that the NDAA provides for retroactive application of the new statute of limitations in cases commenced after January 1, 2021.  *See SEC v. Stubos*, 634 F. Supp. 3d 174 (S.D.N.Y. 2022); *SEC v. Sharp*, 626 F. Supp. 3d 345, 378 (D. Mass. 2022); *SEC v. Xia*, No. 21-CV-5350 (PKC) (RER), 2022 WL 17539124 (E.D.N.Y. Dec. 8, 2022).  These cases are neither binding, nor persuasive:  they all directly flout

16

the Supreme Court's and Second Circuit's clear directives against retroactive application of extensions of the statutes of limitations.

Both the *Stubos* and *Sharp* courts addressed the provision that the NDAA would apply to cases "pending on, or commenced on or after" the NDAA's effective date.  Each reasoned that the amendment would apply to a case that was pending as of the effective date, potentially giving the statute some retroactive effect.  But then each case took a step too far, by reasoning that based on that limited retroactive effect, the NDAA also would revive time-barred claims in complaints filed after January 1, 2021.  *Stubos*, 634 F. Supp. 3d at 194-96; *Sharp*, 626 F. Supp. 3d at 374-75; *see also Xia*, 2022 WL 17539124, at *14 (adopting reasoning in *Stubos* and *Sharp*).  Respectfully, these cases got that point wrong.  As discussed above, statutes of limitation guide people's expectations.  There is a critical difference in someone's expectations once the statute of limitations has expired if the person already is litigating the claim, versus when no claim has been filed.  The *Stubos* and *Sharp* Courts failed to grapple with this distinction, and that distinction is critical here.

The *Stubos* and *Sharp* courts also reasoned that Supreme Court precedent supported their determinations, because the Supreme Court had determined in three cases that the language "pending on or commenced after" in statutes would suggest retroactive application.  *See Stubos*, 634 F. Supp. 3d at 200; *Sharp*, 626 F. Supp. 3d at 375.  But none of the cited cases actually retroactively applied statutes, and each addressed whether an amendment to a statute would apply to cases that already were filed and pending as of the effective date of the amendment. *Landgraf*, 511 U.S. at 248-49 (plaintiff claiming employment discrimination filed an action and on appeal sought remand for a trial under act that was passed while plaintiff's appeal was pending); *Martin v. Hadix*, 527 U.S. 343, 350 (1999) (attorneys' fee requests were submitted and

17

legislation was then passed altering the calculus for awards of attorneys' fees); *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 301-02 (1994) (plaintiffs filed a racial discrimination action and on appeal sought remand based on act that was passed while appeal was pending). As discussed above, that situation is entirely different than extending claims that are not in litigation. *Enter. Mortg. Acceptance Co.*, 391 F.3d at 410 ("the resurrection of previously time-barred claims has an impermissible retroactive effect"); *Chenault*, 37 F.3d at 539 (retroactive application of a longer statute of limitations is impermissible because "the rights of the defendant would be altered and its liability increased because it would be forced to defend an action that was previously time-barred").

The *Stubos* and *Sharp* courts further reasoned that extending the statute of limitations for claims in cases that already were pending, but not extending the statute of limitations if the SEC had not already filed suit, would create disjunctive results depending solely when the SEC filed suit. *Stubos*, 634 F. Supp. 3d at 196; *Sharp*, 626 F. Supp. 3d at 375. There is nothing absurd about this; rather, that is exactly how statutes of limitations work.

Finally, the *Stubos* and *Sharp* courts reasoned that two bill sponsors for a prior version of the NDAA that did not pass had expressed concern that fraudsters were benefitted by a shorter statute of limitations. *Stubos*, 634 F. Supp. 3d at 198; *Sharp*, 626 F. Supp. 3d at 376. The courts also noted the SEC's concern to extend the statute of limitations to extend the SEC's ability to recover investor funds. *Id*. These generalized statements in support of holding fraudsters financially responsible for their misconduct do not, however, address retroactive application of the NDAA. *See Enter. Mortg. Acceptance Co.*, 391 F.3d at 408 (discounting Senator's "stand-alone remarks" in evaluating legislative history of bill extending statute of limitations).

