UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiffs,<br><br>  vs.<br><br>NADIM AHMED a/k/a NADIM KHAN, MEHREEN SHAH a/k/a MONA SHAH, NURIDE TRANSPORTATION GROUP, LLC, NYC GREEN TRANSPORTATION GROUP, LLC, MED TRANS EB-5 FUND, LLC, NYC EV MOBILITY LLC, GRAVITAS NYC REGIONAL CENTER, LLC f/k/a NYC TRANSPORTATION REGIONAL CENTER, LLC, and MONA SHAH & ASSOCIATES, PLLC,<br>    Defendants. | CIVIL ACTION No. 23-cv-10210-VSB<br><br>JURY TRIAL DEMANDED |

**DEFENDANTS MONA SHAH, MONA SHAH & ASSOCIATES, PLLC, GRAVITAS NYC REGIONAL CENTER LLC, AND MED TRANS EB-5 FUND, LLC'S <u>REPLY MEMORANDUM IN SUPPORT OF THE MOTION TO DISMISS</u>**

**MCGUIREWOODS LLP**

1251 Avenue of the Americas,
20<sup>th</sup>Floor
New York, NY 10020
Telephone: 212-548-2100
Facsimile: 212-548-2150

*Attorneys for Defendants Mona Shah, Mona Shah & Associates, PLLC, Gravitas NYC Regional Center, LLC, and Med Trans EB-5 Fund, LLC*

# TABLE OF CONTENTS

|   |   |   | Page |
|---|---|---|---|
| INTRODUCTION | | | 1 |
| I. | ARGUMENT | | 2 |
| | A. | The Availability of Injunctive Relief Does Not Preclude Dismissal | 3 |
| | B. | On the Face of the Complaint, the Three NuRide Offerings Were Exempt from Securities Registration under Regulation D | 4 |
| | | (1) The SEC Must Allege that the Shah Defendants Did Not Meet the Requirements of Regulation D Exemption Because the Complaint Makes its Application Clear | 5 |
| | | (2) The SEC's Allegations Fall Short of Establishing Regulation D Exemption Requirements Were Not Met | 6 |
| | C. | The Complaint Allegations Do Not Satisfy the *Howey* Test | 8 |
| CONCLUSION | | | 10 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allianz Glob. Invs. GmbH v. Bank of Am. Corp.*,
    No. 18 CIV. 10364, 2020 WL 4927575 (S.D.N.Y. Aug. 21, 2020) ..........................................8

*Jones v. Bock*,
    549 U.S. 199 (2007) ...............................................................................................................5, 6

*SEC v. Kik Interactive Inc.*,
    492 F. Supp. 3d 169 (S.D.N.Y. 2020) ....................................................................................8

*SEC v. Sharp*,
    626 F. Supp. 3d 345 (D. Mass. Sept. 6, 2022) .......................................................................4

*SEC v. Xia*,
    No. 21-CV-5350, 2022 WL 17539124 (E.D.N.Y. Dec. 8, 2022) .......................................9, 10

*United States v. Daugerdas*,
    837 F. 3d 212 (2d Cir. 2016) .................................................................................................10

**Statutes**

15 U.S.C. § 78u(d)(5) ...................................................................................................................3

28 U.S.C. § 2462 ...........................................................................................................................3

**Other Authorities**

Rule 506(c) ................................................................................................................................5, 6

The Shah Defendants[1] respectfully submit this Reply Memorandum[2] in support of their Motion to Dismiss ("Motion") Plaintiff Securities and Exchange Commission's ("SEC") Complaint. (ECF Nos. 28-29.)

**INTRODUCTION**

In its opposition, rather than direct the Court to specific allegations as to when the alleged violations of Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a) and 77e(c)] ("Section 5") occurred, the SEC incorrectly claims, without support, that it has carried its pleading burden because at least a portion of the alleged time periods for each of the three offerings narrowly extend within the applicable five-year statute of limitations. *See generally* ECF 48 ("Opposition"), Section II. Establishing a *prima facie* securities violation requires more than showing that a violation *may* have occurred within the limitations period. Instead, the SEC must plead sufficient non-conclusory facts showing that a violation *did* occur within the limitations period. The Complaint falls short here.

