**Morrison Cohen**

Jason P. Gottlieb

Partner & Chair, Digital Assets;
Chair, White Collar and Regulatory
Enforcement
(212) 735-8837

jgottlieb@morrisoncohen.com

March 30, 2026

**By ECF**

Hon. Robert W. Lehrburger
United States Magistrate Judge
Southern District of New York
500 Pearl Street, Room 1960
New York, NY 10007

      Re: *SEC v. Ahmed, et al.*, 23 Civ. 10210 (VSB)

Dear Judge Lehrburger,

This firm represents Defendants Nadim Ahmed, NuRide Transportation Group, LLC, NYC Green Transportation Group, LLC, and NYC EV Mobility LLC (collectively, the "NuRide Defendants"). We write to respond to the March 27, 2026 letter from Plaintiff Securities and Exchange Commission ("SEC") requesting an extension of the fact discovery period previously ordered by this Court, and providing the SEC's positions on the status of discovery.

**The SEC's Procedural Abuses Continue**

We must first address a procedural abuse (yet another in this case) committed by the SEC in filing their letter last Friday. The Court has previously heard our reports on the SEC's procedural abuses throughout the investigation of this matter; they are partially detailed in our January 22, 2024 Motion to Dismiss (Dkt# 33, at pp. 1-5), which Motion is still *sub judice*.

As the Court knows from the Parties' August 26, 2026 status conference (and the correspondence preceding it, Dkt# 59, 60), the SEC has continuously taken the position that discovery should proceed immediately. Indeed, the SEC's counsel, Chevon Walker, objected strenuously each time the Defendants asked her or the Court to stay discovery because their motions to dismiss were still pending decision. As a result of the SEC's objections, the Court ordered discovery to proceed and scheduled March 1, 2026 (later extended to April 13, 2026, over Defendants' objections, only due to the SEC's lapse in funding) as the deadline for the close of fact discovery.

On March 24, 2026 – approximately three weeks before the close of fact discovery – Ms. Walker suddenly emailed defense counsel seeking the parties' consent for an extension of the fact discovery deadline. Incredibly, Ms. Walker explained that the SEC now wants a discovery extension because "the Court has not yet issued a decision on defendants' motions to dismiss and defendants have not answered the SEC's Complaint" – *the very same rationale that she had outright rejected.* Ms. Walker then proposed extending fact discovery to "60 days after defendants

Hon. Robert W. Lehrburger, page 2
March 30, 2026

serve answers to the SEC's Complaint, to allow for additional discovery, including depositions." Nowhere did Ms. Walker (or anyone in the SEC) acknowledge their prior inconsistent position on discovery. Ms. Walker indicated that she would submit the extension request in the joint status report to the Court (which was not due until April 6, 2026).

On March 26, 2026, the NuRide Defendants and the Shah Defendants responded to the SEC and objected to its request for an extension of the fact discovery deadline. We also specifically asked Ms. Walker to send us any draft joint status report sufficiently in advance of filing so that we could properly set forth our position and our views of the discovery process in this matter. Later that afternoon, Ms. Walker sent the Defendants a draft status update purporting to summarize the state of discovery. Although the status report was not due until April 6, Ms. Walker informed Defendants that she was planning to file a joint status report by 5pm the next day – giving Defendants less than 24 hours' notice and time to review.

The SEC's initial draft status report did not provide a full and meaningful report of the parties' discovery – instead, it was a rushed effort by Ms. Walker to submit a filing to the Court so that she could simultaneously apply for an extension of the fact discovery deadline. The SEC's letter was extremely one-sided, mischaracterizing several points about the parties' discovery status, while requesting a stay of discovery. Defendants quickly returned some comments and noted that the next status report was not due until April 6, and thus there was no need to file so hastily. Ms. Walker nevertheless ignored Defendants' reasonable request for time to review her letter. Instead, the next day, on March 27, at 5:45 p.m., Ms. Walker circulated a "final" version of the status report to the Defendants and indicated that she "no longer styled it as a joint letter with the status update and the SEC's request, but instead as simply an SEC request and have included Defendants' respective positions." Ms. Walker then filed that document with the Court, *four minutes* after sending the "final" version to Defendants – before any Defendants responded to her 5:45pm email or had any meaningful opportunity to review her proposed submission.

As a result of the SEC's rushed efforts to obtain an extension of the discovery deadline, the Court received a letter on ECF (Dkt# 73) that was not the status report the Court ordered to be entered by "the parties" (see Dkt # 64), but instead the SEC's *own* views, masquerading as a jointly prepared letter. It included a section titled "NuRide Defendants' Position" that was not put into that form by the undersigned counsel, giving the letter the misleading look of a jointly prepared letter, when it was not. The SEC has thus presented this Court with a picture of events that do not reflect the actual status of discovery, in a guise that did not reflect all parties' positions.

**The Status of Discovery**

Discovery from the NuRide Defendants is substantially complete, and has been since the beginning of this case. The NuRide Defendants made at least ten different document productions to the SEC during the SEC's pre-litigation investigation phase.

