UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

-against-

NADIM AHMED a/k/a NADIM KHAN, MEHREEN SHAH a/k/a MONA SHAH, NURIDE TRANSPORTATION GROUP, LLC, NYC GREEN TRANSPORTATION GROUP, LLC, MED TRANS EB-5 FUND, LLC, NYC EV MOBILITY LLC, GRAVITAS NYC REGIONAL CENTER, LLC f/k/a NYC TRANSPORTATION REGIONAL CENTER, LLC, and MONA SHAH & ASSOCIATES, PLLC,

Defendants.

Case No. 23-CV-10210-VSB

**DEFENDANTS' MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .......... 1

STATEMENT OF FACTS .......... 3

ARGUMENT .......... 5

I. The Withheld Internal Communications and Investigatory Materials Are Not Privileged .......... 5

A. The Documents the NuRide Defendants Seek to Compel Are Relevant .......... 6

B. The SEC Cannot Hide Behind Deliberative Process Privilege .......... 7

II. The Remaining Investigatory, Factual and Trial Material Cannot be Withheld on the Basis of Boilerplate Objections and Further Privilege Assertions .......... 8

III. At a Minimum, the SEC Must Be Required to Produce a New Privilege Log .......... 10

CONCLUSION .......... 11

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Children First Found., Inc. v. Martinez*,
2007 WL 4344915 (N.D.N.Y. Dec. 10, 2007) ... 7

*Coastal States Gas Corp. v. Dep't of Energy*,
617 F.2d 854 (D.C. Cir. 1980) ... 7

*Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*,
314 F.R.D. 85 (S.D.N.Y. 2016) ... 6

*Grand Cent. P'ship, Inc. v. Cuomo*,
166 F.3d 473 (2d Cir. 1999) ... 5, 6

*Greater New York Taxi Assn. v. City of New York*,
2017 WL 4012051 (S.D.N.Y. Sept. 11, 2017) ... 7

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
274 F.R.D. 106 (S.D.N.Y. 2011) ... 5

*Nat'l Rifle Ass'n of Am. v. Cuomo*,
332 F.R.D. 420 (N.D.N.Y. 2019) ... 10

*Natl. Council of La Raza v. Dept. of J.*,
411 F.3d 350 (2d Cir. 2005) ... 7

*Natl. Immig. Project of Natl. Lawyers Guild v. U.S. Dept. of Homeland Sec.*,
868 F. Supp. 2d 284 (S.D.N.Y. 2012) ... 7

*S.E.C. v. Collins & Aikman Corp.*,
256 F.R.D. 403 (S.D.N.Y. 2009) ... 10

*S.E.C. v. Yorkville Advisors, LLC*,
300 F.R.D. 152 (S.D.N.Y. 2014) ... 10

*Yusupov-Millevoi v. Kingyum Transports LLC*,
349 F.R.D. 491 (S.D.N.Y. 2025) ... 4, 6

## STATUTES & RULES

17 C.F.R. § 230.501(a) ... 6

17 C.F.R. § 203.506(c) ... 5, 6, 7

17 C.F.R. § 203.506(c)(2)(ii) ... 6

Fed. R. Civ. P. 26 .......... 5

Fed. R. Civ. P. 26(b)(1) .......... 4

Fed. R. Civ. P. 26(b)(5)(A) .......... 5, 10

Defendants Nadim Ahmed a/k/a Nadim Khan, NuRide Transportation Group, LLC, NYC Green Transportation Group, LLC, and NYC EV Mobility LLC (together, the "NuRide Defendants"), submit this memorandum of law in support of its Motion to Compel the Production of Documents (the "Motion").

## PRELIMINARY STATEMENT

This case is premised on the SEC's assertion that the NuRide Defendants offered unregistered securities that "were not eligible for exemptions from registration." Compl. ¶ 43. That affirmative accusation was made without any investigation as to whether any potential exemptions applied. It was made even though the Shah Defendants testified during the investigatory phase that they possessed extensive documentation concerning the accreditation status of investors that would support the finding of a Regulation D exemption.

The SEC knew that documents existed that could disprove its case in chief. Yet it chose not to request such documents during the multi-year investigation that bankrupted the NuRide Defendants. Indeed, the SEC failed to request them until after filing this action, wherein the Shah Defendants promptly produced over 70,000 pages of documents proving that all investors were in fact accredited, and, at a minimum, that the Shah Defendants had a strong basis to believe they were accredited.

