**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**SECURITIES AND EXCHANGE COMMISSION,**

**Plaintiff,**

**-against-**

**NADIM AHMED a/k/a NADIM KHAN,**
**MEHREEN SHAH a/k/a MONA SHAH,**
**NURIDE TRANSPORTATION GROUP, LLC,**
**NYC GREEN TRANSPORTATION GROUP, LLC,**
**MED TRANS EB-5 FUND, LLC,**
**NYC EV MOBILITY LLC,**
**GRAVITAS NYC REGIONAL CENTER, LLC f/k/a NYC TRANSPORTATION REGIONAL CENTER, LLC, and**
**MONA SHAH & ASSOCIATES, PLLC,**

**Defendants.**

**23 Civ. 10210 (VSB)(RWL)**

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION TO COMPEL DEFENDANTS NADIM AHMED, NURIDE TRANSPORTATION GROUP, LLC, NYC GREEN TRANSPORTATION GROUP, LLC, AND NYC EV MOBILITY LLC TO PRODUCE DOCUMENTS

Chevon Walker
Austin Thompson

*Attorneys for Plaintiff*

September 10, 2026

# TABLE OF CONTENTS


**PRELIMINARY STATEMENT** .......... 1

**BACKGROUND** .......... 2

I. Discovery Status .......... 2

II. NY-9454 Investigation Documents that the NuRide Defendants Now Assert are Privileged .......... 4

A. The SEC's 2016 Investigative Subpoena and NuRide and Ahmed's Production .......... 4

B. The NY-10138 (Pre-Suit) Investigation in this Action .......... 6

**ARGUMENT** .......... 8

I. The NuRide Defendants Should Be Compelled to Comply with the SEC's Discovery Demands .......... 8

A. Electronically Stored Information .......... 9

B. Other Requests Included in the SEC's April 16 Letter .......... 11

1. Requests No Longer At Issue .......... 11

2. Documents Central to the Fraud Allegations .......... 12

a. Requests Concerning the Use of NYC Green's Assets and NYC Green's Business Structure .......... 13

b. Request Concerning the Purported $11 Million Management Contribution .......... 15

c. Documents Concerning Allegations Concerning Misappropriation of Investor Funds to Pay an SEC Settlement .......... 16

d. Documents Identifying the NuRide Defendants' Personnel .......... 17

e. Documents Concerning the NuRide Defendants' Finances .......... 18

f. Documents Concerning Agreements Between and Among the Defendants and Terrazola Builders .......... 19

II. The NuRide Defendants Should Be Compelled to Produce the 2016-2017 Documents ....20

A. NuRide Waived Privilege Over the 2016-2017 Documents ....20

1. No Inadvertent Production: NuRide Intentionally Produced the 2016-2017 Documents ....21

2. Reasonable Steps to Prevent Any Inadvertent Disclosure ....23

3. The NuRide Defendants Did Not Take Reasonable Steps to Correct Any Disclosure ....24

B. NuRide's Privilege Log is Overbroad and Insufficient ....25

1. It is the NuRide Defendants' Burden to Demonstrate that Communications Were Privileged ....25

2. NuRide's Search-Generated Privilege Log is Insufficient Under Any Standard ....26

**CONCLUSION** ....28

# TABLE OF AUTHORITIES

***Cases***

*In re Actos Antitrust Litig.*, 703 F. Supp. 3d 468 (S.D.N.Y. 2023)....24

*In re Aenergy, S.A.*, 451 F. Supp. 3d 319 (S.D.N.Y. 2020)....27

*Atronic Int'l, GMBH v. SAI Semispecialists of Am., Inc.*, 232 F.R.D. 160, 165 (E.D.N.Y. 2005) .24

*Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437 (S.D.N.Y. 1995) ....22

*Cassard v. Omnicom Media Grp. Holdings, Inc.*,
No. 25-CV-2201 (JLR) (RWL), 2026 WL 1492903 (S.D.N.Y. May 28, 2026) ....27

*In re Cty. of Erie*, 473 F.3d 413 (2d Cir. 2007) ....26

*GenOn Mid–Atl., LLC v. Stone & Webster, Inc.*,
No. 11 Civ. 1299(HB)(FM), 2011 WL 5439046 (S.D.N.Y. Nov. 10, 2011) ....26

*Hayden v. Int'l Bus. Machs. Corp.*,
21-CV-2485 (VB) (JCM), 2023 WL 4622914 (S.D.N.Y. July 14, 2023) ....28

*Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*,
295 F.R.D. 28 (E.D.N.Y. 2013), aff'd, 29 F. Supp. 3d 142 (E.D.N.Y. 2014)....26

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 104 F.R.D. 103 (S.D.N.Y. 1985) ....20

*Mitre Sports Int'l Ltd. v. Home Box Office, Inc.,* 304 F.R.D. 369 (S.D.N.Y. 2015) ....21

*MSF Holding, Ltd. v. Fiduciary Tr. Co. Int'l*,
No. 03-CV-1818(PKL)(JCF), 2005 WL 3338510 (S.D.N.Y. Dec. 7, 2005) ....26

*In re NASDAQ Market-Makers Antitrust Litigation*, 929 F. Supp. 723 (S.D.N.Y. 1996) ....8

*SEC v. Rayat*, No. 21-cv-4777 (LJL), 2022 WL 1423300 (S.D.N.Y. May 5, 2022)....8

*S.E.C. v. Yorkville Advisors, LLC*, 300 F.R.D. 152 (S.D.N.Y. 2014) ....24

*TIG Ins. Co. v. Swiss Reinsurance Am. Co.*,
21-CV-8975 (NSR) (JCM), 2023 WL 6058649 (S.D.N.Y. Sept. 18, 2023)....26

*U.S. v. Kelley*, 551 F.3d 171 (2d Cir. 2009) ....19

*U.S. v. McDermott*, No. 25-CR-427 (AS), 2026 WL 2294812 (S.D.N.Y. Aug. 10, 2026) ....20

*von Bulow v. von Bulow*, 811 F.2d 136 (2d Cir. 1987)....................................................27

***Rules***

Fed. R. Civ. P. 26(b)(1) ....................................................2, 8, 10, 11

Fed. R. Civ. P. 26(b)(2) ....................................................9, 10

Fed. R. Civ. P. 26(c)(1) ....................................................8

Fed. R. Civ. P. 37(a)(3)(B) ....................................................8

Fed. R. Evid. 502(b)....................................................20, 21, 23, 24, 25

***Secondary Sources***

Mona Shah & Partners, "NuRide Transportation: New Age Medicine in the Time of Corona," https://tinyurl.com/m5jmwmub (last visited June 1, 2026) ....................................................6

Pursuant to Rule 37(a)(3)(B) of the Federal Rules of Civil Procedure (the "Federal Rules"), the Securities and Exchange Commission ("Commission" or "SEC") respectfully submits this Memorandum of Law in Support of its Motion to Compel Defendants Nadim Ahmed ("Ahmed"), NuRide Transportation Group, LLC ("NuRide"), NYC Green Transportation Group, LLC ("NYC Green"), and NYC EV Mobility LLC ("EV Mobility") (collectively the "NuRide Defendants") to produce documents.