18

This Court, in this case, should reject *Stubos* and *Sharp* as inconsistent with the Supreme Court's and Second Circuit's repeated directives that statutes of limitation cannot be extended retroactively without express, clear Congressional intent. *Stogner v. California*, 539 U.S. 607, 611 (2003) (noting that "extending a limitations period after the State has assured a man that he has become safe from its pursuit . . . seems to most of us unfair and dishonest [and] [i]n such a case, the government has refused 'to play by its own rules'"). The 2021 NDAA, by its plain text, does not direct retroactivity for unfiled cases at all – indeed, exactly the opposite. This Court should hold that, to the extent any alleged misconduct occurred prior to November 21, 2018, the SEC has lost its chance to file any action.

As the Supreme Court unanimously held in *Gabelli*, "Chief Justice Marshall used particularly forceful language in emphasizing the importance of time limits on penalty actions, stating that it 'would be utterly repugnant to the genius of our laws' if actions for penalties could 'be brought at any distance of time.'" 568 U.S. at 452 (citing *Adams v. Woods*, 2 Cranch 336, 342 (1805)). In *Gabelli*, the Supreme Court rejected grafting retroactive application of a statute of limitations through a "discovery rule," because doing so "would leave defendants exposed to Government enforcement action not only for five years after their misdeeds, but for an additional uncertain period into the future." *Id.* Similar principles apply here. Allowing the SEC to retroactively expand its limitations period, would leave defendants exposed to Government enforcement action for alleged misdeeds permanently into the future, never enjoying any right of repose. Unless Congress directly and explicitly states a law to the contrary – which here, it has not – the SEC should not be able to reach into the past to revive claims that were outside the statute of limitations in effect when those actions were taken.

19

## II.    THE SEC'S CLAIMS FAIL TO ASSERT FRAUD WITH PARTICULARITY

When reviewing fraud-based claims on a motion to dismiss, the court must "view the complaint in light of Rule 9(b), which requires that 'the circumstances constituting fraud . . . be stated with particularity.'" *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1127 (2d Cir. 1994) (quoting Fed. R. Civ. P. 9(b)).

Rule 9(b) "provide[s] a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing . . . ." *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (affirming dismissal of securities fraud claims).  To meet its heightened pleading burden, a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Shields*, 25 F.3d at 1127-1128.  In short, this "means the who, what, when, where, and how:  the first paragraph of any newspaper story." *Cambridge Cap. LLC v. Ruby Has LLC*, 565 F. Supp. 3d 420, 461 (S.D.N.Y. 2021).

Each of the SEC's claims are subject to Rule 9(b).  *SEC v. Wey*, 246 F. Supp. 3d 894, 911, 925 (S.D.N.Y. 2017) (applying Rule 9(b) to Section 10(b), Rule 10b-5, Section 17(a), and aiding and abetting claims).  "[T]o violate Section 10(b) and Rule 10b-5, a party must have (1) made a material misrepresentation or a material omission as to which he had a duty to speak, or used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities." *SEC v. Pentagon Capital Mgmt. PLC*, 725 F.3d 279, 285 (2d Cir. 2013).  "The requirements for a violation of Section 17(a) apply only to a sale of securities but in other respects are the same as Section 10(b) and Rule 10b-5, except that no showing of scienter is required for the SEC to obtain an injunction." *Id.* (internal quotation marks omitted).

The SEC has failed to meet its heightened pleading burden.  In particular, the SEC has entirely failed to plead the "when" and "to whom" of any misrepresentations.  Again, the reason

20

is clear.  In an effort to obfuscate that much of its claim is precluded by the statute of limitations, the SEC pleads that the NuRide Defendants made misrepresentations in offering memoranda "[b]etween approximately June 2014 and December 2018."  Compl. ¶¶ 1, 30, 50.  This Court has recognized that alleging misrepresentations were made over the course of years – without any further detail – fails to satisfy the requirements of Rule 9(b).  *See e.g.*, *Wey*, 246 F. Supp. 3d at 911 (SEC failed to satisfy Rule 9(b) because "the SEC does not allege in any meaningful way when the misstatement was made within that nearly two-year period of time . . . ."); *Cambridge Cap. LLC*, 565 F. Supp. 3d at 462 (finding insufficient under Rule 9(b) that defendants "made misrepresentations 'during this time' and 'throughout the negotiations' [which spanned several months] are insufficiently specific about when the statements were made and therefore do not contain the particularity necessary to state a fraud claim in federal court").