The Complaint contains no well-pleaded allegations establishing unaccredited investments in each of the three EB-5 projects within the applicable five-year limitations period for the sole Section 5 claim against the Shah Defendants. Despite possessing an arsenal of documents produced in the SEC's investigation, and despite having taken testimony from key witnesses, including Mona Shah, the SEC does not allege that any investor was in fact

---

[1] The capitalized terms have the same meaning ascribed to them in Memorandum of Law in Support of Defendants Mona Shah, Mona Shah & Associates, PLLC, Gravitas NYC Regional Center LLC, and Med Trans EB-5 Fund, LLC's Motion to Dismiss. (ECF 29.)

[2] The Shah Defendants join in the reply arguments asserted by the NuRide Defendants with respect to the applicable statute of limitations for the three offerings at issue: (i) NYC Green; (ii) Med Trans; and (iii) EV Mobility, including that each offering was entirely separate from the other, such that the SEC must plead that the investments took place within the limitations period for each respective offering. (NuRide Defendants' Reply Brief, pp. 3-6.)

1

unaccredited. Instead, the Complaint makes vague and conclusory allegations about at least "one investor's eligibility form" indicating that the "investor was not accredited." (Compl. ¶ 47.) This falls short. Acknowledging, as it must, that the three offerings were made pursuant to Regulation D exemption, the SEC's entire theory of Section 5 liability is predicated on the unavailability of Regulation D by virtue of this purportedly unaccredited investor. Yet, the SEC declines to allege that any investor in fact was unaccredited—just that paperwork suggests "at least one investor" per offering *may have* been unaccredited—revealing how paper thin the Section 5 claim really is.

Finally, given the SEC's failure to plead that the investors here expected profits derived from the effort of others, the SEC has not adequately pled that the offerings were securities in the first place. For the reasons set forth in the Shah Defendants' Motion, and as further supported herein, the Court should dismiss the Section 5 claim with prejudice.

I.     ARGUMENT

Dismissal of the Shah Defendants is warranted for three reasons (i) the SEC has not pled a specific Section 5 violation within the applicable statute of limitations; (ii) the SEC's Complaint pleads the existence of a Regulation D exemption, as it must, but does not sufficiently plead a failure to comply with the exemption requirements; and (iii) there are insufficient facts pled on the threshold question of whether the EB-5 offerings are securities under *Howey*.[3] These defenses are properly before the Court because the elements of a Section 5 claim are lacking, and the Court need not look beyond the pleadings to make this determination.

The parties, the Court, and the interests of justice are best served by dismissing the SEC's overbroad action from the outset because the SEC has not—and apparently cannot—contravene

---

[3] This is an unsettled question of law open to disparate interpretations in this Circuit and beyond. Thus, EB-5 investments in the context of securities violations are susceptible to dismissal for failing to state a claim because it is unclear whether securities regulations even govern.

these defenses by alleging this unidentified investor was in fact unaccredited, or otherwise provide the Court sufficient assurances that investments occurred within the limitations period. At a minimum, the SEC's case-in-chief should be partially dismissed to include only the NuRide offerings and investments within the ambit of the limitations period.

### A. The Availability of Injunctive Relief Does Not Preclude Dismissal

The SEC correctly acknowledges that the National Defense Authorization Act for Fiscal Year 2021 ("NDAA") § 6501, 134 Stat. 3388, 4626 (2021), does not extend the five-year limitations period for Section 5 claims seeking civil penalties—the only claim advanced against the Shah Defendants. *See* Opposition, p. 19 ("Commission claims for civil penalties are subject to a five-year statute of limitations under 28 U.S.C. § 2462."). The SEC, however, is incorrect that the NDAA's expansion of the statute of limitations for equitable remedies functions to revive its stale and otherwise insufficiently pled Section 5 claim.

Specifically, the SEC conflates the limitations period for remedies contemplated by the NDAA (*i.e.*, injunctive relief), with the limitations period for its deficient cause of action (*i.e.*, the Section 5 claim, governed by § 2462). (*Id.* at pp. 22-23.) But the availability of a timely remedy depends on the viability of the underlying alleged violation to state a cause of action. Put differently, because the Complaint fails to allege that the Shah Defendants violated Section 5 within the limitations period, there is no misconduct to enjoin, and hence no basis to apply the longer limitations period to the only claim against the Shah Defendants.