The SEC vastly overstates its own compliance with its production obligations. First, on document production, the SEC claims to have produced 212 gigabytes of materials "from two investigations." These documents should have been ready to be produced on day one of discovery; it is routine in SEC litigation for the SEC to produce its investigative files. However, the SEC made its first production only on January 6, 2026, four months after discovery started, and roughly half-way through fact discovery. As it turned out, most of this production was simply a

Hon. Robert W. Lehrburger, page 3
March 30, 2026

reproduction of the massive amount of documents that defendants themselves had previously provided to the SEC during the SEC's investigation, and did not include other documents in the SEC's possession. Sure enough, the parties held a meet-and-confer on February 4, 2026, at which the SEC acknowledged that "investigative testimony transcripts," "criminal law enforcement communications," "USCIS communications" and certain other emails were all outstanding and had not yet been produced – despite these productions being *de rigueur* in SEC cases, and having been properly requested months prior.

The SEC did not make its second production of documents, the majority of which appear to have been gathered in 2019-20 (and thus were readily available on the SEC's systems) until last week, March 20, 2026 – six weeks after the meet-and-confer, shortly before the scheduled close of fact discovery, and more than eight months after the start of discovery.

Second, regarding its other discovery obligations, the SEC claims to have "responded to written discovery requests from Defendants, including more than 250 requests for admission" ("RFAs"). Here, too, the SEC is misleading the Court. Many of the NuRide Defendants' RFAs were virtually identical, but focused individually on a particular investor (designed to show that the SEC had not performed an investigation as to that particular investor sufficient to make the allegations contained in the Complaint). Indeed, the NuRide Defendants propounded 130 identical requests – one for each investor – requesting that the SEC "Admit that prior to filing this action, the SEC did not analyze whether [investor name] qualified as an accredited investor under Regulation D." The SEC responded with 130 identical sets of objections, refusing to admit or deny that contention, but stating – incredibly – that "Whether the SEC conducted an analysis has no bearing on the Court's ultimate adjudication of any party's claims or defenses." In other words, the SEC was not only objecting to responding, it was declaring irrelevant *whether it even bothered to investigate whether it had a basis to even make its claims*.

In the February 4, 2026 meet-and-confer, Ms. Walker doubled down, confirming her belief that the SEC was not required to investigate its assertions of investor accreditation before bringing a federal litigation asserting that certain investors were not accredited. It is unlikely the Court has heard the last of this issue.

**The NuRide Defendants Oppose the SEC's Motion to Extend the Discovery Cutoff**

The NuRide Defendants oppose the SEC's request for an extension of this Court's ordered discovery schedule. (As stated in the SEC's letter, Dkt #73 at p. 3, the Shah Defendants similarly do not consent to extending the discovery cut-off.)

Judge Broderick's template Case Management Plan and Scheduling Order states that fact discovery should be "a period not to exceed 120 days unless the Court finds that the case presents unique complexities or other exceptional circumstances." *See, e.g.*, Dkt# 59-1 (SEC's requested discovery order). The SEC shows no such complexities or exceptional circumstances here.

In our August 26, 2025 conference with Your Honor, Defendants requested a stay of discovery pending the District Court's resolutions of the motions to dismiss, because those motions were likely to result in the dismissal of some or all of the claims or defendants. As a result, the parties would be wasting resources by conducting discovery. That consideration has been all the more acute when weighing the essentially unlimited resources of the SEC, against the NuRide

Hon. Robert W. Lehrburger, page 4
March 30, 2026

Defendants, who were all but bankrupted by the SEC's overbearing investigation even before it filed litigation.

Undeterred by the procedural unfairness, or the notion that the Defendants had not yet filed an Answer, the SEC insisted on starting discovery immediately. Indeed, the SEC argued vociferously for a *four-month* discovery period, consistent with Judge Broderick's preferences. *See, e.g.*, Dkt# 59-1 (SEC's original proposed request to close fact discovery on *November 25, 2025*, approximately 120 days after the date of the request, as set forth in the Court's template).

Now, the SEC insists on extending the previously-ordered discovery cutoff, *past month eight*, ironically on the very same basis that it previously argued should *not* matter – that the District Court has not yet ruled on Defendants' motions to dismiss. The cliché "heads we win, tails you lose" comes to mind.

The SEC's March 27, 2026 letter attempts to justify its request by saying that "the parties are still in the process of exchanging discovery materials, and depositions have not yet occurred." The SEC cannot use its own untimely productions, or failure to take any depositions, to argue that discovery should be extended. The Defendants should not be prejudiced by the SEC's failure to do its homework. The discovery schedule has been known for seven months, and was extended once already, at the SEC's request.

The SEC claims that without an Answer on file, it cannot predict the defenses Defendants plan to assert. But the SEC investigated this matter, pre-litigation. Defendants have been telling the SEC their defenses for literally *years*. The SEC simply did not bother to investigate those defenses during its investigation (arguing, incredibly, that it has no obligation to do so). And by its own concession through its request, the SEC has not completed its investigation in the last seven months of discovery. Those lapses in judgment should not be held against the Defendants.

The NuRide Defendants oppose the SEC's continued gamesmanship. In cases involving the federal government, the playing field is uneven at the start. In cases where the defendants are impecunious, even more so. Instead of trying to play fairly in this matter, the SEC has abused its power at virtually every turn. It is unseemly for the SEC to submit letters to the Court that look like joint letters when they are not; to mislead this Court about the discovery it has requested, produced, and received; and to argue to extend the discovery period longer (disadvantaging Defendants) for the same reason it argued to start discovery sooner (disadvantaging Defendants). Lawyers wielding the awesome power of the federal government should be held to a higher standard of ethics and fairness than has been displayed here.

Respectfully submitted,

*/s/ Jason P. Gottlieb*

Jason P. Gottlieb

cc:    All parties (via ECF)