Having put the Reg D exemption squarely at issue and having built its case on the basis that no exemption existed, the SEC is now using the discovery process – which Defendants have requested to stay pending the resolution of motions to dismiss – as both a sword and shield. The SEC is refusing to produce its own internal communications concerning the Reg D exemption, which would reveal what it actually knew, analyzed, and believed about that exemption, while

simultaneously fishing for the production of myriad categories of documents that have no relation to the claims the SEC actually alleged.

The SEC should not be allowed to force the NuRide Defendants, who have no funds (thanks to the SEC), to produce innumerable documents that the SEC cannot even rationally tie to its claims, while also denying the relevance of (and/or asserting blanket privilege claims over) the very documents that may exculpate defendants: its communications about its enforcement policies and priorities, any internal dissent over whether to bring this case, and, among others, any analysis it performed of the reasonableness of the NuRide Defendants' accreditation determinations.

The documents the NuRide Defendants seek through this Motion are squarely relevant, proportional to the needs of the case, and not legitimately shielded by privilege. When the SEC chooses to bring a case, it must be treated like any other litigant, and blanket assertions of privilege cannot immunize entire categories of documents from disclosure. If the SEC is entitled to demand all of the documents that underlie Defendants' reasoning that the relevant offerings were exempt from registration, the SEC is not entitled to shield all of the documents that underlie its reasoning that the offerings "were not eligible for exemptions from registration." Compl. ¶ 43.

Here, the SEC's boilerplate invocations of the deliberative process privilege do not withstand scrutiny, and cannot be used to shield the agency's existing policy or enforcement priorities when such documents are untethered from a discrete pending decision. To the extent the SEC stands on its claims of privilege, it must be required to a produce a privilege log that identifies specific documents, and when those documents were created (or, in the case of communications, sent/received) – as opposed to the broad categories currently identified in its privilege log – along with an explanation concerning why each document is privileged.

## STATEMENT OF FACTS

Following the Complaint in this case, all Defendants moved to dismiss. Briefing was complete by April 1, 2024. On March 31, 2024, the United States Attorney's Office for the Southern District of New York intervened and moved to stay discovery for three months. Dkt. # 56. That case was concluded with no charges brought. On July 25, 2024, days before expiration of the stay, and over Defendants' objections, the SEC requested that discovery reopen. Dkts. # 59, 60. On August 26, 2024, despite the fact that the parties' motions to dismiss were still pending[1] and could drastically narrow the claims at issue, the Court denied Defendants' request for a further stay. Dkt. #64. Though the SEC fought to initiate discovery, it did not send requests for production to any Defendant until December 9, 2025. On the eve of the conclusion of discovery, the SEC moved for an extension, whereupon the Court agreed to extend document discovery to June 12, 2026, while staying all other discovery. On the day that discovery was set to close, the SEC initiated this briefing to compel the NuRide Defendants to produce documents. Dkt. #87.

Throughout this period of forced discovery, the SEC has continued the abuses of Defendants that have come to characterize this case. The SEC originally issued a total of at least 138 document requests to the four NuRide Defendants. Many were extraordinarily burdensome. Many had many subparts. *See* Dkt. #81 Exs. 1-4. Requests for Production directed to each NuRide Defendant. Many called for "all" documents, or, worse, "all" communications. Many called for documents regarding events well outside the statute of limitations. Many were duplicated but directed to each individual NuRide Defendant, forcing the NuRide Defendants to expend significant resources to respond individually. The cost of

---

1 The Motions to Dismiss remain undecided, and have now been pending for nearly two and a half years.

responding in full would have been extraordinary and unnecessary given the voluminous amount of discovery that has already taken place in this case.

During the investigatory phase, in response to the SEC's investigative subpoenas and requests for information, the NuRide Defendants made at least 10 separate document productions to the SEC, totaling close to 20,000 pages (Bates Nos. TNGSEC_0000001-0019392). During that same time, the Shah Defendants separately produced over 119,000 documents to the SEC. In addition to these document productions, prior to the filing of the Complaint, the NuRide Defendants (through counsel) also communicated with the SEC on multiple occasions and provided extensive factual information to explain why the SEC's investigation lacked legal and factual merit.

In addition to what was produced during the investigation, the Shah Defendants recently produced over 70,000 pages of documents concerning the accreditation of investors, which showed that all investors were in fact accredited, and, at a minimum, that the Shah Defendants had a strong basis to believe they were accredited. The NuRide Defendants have also recently produced documents on the issue of the $11 million non-EB5 investment mentioned in the 2014 NYC Green offering memorandum. Between the documents produced during the investigation and the documents produced during discovery, the SEC has all of the information it requires for this matter.