## PRELIMINARY STATEMENT

Over several years, the NuRide Defendants have offered and sold unregistered securities, collecting over $66 million from more than 100 investors. In connection with the offerings, Defendants Ahmed, NuRide, and NYC Green made misrepresentations to investors about a purported $11 million financial contribution by management and about the structure of NYC Green's operations, and misappropriated NYC Green investor funds to pay the settlement owed by a separate company, Edwin Shaw LLC, in an earlier SEC enforcement case.

All Defendants are charged with violations of Sections 5(a) and (c) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a) and (c)] and Defendants Ahmed, NuRide, and NYC Green are additionally charged with fraud violations under Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

In response to the Commission's First Requests for the Production of Documents to each defendant, the NuRide Defendants have produced just 27 documents in this litigation. The Commission has narrowed its requests to those contained in an April 16, 2026 letter to the NuRide Defendants and while the NuRide Defendants have agreed to conduct some preliminary searches for certain documents, they have yet to provide any additional documents.

Compounding this issue, the NuRide Defendants now seek to reverse their prior intentional production and waiver of privilege as to thousands of documents they produced in an earlier Commission investigation. Not only is the NuRide Defendants' current assertion of privilege overbroad, failing to differentiate between communications with current co-Defendants Mona Shah ("Shah") and her firm, Mona Shah & Associates PLLC ("MSA Law") in in their legal roles and communications with them in their business roles, but NuRide's privilege log is insufficient to allow for evaluation of a claimed privilege as to the bulk of the documents it lists.

The documents the Commission now seeks are well within the scope of discovery under Federal Rule 26(b)(1). The materials sought are all relevant to the Commission's claims, particularly Defendants' misrepresentations to investors. Further, the requests are proportional to the needs of the case. The offerings here are large, with Defendants having collected tens of millions of dollars from more than 100 investors; and the NuRide Defendants have access (in some cases, exclusive access) to these documents, which are within the files of their businesses. The NuRide Defendants' objections due to claimed financial hardship should not outweigh the Commission's entitlement to access critical evidence, particularly given the scale of the alleged fraud and in light of the fact that the Commission has significantly narrowed its requests to reduce the burden on the NuRide Defendants.

The Court should compel the NuRide Defendants to produce the documents requested in the SEC's April 16 Letter.

## BACKGROUND

### I. Discovery Status

On December 9, 2025, the SEC served individual Requests for Production of Documents on the NuRide Defendants: 45 on Ahmed, 43 on NuRide, 26 on NYC Green, and 24 on EV

Mobility. (Walker Decl. Exs. 1 to 4.)[1] On January 8, 2026, the NuRide Defendants responded to each request, largely objecting on the basis that the SEC's requests were "unduly burdensome and unnecessary" and sought documents the SEC already has. (*Id.* Exs. 5-8.) The parties met on February 4, 2026, to discuss the Requests, at which point the NuRide Defendants confirmed they did not intend to produce any responsive documents. (*Id.* ¶ 6.)

The SEC then narrowed its requests to the most critical materials, by letters on February 17, and April 16, 2026. (*Id.* Exs. 9, 10 ("April 16 Letter").) The SEC's narrowed requests in its April 16 Letter focused on information related to the Complaint's allegations that Ahmed, NuRide, and NYC Green made misstatements to investors, communications with investors about the subject matter of those assertions, records concerning NYC Green assets, including the use of investor funds, and agreements between defendants. (*Id.* Ex. 10.) On April 21, the NuRide Defendants responded to the SEC's April 16 Letter, agreeing to produce documents responsive to just one of the SEC's twenty narrowed requests in the SEC's April 16 Letter, and refusing to produce documents responsive to the other nineteen on various grounds, including relevance and undue burden and cost. (*Id.* Ex. 11.)

When SEC counsel emailed on April 29, to schedule another meet-and-confer, the NuRide Defendants did not respond. (*Id.* ¶ 10.) On June 12, the NuRide Defendants produced 27 documents in response to one of the SEC's requests in its April 16 Letter. (*Id.* ¶ 15.) Following an August 21 court conference, the parties met and conferred twice more, on July 27 and August 3 but were ultimately unable to resolve their disputes. (*Id.* ¶¶ 22-26.)

---

[1] "Walker Decl. ¶ __" refers to the Declaration of Chevon Walker, dated September 10, 2026, and the exhibits thereto, filed herewith.

## II. Documents from the SEC's NY-9454 Investigation that the NuRide Defendants Now Assert are Privileged

Beyond refusing to produce documents in this litigation, the NuRide Defendants also seek to belatedly assert privilege over thousands of documents NuRide and Ahmed produced to the SEC almost a decade ago.

### A. The SEC's 2016 Investigative Subpoena and NuRide and Ahmed's Production

In connection with an earlier SEC investigation identified by investigation number NY-9454 (the "NY-9454 Investigation"), SEC staff (the "Staff") issued subpoenas on November 7, 2016, to Defendants NuRide and Ahmed, and NuRide's Chief Compliance Officer ("NuRide CCO"). (*Id.* Exs. 14-16.) The subpoenas sought documents related to securities NuRide and Ahmed offered, and communications with entities that marketed those offerings, including Defendant Shah and her firm, MSA Law, who acted as counsel and marketer for NuRide and its offerings. (Walker Decl. Ex. 20 at 121:14-19.) The cover letters attaching the subpoenas instructed recipients to provide a privilege log identifying withheld documents. (*Id.*, Ex. 14-16 at PDF 4-5.)

On November 29, 2016, MSA Law and Shah—then counsel for NuRide, Ahmed, and the NuRide CCO—produced roughly 119,000 documents to the SEC on behalf of their clients in response to all three of the November 8, 2016 SEC subpoenas (the "NuRide Production"). (*Id.* ¶ 28.) Counsel produced this carefully organized production under cover letters offering "detailed explanations and clarifications relating to the requested responses," and cataloguing the contents of each folder and sub-folder. (*Id.* Ex. 12 at PDF 2, 25.) That level of detail extended to expressly flagging categories of documents involving their own attorney, Shah, or her firm—such as "communications to or from any EB-5 investor in NYC Green or the Representative of such person" and fee reduction letters—as well as invoices from MSA Law to NuRide. (*Id.* at PDF 4,

6, 9.) Yet nowhere in the cover letters accompanying this meticulously documented production did counsel object to the production of communications involving counsel or discuss a privilege log. (*Id.*)

A joint declaration from Ahmed and the NuRide CCO accompanied the NuRide production and cover letter, affirming that they had personally searched for documents and had included more documents than the SEC requested "for edification." (*Id.* Ex. 17 at PDF 3.) Ahmed went further in a separate affidavit, attesting that he "welcome[d] the opportunity to clear the air regarding potential wrong doing" and "welcomed" the SEC to "read my texts and emails." (*Id.* Ex. 18 at 1, 7.)