Moreover, the SEC does not plead to whom any alleged misrepresentations were made. The SEC pleads only that misrepresentations were made to "more than 100 investors."  Compl. ¶ 1; *see also* ¶ 50 (stating between approximately June 2014 and December 2018 the NuRide Defendants offered and/or sold interests in NYC Green "to investors").  But Rule 9(b) requires that the SEC detail exactly to whom any misrepresentations were made. *Defer LP v. Raymond James Fin., Inc.*, 654 F. Supp. 2d 204, 214 (S.D.N.Y. 2009) (dismissing Rule 10b-5 claims because the complaint failed to plead "to whom [the misrepresentations were made], when (other than throughout the Class Period), where, how frequently and in what form. While the complaint alleges the content of the statement itself and why plaintiff believes it to have been fraudulent, the circumstances in which the statement allegedly was made are not identified sufficiently to meet the stringent standards of Rule 9(b)"); *see also In re Merrill Lynch Auction Rate Sec. Litig.*,

21

704 F. Supp. 2d 378, 389 (S.D.N.Y. 2010) (dismissing Section 10(b) claims for the same reason), *aff'd sub nom. Wilson v. Merrill Lynch & Co.*, 671 F.3d 120 (2d Cir. 2011).

The SEC's pleading failures run contrary to both the purpose of Rule 9(b) – and its goals of fair notice and appraising parties of the specifics of any fraud – and its black-letter requirements. This is particularly problematic when done, as here, in order to avoid a statute of limitations issue on the face of the complaint. *Wey*, 246 F. Supp. 3d at 934 ("The lack of detail is particularly problematic here because if Newman was not involved with any transfers after September 10, 2010, his conduct would not fall within the five year statute of limitations period"). This Court should not countenance those pleading failures and should dismiss the SEC's claims under Securities Act Section 17(a), Exchange Act 10(b) and Rule 10b-5, and for aiding and abetting.

The import here is critical: the SEC has alleged generally that the offering documents contained misrepresentations, and that approximately 100 investors, over a span of four years, were defrauded as a result. But the SEC does not address any individual investor; whether each such individual investor was provided with any allegedly fraudulent materials; whether any such investor was provided with corrective disclosures (given that the original materials were four years old by that point); or any other specificity. The SEC has not come close to meeting the pleading standards of Rule 9(b).

## III.    THE SEC'S CLAIM THAT THE NURIDE DEFENDANTS ENGAGED IN THE IMPROPER SALE OF UNREGISTERED SECURITIES IS DEFICIENT

The NuRide Defendants join in the arguments made by the Shah Defendants seeking to dismiss Count III of the Complaint, which assert violations of Securities Act Sections 5(a) and 5(c), and a related aiding and abetting claim against NuRide. To avoid repetitious papers, we incorporate herein those strong and clearly correct arguments.

## CONCLUSION

For the foregoing reasons, this Court should issue an order:

(i)     limiting the claims relating to the NYC Green offering under the Complaint to encompass only alleged misconduct occurring within five years of the filing of the Complaint;

(ii)    dismissing the claims under Securities Act Section 17(a), Exchange Act Section 10(b) and Rule 10b-5, and aiding and abetting for failure to plead those claims with particularity;

(iii)   dismissing the claims under Securities Act Sections 5(a) and (c) for the reasons set forth in the Shah Defendants' brief; and

(iv)    granting such additional relief as is just and proper.

Dated:  New York, New York
        January 22, 2024

MORRISON COHEN LLP


By: */s/ Jason Gottlieb*
    Jason Gottlieb
    Gayle Pollack
    Daniel F. Gilpin
    909 Third Avenue
    New York, NY 10022
    (212) 735-8600
    jgottlieb@morrisoncohen.com
    gpollack@morrisoncohen.com
    dgilpin@morrisoncohen.com

*Attorneys for Defendants Nadim Ahmed
a/k/a Nadim Khan, NuRide Transportation
Group, LLC, NYC Green Transportation
Group, LLC, and NYC EV Mobility LLC*

23