The SEC draws its equitable powers from Section 21(d)(1) and Section 20(b) of the Securities Act, which allows the SEC to request an injunction enjoining violative conduct, or to prevent those who threaten to violate securities in the imminent future. 15 U.S.C. § 78u(d)(5). To warrant an injunction, though, the SEC must plead (and later prove) an imminent threat of future illegal conduct on the part of the Shah Defendants to gain the benefit of the longer limitations

3

period. *See SEC v. Sharp*, 626 F. Supp. 3d 345, 398-99 (D. Mass. Sept. 6, 2022) (reviewing propriety of injunctive relief upon motion to dismiss and finding SEC injunctions are warranted in instances where securities violations involve fraud or scienter because the "scienter and the recurrent nature of the infractions" demonstrates the likelihood of future harm). Critically, the Shah Defendants, who are not alleged to have committed fraud, pose no such threat, particularly when there is no allegation that they acted with scienter.

At bottom, an injunction serves no purpose as a stand-alone remedy when (i) there is no *prima facie* securities violation; (ii) even assuming a violation, the conduct is not willful or reckless; (iii) there has been no evidence of investor harm arising from the conduct of the Shah Defendants; and (iv) the alleged misconduct has since been fully remediated. Thus, the line of authority interpreting the NDAA as extending the limitations period for equitable relief is irrelevant to whether the Section 5 claim should survive. The Section 5 claim should therefore be dismissed as untimely under the applicable five-year limitations period, without regard to the ten-year limitations period for injunctive relief.

In light of the narrow statute of limitations window for actionable investments, it is more plausible to conclude that most, if not all, of the investments in NYC Green will be precluded as a matter of law. And though a different limitations period exists for Med Trans and EB-5, these offerings likewise cannot form the basis for a Section 5 claim given the insufficient allegations regarding Regulation D, as explained below.

### B. On the Face of the Complaint, the Three NuRide Offerings Were Exempt from Securities Registration under Regulation D

The Complaint fails to allege a viable Section 5 violation. As an initial matter the SEC must allege that the Defendants failed to comply with Regulation D exemption, because it is clear from the face of the Complaint that Regulation D exemption applied. The Complaint,

however, falls short because it does not allege plausible, non-conclusory facts contravening the exemption.

> (1) <u>The SEC Must Allege that the Shah Defendants Did Not Meet the Requirements of Regulation D Exemption Because the Complaint Makes its Application Clear</u>

The SEC argues—without citing any authority—that it generally has no obligation to rebut an affirmative defense to a Section 5 claim. (Opposition, p. 31.) Where, however, as here, the application of an exemption from registration appears on the face of a complaint, the Court may dismiss a Section 5 claim for failing to adequately allege failure to comply with the exemption. *Jones v. Bock*, 549 U.S. 199, 215 (2007) (articulating court's authority to entertain affirmative defenses upon motion to dismiss "if the allegations, for example, show that relief is barred by the applicable statute of limitations, [then] the complaint is subject to dismissal for failure to state a claim[.]") To evade this canon of law, the SEC contends that no exemption is clear on the face of the SEC's complaint. (Opposition, p. 32.) But that is not the case:

- "Defendants purported to offer and sell securities in the NuRide EB-5 Offerings without registration with the Commission pursuant to exemptions, including Regulation D of the Securities Act." (Compl. ¶ 42.)

- "The NYC Green offering memoranda further stated that '"offers will be made only to investors who are 'accredited investors' as defined in Regulation D[.]"' (Compl. ¶ 68.)

- "Med Trans' offering memorandum stated, '"[we] offer the [i]nterests. . . pursuant to Rule 506(c) of Regulation D. . . [to] 'accredited investors' as defined in Rule 501 of Regulation D and whom the Company has verified as accredited investors."' (Compl. ¶ 139.)

- EV Mobility's offering memorandum stated, "[we] offer the [i]nterests . . . pursuant to Rule 506(c) of Regulation D. . . [to] 'accredited investors' as defined in Rule 501 of Regulation D and whom the Company has verified as accredited investors." (Compl. ¶ 154.)

The SEC concedes that MSA, at the direction of Mona, took steps to verify the accreditation status of each NuRide investor.[4] These allegations, among others, put the applicability of Regulation D at issue in the Complaint. Thus, the "allegations show the relief is barred" by this defense. *Jones v. Bock*, 549 U.S. 199, 215 (2007).

   (2) <u>The SEC's Allegations Fall Short of Establishing Regulation D Exemption Requirements Were Not Met</u>

The Court should dismiss the Section 5 claim as to all Defendants because the Complaint nowhere alleges that any investor was in fact unaccredited. Instead, the SEC avers conclusory allegations about information on investor eligibility forms.