The SEC has made a significant production of its files. However, the SEC has refused to produce several categories of documents that are relevant to the NuRide Defendants' anticipated affirmative defenses in this case (if the district court does not fully dismiss this action, which would be the proper result). Thus, the NuRide Defendants bring this Motion to ask the Court to compel the SEC to disclose these documents, which will reveal the circumstances under which this case was brought – and whether it should have been brought at all.

## ARGUMENT

Federal Rule of Civil Procedure 26(b)(1) permits discovery of "any nonprivileged matter that is relevant to a party's claim or defense and proportional to the needs of the case." Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense. *Yusupov-Millevoi v. Kingyum Transports LLC*, 349 F.R.D. 491, 494 (S.D.N.Y. 2025) (citations and quotations omitted).

A party may withhold otherwise discoverable materials on privilege or work-product grounds, but Rule 26(b)(5)(A) requires it to expressly assert the claim and describe the withheld documents in a manner enabling other parties to assess the claim. Fed. R. Civ. P. 26. The deliberative process privilege reaches a document only if it is both predecisional and deliberative. *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 482 (2d Cir. 1999). Purely factual material – as opposed to opinions and recommendations – is not protected. *Id.* Procedurally, to establish the privilege, the government must satisfy three requirements: a formal claim lodged by the department head (or high-authority subordinate) after actual consideration; precise and certain reasons for confidentiality; and identification and description of the documents. *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 274 F.R.D. 106, 110 (S.D.N.Y. 2011).

### I. <u>The Withheld Internal Communications and Investigatory Materials Are Not Privileged</u>

At the heart of this Motion is the SEC's refusal to produce its internal communications concerning the application of Regulation D and Rule 506(c), its enforcement policies and priorities

regarding Section 5 and Regulation D,[2] any internal dissent over the decision to charge,[3] communications to and from Commission leadership about the case,[4] and any analysis of the reasonableness of the NuRide Defendants' accreditation determinations.[5] *See* Ex. A, SEC Objections to NuRide Defendants' RFPs Nos. 12-15, 19. Because such documents are relevant to the dispute, and not shielded by the deliberative process privilege, they must be produced.

**A. The Documents the NuRide Defendants Seek to Compel Are Relevant**

First, when the SEC affirmatively alleged that the NuRide offerings "were not eligible for exemptions from registration," Compl. ¶ 43, the questions of what it knew about the investors' accreditation, how it read Rule 501(a) and Rule 506(c), and whether it analyzed the exemption at all before suing became highly relevant to the NuRide Defendants' exemption defense. Relevance is construed broadly, *Yusupov-Millevoi*, 349 F.R.D. at 494, and the party resisting discovery bears the burden of establishing irrelevance, *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 314 F.R.D. 85, 88-89 (S.D.N.Y. 2016). Though the SEC has repeated boilerplate objections of "not relevant" to the above requests, it did not – and likely could not – articulate how documents

---

2 The NuRide Defendants' Request No. 12 seeks, among others, "Communications about the application and/or appropriateness of Regulation D of the Securities Act and its registration exemptions (17 C.F.R. § 203.506) in this Case" and "Communications about the SEC's enforcement policies and priorities relating to Regulation D and Rule 506 (c) and its effects on this Case."

3 The NuRide Defendants' Request No. 13 seeks "All documents evidencing or reflecting any disagreement, objection or dissent within the SEC regarding the investigation of the NuRide Defendants and/or enforcement of this Case."

4 The NuRide Defendants' Request No. 14 seeks "All Documents and Communications concerning the SEC's enforcement priorities related to Section 5 of the Securities Act and changes thereto, beginning on January 1, 2022" and Request No. 15 seeks "All communications to or from SEC Leadership regarding this Case, the Criminal Case, or any of the NuRide Defendants, including all email communications, text messages, and transcripts (whether manually or AI-generated) of any meetings or calls."

5 The NuRide Defendants' Request No. 19 seeks "All documents evidencing the SEC's analysis and/or review of the reasonableness of the NuRide Defendants' accreditation determination under 17 C.F.R. § 203.506 (c)(2)(ii)" and Request No. 30 seeks "All documents evidencing the SEC's analysis and/or review of the reasonableness of the NuRide Defendants' accreditation determination under 17 C.F.R. § 203.506 (c)(2)(ii)."

concerning the SEC's views of Section 5 exemptions are not relevant to a case alleging the sale of unregistered securities where it further alleged that exemptions were not applicable. The SEC cannot be permitted to affirmatively place the absence of an exemption at the center of its Complaint and withhold its own contemporaneous assessment of that exemption as "not relevant."