During the NY-9454 Investigation, the Staff took sworn testimony from Defendants Ahmed and Shah, and an additional NuRide employee. The Staff marked and used as an exhibit one of the documents at issue in this motion during Ahmed's testimony. (*Id.* Ex. 19 at 143-144 (Ahmed Testimony Transcript).) Ahmed was unrepresented during this testimony, with Shah's consent.

The NY-9454 Investigation resulted in a settlement pursuant to which Edwin Shaw—an entity co-owned by Ahmed and Shah—consented to an order, without admitting the findings that it had violated Exchange Act Section 15(a) [15 U.S.C. § 78o(a)] (the "Edwin Shaw Settlement"). Edwin Shaw was ordered to pay the Commission $544,744.20 under that settlement—the same SEC settlement that Ahmed, NuRide, and NYC Green are alleged in the instant Complaint to have used NYC Green investor funds to pay. (Dkt. 1, Complaint ("Compl.") ¶¶ 105-122.)

Shah and her firm MSA Law had extensive non-legal involvement in the NuRide business aside from their role as counsel. Alongside her legal work, Shah marketed NuRide to

investors—including recording a podcast and praising NuRide on a public webpage[2]—and Shah testified that she lobbied public officials on NuRide's behalf.[3] She described Edwin Shaw, of which she is part owner, as a "vehicle for bringing in investors for NuRide and for other projects." *Id.* 28:13-15. MSA Law's marketing work was "technically"[4] billed to Edwin Shaw, but its dual roles, Shah acknowledged, raised questions for some investors: "We've gotten the conflict of interest question many times as to whether there is a conflict of interest because we market and we represent NuRide and we also represent the investors." Walker Decl., Ex. 20 at 121:14-19. An MSA Law employee also handled bookkeeping for Edwin Shaw. *Id.* 126:16-21.

### B. The NY-10138 (Pre-Suit) Investigation in this Action

In the pre-suit investigation underlying the instant SEC case, identified by Investigation number NY-10138 ("NY-10138 Investigation"), SEC staff subpoenaed NuRide. In a June 8, 2023 email to SEC counsel, NuRide, then represented by its current counsel, objected "wholesale to the request for communications with Mona Shah," while conceding that Shah "may have communications that are not privileged because they are not in service of legal advice." (Walker Decl. Ex. 21.) NuRide's counsel insisted that there were "probably not many" non-privileged communications and that searching for them would be too burdensome. (*Id.*) The following day, on June 9, 2023, SEC staff emailed NuRide and specifically identified that NuRide had

---

[2] *See* Mona Shah & Partners, "NuRide Transportation: New Age Medicine in the Time of Corona," https://tinyurl.com/m5jmwmub (last visited June 1, 2026).
[3] Ex. 20 at 38:14-19 ("There was that huge escapade with the mayor and Uber of last year, and we went and lobbied the state councilman and I was brought in to explain what EB-5 was and where EB-5 would suffer and how many people had jobs and how they would suffer[.]").
[4] Ex. 20 at 40:14-17 ("I think you're aware from everything that we've already provided that we do market them, but we technically the marketing is supposed to be handled by Edwin Shaw, so we then bill Edwin Shaw.")

previously-produced documents that included communications with Shah. (*Id.* at 1 ) Counsel raised no privilege concerns at that time.

After that June email exchange, and before the NuRide Defendants asserted any privilege regarding documents previously produced, the SEC subpoenaed Shah for testimony in the NY-10138 Investigation. During that testimony, at least three documents now at issue were marked as exhibits, Shah was asked about them, and she testified about them—and neither Shah nor her counsel asserted that any privilege existed. (*Id.* Ex. 22 at 153-63, 208-225, 236-244.)

In light of NuRide counsel's refusal to produce communications involving Shah on the grounds that it may be privileged or too burdensome to search for, SEC counsel identified for NuRide's current counsel, 17 additional communications between NuRide and Shah that had been produced in the NY-9454 Investigation. (*Id.* Ex. 23, ¶ 35.) SEC counsel did so in an abundance of caution, despite the long period that had passed without any privilege assertion. (*Id.*) SEC counsel's email asked NuRide's counsel to state whether NuRide believed the documents to be privileged, redact any privileged portions, and to explain why NuRide believed it had not waived privilege by its earlier production. (*Id.*)

NuRide responded that all communications between the NuRide Defendants and MSA Law should be deemed privileged. (*Id.* Ex. 24.) Then, NuRide provided a privilege log listing 22,380 entries—almost 20% of the documents that had been produced years-earlier in the NY-9454 Investigation—generated by applying search terms to the previously produced documents. (*Id.* Ex. 25 at 1.) After further correspondence, NuRide reduced this list to 5,721 documents (the "2016-2017 Documents"); counsel explained that this privilege log (the "NuRide Privilege Log") was also generated by search terms, not a document-by-document privilege review. (*Id.* Ex. 26 at

1.) Pending resolution of this dispute, the SEC has sequestered the 2016-2017 Documents and redacted testimony transcripts in which they were used. (*Id.* ¶ 39.)

The parties have met and conferred on this dispute both before and after the July 21, 2026 pre-motion conference. The NuRide Defendants continue to stand on their previous privilege assertions.

## ARGUMENT

### I. The NuRide Defendants Should Be Compelled to Comply with the SEC's Discovery Demands

Federal Rule 26(b)(1) permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," considering, among other factors, "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, [and] the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(c)(1). A party may move to compel production when another party fails to produce documents. Fed. R. Civ. P. 37(a)(3)(B). As discussed below, each of the SEC's request falls well within that scope.

The "court must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case." Fed. R. Civ. P. 26 advisory committee's note to 1983 amendment. And "where the proof is largely in the hands of alleged conspirators, . . . plaintiffs must be given ample opportunity for discovery." *In re NASDAQ Market-Makers Antitrust Litigation*, 929 F. Supp. 723, 725 (S.D.N.Y. 1996) (internal citation omitted). The Commission's prior investigation does not narrow its entitlement to discovery. *SEC v. Rayat*, No. 21-cv-4777 (LJL), 2022 WL 1423300, at *3 (S.D.N.Y. May 5, 2022).