The SEC cites no authority for its proposition that an "unaccredited investor at any point during the offering, renders the entire offering ineligible for exemption under Rule 506(c)[.]". (Opposition, p. 32.) Regardless, the Complaint falls short of alleging that the investors actually were unaccredited. For example, citing to ¶ 9 of the Complaint,[5] and referencing the eligibility forms, the SEC alleges "despite the ***clear indication*** that these investors were not accredited, the Defendants permitted the investors to invest…." (Opposition, p. 31.) Though this conclusory allegation should be disregarded, if the Court should consider it, this purported "indication" still does not give rise to a plausible inference that the investor was unaccredited when the SEC, by the same token, acknowledges that MSA took reasonable steps to verify each investors' accreditation status. (Compl. ¶ 46.) Further, the allegations about the eligibility forms do not take into consideration other information the Shah Defendants possessed (such as source of funds

---

[4] *See* Compl. ¶ 46 ("MSA Law employees, acting at [Mona's] direction, provided investors with an investor eligibility questionnaire to complete, which included a section to list assets, including financial accounts and real property, the value and source of those assets, the investor's liabilities, overall net worth, and income.").

[5] The allegation appears at ¶ 48 of the complaint, which is on page 9 of the complaint.

forms), or the investors' other financial criteria that MSA reviewed in addition to "financial accounts and real property, the value and source of those assets, the investor's liabilities, overall net worth, and income." *Id.*

Thus, while the allegation concerning the "at least one" unaccredited investor is conclusory (and should therefore be disregarded), more importantly, the allegation does not vitiate Regulation D's safe harbor because it was reasonable for MSA to rely on the investors' financial information provided in response to the questionnaires the SEC concedes MSA gave each investor. Aside from this conclusory and implausible allegation concerning "at least one unaccredited investor," there is no basis to find that an investment occurred within the limitations period that was not otherwise exempted from registration by virtue of Regulation D, requiring that the Shah Defendants be dismissed.

Put succinctly, to defeat the application of the Regulation D exemption, the SEC must allege that the investors were in fact unaccredited. Despite the SEC's extensive pre-litigation investigation, apparently the SEC did not obtain evidence that any investor was in fact unaccredited. On this point, had the SEC obtained such evidence, then why not simply allege "investor X was an unaccredited investor and invested in the offering on YY date, which was within the 5-year statute of limitations"? It would turn every pleading standard on its head to allow the SEC to proceed by extrapolating plausibility where it ***omits***, rather than includes, the essential and relevant factual material to state a colorable Section 5 claim.

Because the SEC has not pled specific facts concerning the accreditation status of this sole investor, Regulation D facially applies. The Shah Defendants therefore respectfully request that the Court dismiss the Section 5 claim with prejudice and dismiss them from this action.

C.     The Complaint Allegations Do Not Satisfy the *Howey* Test[6]

Finally, the Court should dismiss the Section 5 allegations because the SEC has not adequately pled that the offerings constituted securities in the first place. The SEC takes the position that all EB-5 investments are *per se* securities. But neither the SEC nor the Second Circuit have taken such a definitive position, and for good reason. Although termed an "investment" in the parlance of the EB-5 industry, the overriding goal of EB-5 investors is ostensibly to obtain a green card, not to earn profits derived from the efforts of others.

The *Howey* test is fact-intensive. *See SEC v. W.J. Howey Co.*, 328, U.S. 293 (1946) ("investment contract" exists when a transaction involves "(1) an investment of money (2) in a common enterprise (3) with an expectation of profits produced by the efforts of others (4) solely from the efforts of the promoter or a third party.") Most relevant here is the third prong of the *Howey* test. In determining whether a transaction involves an "expectation of profit," the Second Circuit looks to both the "subjective intent of the purchasers," as well as objective factors, such as the "character of the instrument or transaction offered based on what the purchasers were led to expect." *SEC v. Kik Interactive Inc.*, 492 F. Supp. 3d 169, 183 (S.D.N.Y. 2020).