**B. The SEC Cannot Hide Behind Deliberative Process Privilege**

Second, to the extent the requested documents exist, a question which the SEC has not answered, they are not shielded by the deliberative process privilege. "To qualify for the deliberative process privilege, a document must be both 'predecisional' and 'deliberative.'" *Grand Cent. P'ship,* 166 F.3d at 482. Documents that explain and apply established policy are not deliberative, and an agency "will not be permitted to develop a body of 'secret law,' used by it in the discharge of its regulatory duties and in its dealings with the public, but hidden behind a veil of privilege." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 867-68 (D.C. Cir. 1980); *see also Natl. Council of La Raza v. Dept. of J.*, 411 F.3d 350, 359 (2d Cir. 2005) (finding that where the DOJ had adopted a legal memorandum as part of its policy, "the public can only be enlightened by knowing what the [agency] believes the law to be") (internal quotations and citations omitted). The SEC's internal communications about what Regulation D and Rule 506(c) require – the securities laws it enforces every day – are the law, not protected policy formation. *Natl. Immig. Project of Natl. Lawyers Guild v. U.S. Dept. of Homeland Sec.,* 868 F. Supp. 2d 284, 293 (S.D.N.Y. 2012) (a document that "focuses on how existing policy applies to specific case[s], is not, however, predecisional, because it consists entirely of opinion[s] about the applicability of existing policy to a certain state of facts") (citations and quotations omitted).

Here, where the SEC has placed its interpretation of Regulation D – as applied to the facts of this case – at the center of the litigation, the privilege does not apply. "The historical and

overwhelming consensus and body of law within the Second Circuit is that when the decision-making process itself is the subject of the litigation, the deliberative process privilege cannot be a bar to discovery." *Children First Found., Inc. v. Martinez*, 2007 WL 4344915, at *7 (N.D.N.Y. Dec. 10, 2007). In *Greater New York Taxi Assn. v. City of New York*, 2017 WL 4012051, at *10 (S.D.N.Y. Sept. 11, 2017), the court found that the deliberative process privilege did not apply to an "email chain, discussing whether to suspend Mr. Freidman's [taxi] medallions" because it "implicate[d] a central issue in this case—what motivated the defendants in taking adverse enforcement actions against the plaintiffs." Here, the SEC's charging decision – in particular, its assertion that no exemption applied – is not collateral; it is the reason why the SEC brought the case. Thus, any internal SEC communications responsive to Request Nos. 12, 13, 14, 15, and 19 previously withheld on the basis of the deliberative process privilege must be produced.

If the Court should decide that the documents do fall within the deliberative process privilege, then the documents should be listed individually on a privilege log that lists the sender / recipient of such documents and the date it was sent, because even that information is highly relevant to the Defendants' anticipated affirmative defenses.

## II. The Remaining Investigatory, Factual and Trial Material Cannot be Withheld on the Basis of Boilerplate Objections and Further Privilege Assertions

The SEC's additional withholding of broad categories of investigative and trial-related materials is improper as the materials are relevant and, due to their factual nature, also unshielded by privilege.

First, though the SEC has produced certain non-privileged documents gathered during its investigations, it continues to withhold any investigative files "beyond" those gathered in

connection with "NY-10138 Investigation, the NY-9454 Investigation" and the current action.[6] *See* Ex. A, SEC Objections to RFPs at 9. The SEC has also rejected requests for factual material including "all potentially exculpatory material,"[7] material that it may rely on at trial,[8] and documents concerning whether individuals associated with this case completed the ethics training instituted by the SEC after the *Debt Box* decision.[9]

At issue is the scope of the investigative file. The SEC does not have the right to determine, in its sole discretion, what materials are relevant simply because it chooses to place those materials in a file the SEC chooses to label with a number other than "NY-10138." The SEC's position would be as if the Defendants chose to put certain materials in a folder marked "SEC Case," and then took the position that all Defendants had to do was produce whatever materials were in that folder. We have no idea whether, for example, there is some "NY-10139" matter that was opened relating to any of the persons relevant to this case, or what materials might be in that file. We also

---

6 The NuRide Defendants' Request No. 1 seeks "All Documents and Communications collected by the SEC from Defendants or any other entity or individual in connection with its investigation of Defendants in this Action"; The NuRide Defendants' Request No. 2 seeks "The SEC's entire investigative file for this Case, including all subpoenas and document requests issued to third parties, and all documents produced thereto"; and the NuRide Defendants' Request No. 3 seeks "All documents pertaining to the initiation of the SEC's investigation in this Case, including but not limited to any tips, referrals, or third-party complaints."