**A. Electronically Stored Information**

The NuRide Defendants are the exclusive or most logical source of the emails and other communications the Commission seeks in Requests 5, 6, and 8 to 10 (Walker Decl. Ex. 10)—and no burden they can show outweighs the importance of that evidence to this case. The NuRide Defendants have nonetheless refused to either search for or provide even this narrowed set of documents, asserting that they are not relevant, and too voluminous and expensive to produce. (*Id.* Ex. 11.)

Federal Rule 26(b)(2) provides that: "[a] party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost" if, on motion to compel discovery or for a protective order, the party makes such a showing. Fed. R. Civ. P. 26(b)(2)(B). Even then, "the court may nonetheless order discovery from such sources if the requesting party shows good cause." *Id.* Good cause exists here for several reasons.

First, the NuRide Defendants are the most logical sources of these documents, and as to certain categories, the only possessors. The Commission seeks documents associated with the NuRide Defendants' own businesses. As detailed below, the NuRide Defendants' failure to produce certain documents, for example, internal communications concerning NYC Green operations in response to Requests 6 and 8-10, would deprive the Commission of any means of obtaining that relevant, critical evidence.

Second, none of the factors that would otherwise limit discovery applies. The Court must limit discovery otherwise allowed if (i) it is "unreasonably cumulative or duplicative, or can be obtained from" a more convenient, less burdensome, or less expensive source; (ii) the seeking party "has had ample opportunity to obtain the information by discovery in this action;" or (iii)

the discovery sought is outside the scope of Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C). None of these criteria apply to the SEC's requests.

The SEC's Requests are neither duplicative nor more conveniently obtained elsewhere. The Commission is not seeking previously produced documents and says so in its requests. (Walker Decl. Ex. 10.) The NuRide Defendants, moreover, possess and are the common party to all internal communications the Commission seeks, as well as external communications between the NuRide Defendants and over 100 investors that are presumably kept in the course of the NuRide Defendants' business. There is no alternative source of internal communications sought in Requests 6(a) and 8-10. And the only alternative to the NuRide Defendants producing external communications sought in Requests 5(d) and 6(b) would be far more inconvenient and burdensome—requiring the Commission and the dozens of non-party investors each to separately search for and produce their own communications with the NuRide Defendants.

Further, the Commission has sought these materials since its first discovery requests to the NuRide Defendants, and they have consistently refused to comply.

Lastly, the requests target communications central to the Complaint's core allegations. The Commission's Complaint alleges, among other things, that Ahmed, NuRide, and NYC Green made material misrepresentations to investors concerning a purported $11 million management contribution and NYC Green's structure and operations, and misappropriated investor funds to fund another entity's 2018 settlement with the Commission. (Compl. ¶¶ 81-101.). The Commission's requests seek communications centrally focused on those allegations:

- Request 5 seeks "[a]ll communications with NYC Green investors concerning any $11 million investment into NYC Green by NYC Green principals;"
- Request 6 seeks "[a]ll communications involving or concerning" the NYC Green investor whose funds were used to pay the 2018 settlement;"

- Requests 8 through 11 seek communications sufficient to identify "the use of investor funds," "who controlled, ordered or caused the transfer of NYC Green investor funds;" "who drafted and/or distributed NYC Green offering documents," and "communications sufficient to identify and describe all marketing of the NuRide Offerings and/or soliciting of potential investors."

These requests have been narrowed to yield the documents most critical and directly relevant to the Complaint allegations, and fall squarely within the scope of Federal Rule 26(b)(1).

### B. Other Requests Included in the SEC's April 16 Letter

#### 1. Requests No Longer At Issue.

Four categories of requests are no longer before the Court, either because the Commission has obtained the documents elsewhere or because the parties have reached agreement.

Request 1 (all versions of NYC Green Offering Documents): The Commission is no longer seeking these documents from the NuRide Defendants. In a June 18, 2026 letter, the Shah Defendants represented that they have produced all versions of NYC Green offering documents in their possession and agreed to consider a stipulation that all NYC Green investors received a version of the offering documents previously produced to the Commission. (Walker Decl., Ex. 34.)

Request 2 (IRS W-2 and 1099 forms for EB-5 program positions): The Commission is no longer seeking these documents from the NuRide Defendants. The Shah Defendants produced documents responsive to this request as part of their June 18, 2026 production. (*Id.*)

Requests 11 and 12 (marketing and investor-solicitation materials; accreditation-verification policies and procedures): On August 3, 2026, counsel for the NuRide Defendants indicated that they do not have documents responsive to these requests in their possession, custody, or control, but that Defendant MSA Law does. (Walker Decl. ¶ 24.) Commission counsel is consulting with MSA Law's counsel concerning production. (*Id.* ¶ 20.) Provided the

Commission can obtain these documents from MSA Law, it will not seek them from the NuRide Defendants.

Request 19 (documents produced to the Department of Justice): The Commission withdraws this request.

**2. Documents Central to the Fraud Allegations**

The remaining SEC's requests share a common thread: each targets communications or records bearing directly on the Complaint's core allegations—misrepresentations about the $11 million management contribution, misuse of NYC Green's assets and investor funds, and the diversion of funds to pay the Edwin Shaw settlement—and many seek documents that reside with the NuRide Defendants and nowhere else. If the NuRide Defendants were permitted to withhold these items, the Commission would have no means of obtaining certain evidence vital to its case. The NuRide Defendants' recurring objections on relevance, burden, timeframe, and the statute of limitations fail for that reason.

**a. Requests Concerning the Use of NYC Green's Assets and NYC Green's Business Structure**

**Request 3: Documents sufficient to identify vehicle registration information for all vehicles purchased by NYC Green.**

**Request 4: All contracts, agreements, and invoices between NYC Green and Uber Technologies, Inc. and any other rideshare or taxi company; and all contracts, agreements, and invoices between NuRide and Uber Technologies, Inc. and any other rideshare or taxi company.**

**Request 7: Any contract, agreement, loan, or promissory note between NuRide and NYC Green**

**Request 8: Documents and communications, including agreements and contracts, sufficient to identify and describe the use of NYC Green investor funds for the purchase and/or lease of real property.**

These four requests target the same core allegation: that despite representations to investors that NYC Green was structured to comply with the EB-5 Program, the NuRide Defendants used NYC Green's assets—its vehicles, its revenue-producing contracts, its investor funds—in ways inconsistent with those representations, and misrepresented NYC Green's structure and NuRide's role within it. (Compl. ¶¶ 5, 6, 86-101.) The NuRide Defendants objected to all four as "overbroad, too expensive and burdensome, not reasonably tailored to this case," and that they "have no idea why this request would be relevant to [the SEC's] claims." (Walker Decl. Ex. 11 at 2.) Those objections lack merit.