---

[6] As explained in the Shah Defendants' Motion, the procedural constraints of a motion to dismiss presents obstacles in addressing issues that depend on argument and facts external to the pleading, such as the fact intensive inquiry under *Howey*. For this reason only, Defendants preliminarily addressed *Howey* in a footnote. To be clear, the Shah Defendants intend to preserve this argument and, contrary to the SEC's position, the Shah Defendants did not waive any portion of this argument by making use of a footnote—it would be unnecessarily prejudicial to find a waiver based on such a technicality. *See Allianz Glob. Invs. GmbH v. Bank of Am. Corp.*, No. 18 CIV. 10364, 2020 WL 4927575, at *5 (S.D.N.Y. Aug. 21, 2020) (declining to find waiver when "it is clear from the text that [litigant] did not intend to waive viable claims through the footnote."). In either event, the Shah Defendants now address this issue within the body of its brief.

Looking first at the subjective factors, it is not reasonably disputable that the NuRide investors were principally motivated by their desire to obtain permanent resident status in the United States, which is the entire point of an EB-5 investment. The question then becomes whether an ancillary motivation—the investors' expectations concerning the small forecasted returns described in the NuRide offering memoranda—is sufficient to satisfy the third prong of *Howey*. On this question, the SEC invites the Court to hold that the mere "possibility of financial return" creates an objective expectation of profit. Opposition, p. 7 (citing *SEC v. Xia*, No. 21-CV-5350, 2022 WL 17539124, at *20 (E.D.N.Y. Dec. 8, 2022)). But in *Xia*, the case on which the SEC relies, the character of the EB-5 offerings, along with the language of the offering memoranda at issue, are distinguishable from the facts of this case.

The EB-5 offerings in *Xia* promoted investments in elaborate real estate projects to build luxury hotels across New York—an appreciating asset. *Id.* at *2. Whereas the NuRide offerings promoted investments in transportation fleets—a depreciating asset. (*See*, *e.g.*, Compl. ¶ 51) ("according to its offering memoranda, [NYC Green] was to develop or assemble a fleet of for-hire vehicles[.]"). Most importantly, though, the *Xia* offering memoranda promised investors **nearly a 100 percent share in profits** realized on the hotel buildings, up until a full return of the initial $500,000 investment. *Id.* at *20 ("100% [of the profits from investments will be distributed] to the [EB-5 investor] until each [investor] has received US $500,000 in distributions."). In fact, one *Xia* offering **guaranteed** an "interest rate [at] 2% per annum" on the initial $500,000. *Id.*

By contrast, no such promises were made in the NuRide offering memoranda. The maximum return to NuRide investors in connection with Med Trans and EV Mobility was "2.5% of their capital contribution per annum, **project performance permitting**," and for NYC Green,

9

only 0.5 percent. (Compl. ¶¶ 61, 127, 151.) This fact, when coupled with the overarching character of the EB-5 offering as patently immigration related, makes it more than reasonable to reach the opposite conclusion of *Xia*, as this Circuit has done when there is a low threshold return on the transaction. *United States v. Daugerdas*, 837 F. 3d 212, 223 (2d Cir. 2016) (declining to draw an inference on expectation of profit because "low profit potential" failed to satisfy objective factors, and subjective non-profit purpose for transaction predominated over marginal possibility of profiting).

This is a sensible outcome because the EB-5 program was created by Congress as a policy to drive lawful immigration and stimulate job creation, not create a market for securities. Accordingly, the Court should dismiss the Section 5 claim because the SEC has failed to plead that the NuRide offerings are securities.

## CONCLUSION

For the foregoing reasons, the Shah Defendants respectfully request that the Court grant their Motion and dismiss the Section 5 claim against them with prejudice.

Dated: New York, New York
April 1, 2024

**MCGUIREWOODS LLP**

*/s/ Aaron F. Jaroff*
Aaron F. Jaroff
1251 Avenue of the Americas, 20th Floor
New York, NY 10020
Tel: (212) 548-2133
Fax: (212) 715-2310
ajaroff@mcguirewoods.com

Molly M. White (admitted pro hac vice)
Alex J. Scandroli (admitted pro hac vice)
1800 Century Park East 8th Floor
Century City, CA 90067
Telephone: 310 956 3423
Fax: 310 315 8210
mwhite@mcguirewoods.com
ascandroli@mcguirewoods.com

*Attorneys for Defendants Mona Shah,*
*Mona Shah & Associates, PLLC, Gravitas*
*NYC Regional Center, LLC, and Med Trans*
*EB-5 Fund, LLC*

To: All counsel of record (Via ECF)