7 The NuRide Defendants' Request No. 19 seeks "All potentially exculpatory material and information in the SEC's possession, custody and control as it relates to this Case, including but not limited to all information favorable to the NuRide Defendants, and all information that can be used to impeach the trial testimony of a government witness pursuant to Giglio v. United States, 405 U.S. 150 (1972), and its progeny."

8 The NuRide Defendants' Request No. 176 seeks "All Documents the SEC intends to rely on at trial in this Case."

9 The NuRide Defendants' Request No. 175 seeks "Documents sufficient to show that individuals affiliated with, employed by, engaged by or working on behalf of the SEC on this Case completed the ethics training instituted by the SEC after the Debt Box decision finding the SEC in contempt of court (23-cv-482-RJS-DBP)."

have no idea whether there are documents relating to this case that exist in other files somewhere within the SEC.

If the SEC has relevant materials outside its self-designated "investigative file," it should be required to search for them, and produce them if located. The SEC has, to date, refused to even search for any such materials.

## III. At a Minimum, the SEC Must Be Required to Produce a New Privilege Log

After years of demanding that Defendants spend hundreds of thousands of dollars on a privilege log to identify a smattering of privileged documents inadvertently disclosed among the thousands of documents produced during a previous SEC investigation, the SEC has now produced its own privilege log – high-level and purely categorical – that fails to identify specific documents withheld on the basis of privilege. *See* SEC Privilege Log. The SEC, like any litigant, must produce a privilege log that complies with Federal Rule of Civil Procedure 26(b)(5)(A).

The SEC's categorical log fails its purpose because it does not permit anyone to test its claims. Privilege logs, and particularly those that invoke the deliberative-process privilege, must "contain sufficient information such that the reviewing party can make an intelligent determination as to whether the withheld documents are predecisional and deliberative," *Nat'l Rifle Ass'n of Am. v. Cuomo*, 332 F.R.D. 420 (N.D.N.Y. 2019) (citations and quotations omitted). A log that offers only vague categories of documents and subjects is "deficient" and leaves the Court "unable to evaluate whether" the documents are privileged. *S.E.C. v. Collins & Aikman Corp.*, 256 F.R.D. 403, 416-17 (S.D.N.Y. 2009) (finding a log deficient where it provided "no more useful information than the type of document (a memorandum), the addressees (various SEC staff), and the subject matter (Issue 00–25, a policy statement superseded by Issue 01–09, the subject of Request 33)"). Here, the SEC's log identifies documents only by group, and describes sweeping categories – for example, "[i]nternal SEC emails and other communications" spanning "March

2016 - July 2018; October 2019 - present" – and universally applies work-product, attorney-client, deliberative-process, and law-enforcement privileges over the entire category. *See* SEC Privilege Log. Logs such as this – even when offered by the SEC – are routinely found to be deficient. *S.E.C. v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 162–63 (S.D.N.Y. 2014) (finding a similar log, which failed to identify documents by name, grouped documents into categories, and blanket applied multiple privileges, was insufficient).

The SEC should be ordered to serve a document-by-document log and to submit the disputed materials for *in camera* review. The NuRide Defendants are prepared to stipulate to an appropriate protective order to address any legitimate confidentiality concerns.

## CONCLUSION

For the foregoing reasons, the NuRide Defendant's Motion to Compel with respect to Request Nos. 1, 2, 3, 12, 13, 14, 19, 30, 175, 176 should be granted in its entirety, including an award for attorneys' fees and costs associated with this Motion.

Dated: September 10, 2025

**MORRISON COHEN LLP**

By: *Jason Gottlieb*
Jason Gottlieb
Emma McGrath

909 Third Avenue
New York, NY 10022
Telephone: 212.735.8623
Facsimile: 212.735.8708
jgottlieb@morrisoncohen.com
emcgrath@morrisoncohen.com

*Attorneys for Nadim Ahmed, NuRide Transportation Group, LLC, NYC Green Transportation Group, LLC, and NYC EV Mobility LLC*

**WORD COUNT CERTIFICATION**

Pursuant to Local Civil Rule 7.1 of the Southern District of New York, I hereby certify that the total number of words in this memorandum of law, excluding the caption, table of contents, table of authorities, signature block, and this word count certification, is 3,412.

*/s/ Jason Gottlieb*
JASON GOTTLIEB