Request 3 seeks vehicle registration information for vehicles NYC Green purchased, information highly relevant to proving that NYC Green's vehicles were used inconsistently with representations to investors. The NuRide Defendants objected that these documents "reside with third parties and state agencies," that "matching to entity purchases across time is labor-intensive," and that request falls outside of the statute of limitations. (*Id.*) As to Requests 7 and 8, the NuRide Defendants also objected because the requests purportedly lacked a timeframe. (*Id.*)

Operating a rideshare business required the NuRide Defendants to maintain vehicle registrations for their own vehicles, so this information should be accessible, and the Commission has narrowed the request to vehicles registered to NYC Green alone—a small, manageable set. At the parties' July 27, 2026 meet-and-confer, counsel for the NuRide Defendants indicated that certain documents may be easily retrieved, but counsel did not respond when asked for an update on August 21, 2026. (Walker Decl. ¶¶ 23, 26.)

Request 4 seeks the NuRide Defendants' rideshare contracts and invoices, which bear directly on the Commission's allegation that the NuRide Defendants arranged for NuRide to use NYC Green's assets, act as party to NYC Green's revenue-producing contracts, and create jobs through NuRide that should have been created through NYC Green—the company purported to operate a ride-share company. Proving that such arrangements were inconsistent with representations to investors requires proof of their terms, which Request 4 is crafted to elicit.

Request 7 seeks agreements between NuRide and NYC Green themselves. This evidence is directly relevant to the allegations that NuRide misrepresented NYC's structure and its own role in operating NYC Green's business or assets. The NuRide Defendants objected that the request lacked a timeframe, but the request already incorporates the period defined in the Commission's original document requests—June 2014 to the present—which spans the entire NYC Green Offering and is therefore the appropriate scope for agreements between the two entities. (Walker Decl. Ex. 11.) The Commission has already received over 300 documents from Uber and does not ask the NuRide Defendants to reproduce them. It seeks only documents concerning ride-share arrangements with other companies. Counsel agreed at the July 27, 2026 meet-and-confer to search for these documents but, again, did not respond to the August 21 follow-up. (*Id.* ¶¶ 23, 26.)

Request 8 seeks documents involving the use of investor funds for what presumably would be a small number of large purchases or leases. Each request references the SEC's initial requests for production, which defined the relevant period as from June 2014 to the present. The Commission's Complaint comprises the entire timeline of the NYC Green Offering, so it is appropriate to seek all agreements between NYC Gren and NuRide throughout the entire period.

The NuRide Defendants' statute of limitations objection is also without merit. The Commission filed its Complaint on November 21, 2023, alleging conduct that occurred between June 2014 and November 2022. (Dkt 1.) As explained in detail in the SEC's opposition to Defendants' motion to dismiss, *see* Dkt. 48 at 19-23, the William M. Thornberry National Defense Authorization Act for Fiscal year 2021 ("NDAA") Pub. L. No. 116-283, § 6501, 134 Stat. 3388, 4626 (2021) applies retroactively and imposes a ten-year statute of limitations for scienter-based violations, specifically naming Section 10(b) of the Exchange Act, with which three of the NuRide Defendants are charged.

**b. Request Concerning the Purported $11 Million Management Contribution**

**Request 5: Documents Concerning a Purported $11 Million NYC Green Management Contribution**

The NuRide Defendants have represented that they have produced everything they intend to produce in response to this request. To the extent the NuRide Defendants are withholding communications with NYC Green Investors concerning this subject matter, the Commission requests that it be produced.

These materials are highly relevant. The Commission alleges that certain NuRide Defendants (Ahmed, NuRide, and NYC Green) misrepresented to investors that management made a $11 million contribution to NYC Green. (Compl. ¶¶ 5, 86-91.) To prove its claims, the

Commission needs records of what Defendants communicated to investors concerning the management contribution. Equally vital is evidence of any basis or lack of one for those representations, much of which is under the exclusive control of the NuRide Defendants, including "documents sufficient to identify and describe the $11,000,000 in assets," and "the value of any software or intellectual property transferred to NYC Green" in connection with the $11 million contribution, "any contracts or agreements in connection with the transfer of software or intellectual property to NYC Green."

This information is central to the Commission's claims and the Commission has dramatically narrowed its request to specific types of documents concerning the management contribution and as to communications with investors to instead seek a limited set of the NuRide Defendants' communications with investors, such a request is proportional to this case.

#### c. Documents Concerning Allegations Concerning Misappropriation of Investor Funds to Pay an SEC Settlement

**Request 6: 2018 Edwin Shaw Payment – Documents and communications sufficient to identify who executed, ordered, instructed, or caused any NYC Green and/or NuRide transfer of funds in connection with Edwin Shaw's 2018 payment to the Commission, as referenced in paragraphs 105 through 122 of the Commission's Complaint; all communications involving and concerning [a certain NYC Green Investor], and all contracts, agreements, loans, promissory notes, and invoices between NuRide and Edwin Shaw and between NYC Green and Edwin Shaw.**

The NuRide Defendants objected to this request on the grounds that it was not relevant and outside of the statute of limitations. (Walker Decl. Ex. 11.) The Commission's claims were filed within the applicable statute of limitations. The Commission refers to its discussion in Section I.B.2.a above concerning the application of the NDAA to its claims against the NuRide Defendants.

This request is highly relevant and appropriately narrow in scope. The Commission's Complaint alleged that misrepresentations to a particular investor about the use of his funds and

this request specifically references such relevant portions of the Complaint. (Walker Decl. Ex. 10.) Information concerning who executed, ordered, instructed, or caused the relevant financial transactions may provide evidence of the violative conduct, as well as scienter, both of which are critical to the Commission's claims. Such information would also inform further discovery, including depositions of NuRide personnel. Further, the Commission cannot obtain these documents elsewhere, as Edwin Shaw is an affiliate of the Defendants, thus failure to compel the NuRide Defendants to produce such information would subject the Commission to completely forgo such evidence.

#### d. Documents Identifying the NuRide Defendants' Personnel

**Request 9: Documents and communications sufficient to identify NYC Green and/or NuRide officers and/or employees who controlled, ordered or caused the transfer of NYC Green investor funds.**

**Request 10: Documents and Communications sufficient to identify NYC Green and/or NuRide personnel who drafted and/or distributed NYC Green offering documents.**

The NuRide Defendants objected to both requests on the grounds of relevance. (Walker Decl. Ex. 11.) However, the requested documents are highly relevant to the Commission's Complaint allegations that Defendants misrepresented the use of NYC Green assets and investor funds and allegation of specific written misrepresentations to investors contained in the NYC Green Offering documents, including its business plans. (*See e.g.*, Compl. ¶¶ 81-91.) Information concerning who controlled, ordered, or caused certain financial transfers, as sought in Request 9, and who drafted and/or distributed NYC Green offering documents may provide evidence of the violative conduct, and scienter, both necessary for the Commission to prove its scienter-based fraud claims pursuant to Section 10(b) of the Exchange Act and Section 17(a) of the Securities Act. Additionally, despite claiming that the term "business plan" is too broad to be

proportional (Walker Decl. Ex. 11), as the NuRide Defendants are aware, NYC Green maintained documents specifically titled, "Comprehensive Business Plan," and the Commission's request refers to this narrow set of documents and is thus proportional to the case.

At the parties' July 27, 2026 and August 3, 2026 meetings, counsel for the NuRide Defendants stated that searches for communications would be too expensive. (Walker Decl. ¶ 23.) However, this is not the only factor for the Court to consider. Here, the Commission has narrowed its requests to seek not all communications, but those sufficient to identify the personnel involved in certain acts that could provide direct evidence of conduct alleged in the Commission's Complaint, evidence of scienter or inform further discovery, including transcripts of NYC Green personnel's depositions. Additionally, most of the requested evidence can only be obtained from the NuRide Defendants, which weighs in favor of requiring the NuRide Defendants to provide it.

**e. Documents Concerning the NuRide Defendants' Finances**

**Requests 13 and 14: General ledgers, balance sheets, and financial statements for NuRide, NYC Green, EV Mobility, and Med Trans through the present.**

The NuRide Defendants objected to these requests based on relevance and unnecessary burden. (Walker Decl. Ex. 11.) As to relevance, the Commission's Complaint alleges misrepresentations concerning the use of NYC Green assets, use of investor funds, a purported $11 million contribution to NYC Green, and the structure and operation of NYC Green's business. (Compl. ¶¶ 81–101.) The financials requested will provide evidence central to proving the Commission's claims and how NYC Green's assets and expenses are accounted for and whether such records were consistent with representations to investors. As to proportionality, the documents requested are limited in scope and should be accessible to any business. Further, the requests make clear that the NuRide Defendants need not reproduce documents and the requests

are limited to those financials the Commission does not have – the years requested as to each document is specified in the request. (Walker Decl. Ex. 10.)

While the NuRide Defendants object to providing financials through the present, the Defendants continued to provide status updates concerning the NuRide Offering projects to investors well after they invested. Such additional communications with investors are relevant. As the Second Circuit has held, a court can consider later, lulling activities as evidence of fraudulent intent. *U.S. v. Kelley*, 551 F.3d 171, 175-76 (2d Cir. 2009).

On August 3, 2026, counsel for the NuRide Defendants agreed to produce financials through the date of the filing of the Complaint. (Walker Decl. ¶ 25.) However, counsel has not provided an update on such productions. (*Id.* ¶ 26.)

#### f. Documents Concerning Agreements Between and Among the Defendants and Terrazola Builders

**Request 15: All agreements, contracts, loans, promissory notes, and invoices concerning the transfer of NYC Green investor funds to Terrazola Builders.**

**Requests 16, 17, and 18: All contracts, agreements, loans, promissory notes, employment agreements between the NuRide Defendants, the Shah Defendants, and Terrazola Builders.**

The NuRide Defendants object to this request based on relevance and its lack of timeframe. As noted above, the Complaint alleges misrepresentations concerning the use of NYC Green assets, the use of investor funds, and the structure and operation of NYC Green's business. (Compl. ¶¶ 81 – 101.) Terrazola Builders appears to be owned, at least in part, by Ahmed. Thus, the limited information requested (specific agreements), which should be accessible for any business, could provide sound evidence as to whether the use of investor funds and operation of NYC Green's business in connection with Terrazola is consistent with representations to investors, which is indeed relevant.

The NuRide Defendants object to Requests 16 to 18, on the basis that production would be burdensome. (Walker Decl. Ex. 11.) Despite their objections, the NuRide Defendants agreed to produce an MSA Law retaining agreement. (*Id.* ¶ 25.) There is little doubt that such documents are relevant, and the Commission has significantly narrowed its requests to seek specific contracts and agreements. Evidence of the transfer of assets among defendants, whether pursuant to written agreement or otherwise, could provide evidence of misrepresentations to investors concerning NYC Green's structure and operation and the use of investor funds.

## II. The NuRide Defendants Should Be Compelled to Produce the 2016-2017 Documents

The NuRide Defendants, through counsel, intentionally produced the 2016-2017 Documents to the SEC and are not entitled to now claw them back simply because they have changed their mind or engaged new counsel with a different view.

### A. NuRide Waived Privilege Over the 2016-2017 Documents

A party asserting that privilege was not waived over documents previously produced to a federal agency must show (1) that the disclosure was inadvertent; (2) that the privilege holder took reasonable steps to prevent disclosure; and (3) that the holder promptly took reasonable steps to fix the error. Fed. R. Evid. 502(b) ("Evidence Rule 502(b)"). Courts interpreting this three-part test also consider four *Lois* factors: "[1] the reasonableness of the precautions to prevent inadvertent disclosure, [2] the time taken to rectify the error, [3] the scope of the discovery and the extent of the disclosure," and "[4] the overreaching issue of fairness." *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 104 F.R.D. 103, 105 (S.D.N.Y. 1985). But the Evidence Rule 502(b) elements control: "if a party asserting privilege has failed to satisfy any one of Evidence Rule 502(b)'s elements, then the rest of the *Lois* factors can't preclude waiver." *U.S. v. McDermott*, No. 25-CR-427 (AS), 2026 WL 2294812, at *2 (S.D.N.Y. Aug. 10, 2026).

Because the NuRide Defendants fail to meet the first of the Evidence Rule 502(b) elements, that the disclosure was inadvertent, they waived any privilege that existed over the 2016-2017 Documents. And because of their conduct, none of the *Lois* factors—including the overreaching issue of fairness[5]—could preclude that conclusion.

**1. No Inadvertent Production: NuRide Intentionally Produced the 2016-2017 Documents**

NuRide cannot show that their disclosure to the SEC was "inadvertent"—Evidence Rule 502(b)'s first requirement. This is dispositive. Their prior production was categorized, supported by sworn declarations attesting to the document-gathering process, and described as "everything called for under the production"—reflecting an intentional production that waived privilege. (Walker Decl. Ex. 17.) Ahmed, NuRide's principal, attested that he "welcome[d] the opportunity to clear the air regarding potential wrong doing [*sic*]" and "welcome you to read my texts and emails." (Walker Decl. Ex. 18 at 1, 7.)

Shah, who made that production on behalf of the NuRide Defendants under her detailed cover letter, would have understood that it contained more than one thousand communications with her law firm. The subpoena to NuRide explicitly sought "[a]ll documents, including communications, concerning any payments from NYC Green or NuRide to Mona Shah and/or Mona Shah & Associates PLLC," (*Id.* Ex. 14 at PDF 12, Req. 16), and implicitly sought

[5] The NuRide Defendants' counsel cited the higher standard contained in Federal Rule of Evidence 502(a) at the July 21 hearing (*see* Walker Ex. 27 at 37:20-25). This higher standard applies "only in those 'unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary.'" *Mitre Sports Int'l Ltd. v. Home Box Office, Inc.*, 304 F.R.D. 369, 371 (S.D.N.Y. 2015) (quoting Fed. R. Evid. 502, committee notes). But the SEC did not reference that provision in its premotion letter, *see* Dkt. 81, and does not now assert that the NuRide Defendants have waived privilege over all subject matter at issue in the 2016-2017 Documents. Thus, Evidence Rule 502(a)'s fairness requirement does not—as NuRide counsel stated—apply here.

communications with Shah and her firm through requests such as "[a]ll documents, including communications, concerning any commissions, fees or other payments relating to any EB-5 investment in NYC Green." (*Id.* Ex. 14 at PDF 12, Req. 12.; *see also* Exs. 15 and 16 at PDF 12, at Req. 5 (similar).) The subpoenas also set out requirements for logging any withheld documents. (Walker Decl. Exs. 14-16 at 10-11.)

Yet in the cover letters that accompanied their production, NuRide never objected to the requests seeking communications with counsel, nor did it produce a privilege log disclosing any documents withheld. Instead, Shah's cover letter attached a declaration in which the NuRide CCO and Ahmed affirmed that NuRide had "met our obligations under the subpoena by searching carefully and thoroughly for everything called for by the said subpoena." (*Id.* Ex. 17 at PDF 3.) Each of them would have had to review the subpoena's detailed instructions for logging privileged documents to make, or affirm, that representation. (*Id.* Ex. 14 at 10-11.)

NuRide and Ahmed's current counsel suggested at the July 21, 2026 premotion hearing that Shah may not have understood that NuRide could withhold documents. *Id.* Ex. 27 at 38:2-6. But both attorney and clients were apprised of that option pursuant to the cover letters from the SEC accompanying the subpoenas and, again, in the instructions to the subpoenas, but simply chose not to withhold the 2016-2017 Documents or produce a privilege log. (*Id.* Exs. 14-16) Shah, the lawyer involved in many of the communications produced, was in the best position to review these documents for privilege. While there is nothing to indicate that Shah did not understand the applicable procedure, even if that were the case, NuRide's production was still intentional, and her negligence in failing to understand that procedure waived the NuRide Defendants' privilege. *See Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D.

437, 442 (S.D.N.Y. 1995) ("Though the attorney-client privilege indeed belongs to the client, there are many such rights that may be forfeited by the attorney's negligence.").

### 2. Reasonable Steps to Prevent Any Inadvertent Disclosure

In a December 22, 2023 letter to the Commission, the NuRide Defendants stated that the NuRide Production was inadvertently produced and contained documents that are "presumptively attorney-client privileged"—a privilege that "may belong to any of the NuRide Affiliates, or may belong to individual investors, or may be a joint privilege." (Walker Decl. Ex. 25 at 1.) On no less than three occasions (November 10, 2023, November 17, 2023, and May 24, 2024), the Commission asked in writing that the NuRide Defendants provide the basis for their contention that there had been no waiver of privilege. In particular, on May 24, 2024, SEC counsel asked the NuRide Defendants to "provide the basis for [their] contention that the 5,721 documents contained in the NuRide NY-9454 production were inadvertently produced and that any privilege has not been waived, including identifying the precautions taken to prevent inadvertent disclosure and all efforts to rectify the error." (Walker Decl. Ex. 10 at PDF 10.) To date, the NuRide Defendants have declined to provide any such information, including what, if any, measures were taken to prevent the disclosure of privileged documents. To the extent the NuRide Defendants proffer such information (as is their burden) in any response to the Commission's current motion, the Commission will respond accordingly in its reply. In either event, the NuRide Defendants cannot satisfy the initial, dispositive first element of Evidence Rule 502(b), that the production was inadvertent, because, as noted above, it was intentional. If the Court agrees, it need not evaluate whether the NuRide Defendants can satisfy the other sections of Evidence Rule 502(b).

### 3. The NuRide Defendants Did Not Take Reasonable Steps to Correct Any Disclosure

Nor can NuRide Defendants show that they took reasonable steps to correct any purportedly inadvertent disclosure of the 2016-2017 Documents—Evidence Rule 502(b)'s third requirement. The SEC had NuRide's production for almost six years and used documents from it in investigative testimony, including at least three documents now on the NuRide Privilege Log in Shah's 2023 testimony and one in Ahmed's 2017 testimony. (Walker Decl. ¶¶ 29, 34.)

After the NY-10138 Investigation began, the SEC pointed NuRide's current counsel to communications—including some the NuRide Defendants now assert are privileged—to explain Shah's dual role as attorney and marketer of NuRide securities. (*Id.* ¶ 33.) NuRide said nothing in response and made no attempt to claw the documents back. (*Id.*) From 2017 through June 2023, the NuRide Defendants took no steps at all to recover the documents, which is itself evidence of waiver. (*Id.*) *See Atronic Int'l, GMBH v. SAI Semispecialists of Am., Inc.*, 232 F.R.D. 160, 165 (E.D.N.Y. 2005) (delay of six days supported waiver); *In re Actos Antitrust Litig.*, 703 F. Supp. 3d 468, 472 (S.D.N.Y. 2023) (eight days).

It took a second SEC notice, almost six months later, before NuRide's counsel did anything at all. Even then, the response was not reasonable. NuRide's initial privilege log, generated by search terms rather than a bona fide privilege review covered 20,000 documents; its second log contains 5,721, with the various defects described herein (*see infra*, Section II.B). This repeated submission of privilege logs with blanket assertions was itself a possible further and independent waiver. *S.E.C. v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 167 (S.D.N.Y. 2014) ("failure to serve indices of privileged documents in a timely and proper manner operates as a waiver of any applicable privilege"). Nevertheless, the NuRide Defendants' production was intentional and thus they cannot satisfy the initial, dispositive first element of Evidence Rule

502(b), thus the Court need not evaluate whether the NuRide Defendants can satisfy the other sections of Evidence Rule 502(b).

### B. NuRide's Privilege Log is Overbroad and Insufficient

Shah's testimony and the NuRide Privilege Log itself suggest that NuRide's search-generated privilege assertions are overbroad and many of the communications at issue were never privileged at all. Shah and MSA Law were "dual-role" attorneys: they provided legal advice, but they were also important marketers for the NuRide offerings. NuRide's Privilege Log ignores Shah and MSA Law's non-legal roles. The search-generated and facially inadequate privilege log makes blanket assertions of "attorney-client privilege" for each of its 5,721 entries, seems to assume that all attachments to any communications are privileged, and includes vast quantities of communications that appear to relate to Edwin Shaw, Ahmed and Shah's joint venture, and to marketing of NuRide securities—exactly the kind of communications whose privileged nature is cast into doubt by Shah's and MSA Law's dual roles.

#### 1. It is the NuRide Defendants' Burden to Demonstrate that Communications Were Privileged

Shah and MSA Law played a key non-legal role in marketing NuRide securities. (*See supra* page _.) As Shah testified, investors were aware that "we market, MSA markets." (Walker Decl. Ex. 20 at 121:7.) Shah was also a part owner of Edwin Shaw LLC, which she described as a "vehicle for bringing in investors for NuRide and for other projects." (*Id.* 28:13-15.) And although MSA Law's marketing work for NuRide was billed to Edwin Shaw, Shah testified that during trips to China, she present[ed] "PowerPoints describing what the project was," including audited financials, proof the entity owned cars, and NuRide's contracts with eligible projects. (*Id.* at 44:13-24.)

Given Shah's joint ownership with Ahmed of Edwin Shaw, she occupied three roles at once: business partner, marketer, and attorney. Like in-house counsel, she and MSA Law "often fulfill[ed] the dual role of legal advisor and business consultant." *MSF Holding, Ltd. v. Fiduciary Tr. Co. Int'l*, No. 03-CV-1818(PKL)(JCF), 2005 WL 3338510, at *1 (S.D.N.Y. Dec. 7, 2005). "In cases involving corporations and in-house counsel, courts have maintained a stricter standard for determining whether to protect confidential information through the attorney-client privilege." *TIG Ins. Co. v. Swiss Reinsurance Am. Co.*, 21-CV-8975 (NSR) (JCM), 2023 WL 6058649, at *3 (S.D.N.Y. Sept. 18, 2023) (quoting *Bank Brussells Lambert v. Credit Lyonnais (Suisse), S.A.*, 220 F. Supp. 2d 283, 286 (S.D.N.Y.)). Courts are concerned that such counsel "are more likely to mix business and legal functions." *Id.*

The NuRide Defendants must show that the "the predominant purpose of the communication is to render or solicit legal advice." *In re Cty. of Erie*, 473 F.3d 413, 420(2d Cir. 2007) (citation omitted). Although outside counsel may be more "independent" and less likely "to play dual roles," there is no presumption that communications with outside counsel are privileged. *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 38 (E.D.N.Y. 2013), *aff'd*, 29 F. Supp. 3d 142 (E.D.N.Y. 2014); *see also, e.g., see GenOn Mid–Atl., LLC v. Stone & Webster, Inc.,* No. 11 Civ. 1299(HB)(FM), 2011 WL 5439046, at *9 (S.D.N.Y. Nov. 10, 2011) (information from outside counsel on project management and project status was not privileged because it was business, not legal advice).

**2. NuRide's Search-Generated Privilege Log is Insufficient Under Any Standard**

The NuRide Privilege Log fails under the ordinary standard governing privilege logs. Its blanket privilege assertions of "attorney-client privilege" over all 5,721 entries mentioning them, generated by automated searches rather than a substantive review, are plainly insufficient to carry

the NuRide Defendants' burden. *See, e.g., von Bulow v. von Bulow*, 811 F.2d 136, 147 (2d Cir. 1987) ("[B]lanket assertions seeking to invoke an attorney-client privilege" are insufficient to satisfy proponent's evidentiary burden for the assertion of privilege).

Additionally, the NuRide Privilege Log's blanket assertions extend to attachments to the relevant emails. The first page illustrates the problem. Twenty documents attached to an email titled "Re: Progress Report - Not comfortable" are withheld under the same bare "Attorney-Client" Notation, with no filenames and any description of their subject matter (Walker Decl. Ex. 13, rows 17 to 37); however, the "mere fact that [] documents were attachments to emails between… counsel does not automatically render them privileged." *Cassard v. Omnicom Media Grp. Holdings, Inc.*, No. 25-CV-2201 (JLR) (RWL), 2026 WL 1492903, at *1 (S.D.N.Y. May 28, 2026).

Other entries carry subject lines pointing toward marketing rather than legal work. For example, an email from a law firm bears the subject line "IATR Sponsorship-Your Ad Needed," (Walker Decl. Ex. 13, row 42), while several MSA Law and Shah emails display the subject lines "EB5 Supermarket Ad" (*id.* at rows 583, 646, 3631) and "Please Update NYCGT on EB5Projects.com" (*id.* rows 925, 928, 1975, 2004, 3970). The Log draws no distinction between these entries and any genuinely privileged communication.

This is not a circumstance where a log is missing an occasional detail. For 1,570 documents, it provides nothing beyond a creation date, and 1,947 lack even a subject line or title, making it impossible to discern even the general subject matter of the communications.
This falls well short of what the Local Rules require even for categorical privilege logs, which do not "obviate a party's obligation to provide 'sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure." *In re Aenergy, S.A.*, 451 F. Supp.

3d 319, 325 (S.D.N.Y. 2020) (*quoting United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996)). Given Shah and MSA Law's non-legal roles, indication of their mere participation in a communication is insufficient to allow such an analysis.

In short, the Log reflects the kind of "conclusory [and] *ipse dixit* assertions" that cannot carry a party's burden of establishing that a legal privilege applies. *Hayden v. Int'l Bus. Machs. Corp.*, 21-CV-2485 (VB) (JCM), 2023 WL 4622914, at *3 (S.D.N.Y. July 14, 2023). Even absent a finding of waiver, the NuRide Defendants must be compelled to produce all non-privileged communications, produce redacted versions of any communications that are not entirely privileged, and produce a detailed log demonstrating that every withheld or redacted communication had the predominant purpose of obtaining or rendering legal advice.

## CONCLUSION

For the foregoing reasons, the Commission respectfully requests that the Court grant its motion and enter an Order requiring the NuRide Defendants to produce the documents listed in the SEC's April 16 Letter.

Dated: New York, New York
September 10, 2026

Respectfully submitted,

SECURITIES AND EXCHANGE COMMISSION

s/ Chevon Walker
Chevon Walker
Austin Thompson
Counsel for Plaintiff
(212) 336-0090 (Walker)
(212) 336-9074 (Thompson)
WalkerCh@sec.gov
ThompsonAu@sec.gov

**CERTIFICATE OF WORD COUNT**

Pursuant to Rule III.C. of the Court's Individual Practices in Civil Cases and Local Rule 7.1(c), I hereby certify that the foregoing memorandum contains 8,221 words, exclusive of the cover page, and tables. This certificate was prepared based on the word-count function in Microsoft Word.

Dated: New York, New York
September 10, 2026

s/ Chevon Walker
Chevon Walker