# Exhibit 27

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
SECURITIES AND EXCHANGE COMMISSTION,

Plaintiff, New York, N.Y.

v. 23 Civ. 10210(VSB)(RWL)

NADIM AHMED, *et al*.,

Defendants.
------------------------------x

July 21, 2026

Before:

HON. ROBERT W. LEHRBURGER,

U.S. Magistrate Judge

APPEARANCES

SECURITIES AND EXCHANGE COMMISSION
Attorneys for Plaintiff
BY: CHEVON WALKER
AUSTIN THOMPSON

MORRISON COHEN LLP
Attorneys for NuRide Defendants
BY: JASON P. GOTTLIEB

McGUIRE WOODS, LLP
Attorneys for Shah Defendants
BY: LAUREN H. MANN
MOLLY M. WHITE

ICAN LAW
Attorneys for Shah Defendants
BY: NICOLAS MORGAN

mention of a clawback provision, any nonwaiver agreement, or anything -- they make no mention of a privilege review. They don't describe reasonable measures to prevent the production of attorney-client privileged documents.

Our Standard Form 1662 allows documents to be used in other investigations. That is a form that is received with every SEC subpoena in the investigative process.

So we do understand the terms under which these documents were produced. There was not a nonwaiver agreement, there was no clawback provision in the cover letters, and every indication that these documents were produced deliberately, by and through counsel, after a detailed review.

You can look at the cover letters at Exhibit 12. They are extensive. They show that Ms. Shah carefully categorized and filed documents in specific places. She was aware of everything that was in this production. There is no way in which this production was -- purported to be a production that would not waive privilege.

And just to step back and revisit that categorical privilege log issue, if the SEC had in some way waived privilege over thousands of documents, I think you could expect from us that you would get a detailed privilege log explaining why each one of those documents was privileged. So it -- there is not a goose and gander situation here.

We had those documents. Okay? They were used -- some

of them were used at testimony. We have had to go back and redact testimony transcripts because of these clawback assertions.

THE COURT: Yeah. Look. Look. I think -- I don't -- clearly, the goose and the gander are clearly different. I get that and --

MR. THOMPSON: Yes.

THE COURT: -- I accept that. So it is not tit for tat.

Mr. Gottlieb, it seems -- it sounds like that what happened was Ms. Shah got whatever -- or her client got a subpoena for -- and investigative subpoena, provided material in response to it, didn't make a reservation or didn't -- about clawing back privileged documents. Maybe she wasn't aware that this should even be an issue or would become an issue. But I am not sure what legal leg you have to stand on that the privilege hasn't been waived.

MR. GOTTLIEB: A couple of legal legs, your Honor.

First is I referred earlier to FRE 502. 502(a) specifically refers to disclosures made in federal proceedings or to a federal office or agency. The waiver extends to "communications or informations only if the waiver is intentional, the disclosed and undisclosed communications or informations concern the same subject matter, and they ought, in fairness, to be considered together." I think that the SEC

has problems with all of these.

One, on the intentionality of the waiver, I am not sure that Ms. Shah was intentionally waiving privilege here. There was a production, there was an intentional production, sure. But, again, Ms. Shah, not a litigator, not an SEC litigator, it is unclear to me whether she understood.

There are absolutely documents that were -- that are attorney-client privilege, that would be attorney-client privilege documents absent a waiver here. And what that triggers in me is the question, you know, under -- I am not sure where anyone in the SEC was sitting at the time, but certainly New York and D.C. both have ethics opinions on the disclosure of privileged materials by a third party. If somebody is producing materials to you that are obviously privileged, you have an ethical obligation to reach out to the producing party and say, hey, you produce these documents that appear to be attorney-client privilege. Did you mean to do that or, you know, was this inadvertent? I am not sure that the SEC ever did that. If they did, and Ms. Shah confirmed, said, nope, all those are absolutely nonprivileged, they are all yours, go right ahead, then you are right; my legal legs are much shorter here. But I am not sure that anyone ever did that. I think they just took the documents and used them, which is not consistent with ethical opinions.

When I first learned of that, I was, frankly, somewhat

shocked that none of that had taken place, and that is why I asserted the, the privilege over them.

THE COURT: Okay.

MR. GOTTLIEB: So that is, that is -- okay.

THE COURT: Okay.

MR. GOTTLIEB: The other part, though, is --

THE COURT: Hold on.

MR. GOTTLIEB: -- in fairness --

THE COURT: Hold on.

MR. GOTTLIEB: I apologize. Go ahead.

THE COURT: No. I just want to say that I had not appreciated and/or recalled that provision specifically about disclosures made in government proceedings where, as you said, there are certain requirements——intentionality, fairness, etc. So I agree those may be considerations that might require more thought.

But go on to your next point, please.

MR. GOTTLIEB: I think that the next point was, returning to 502(a)(3), is to say that the materials ought, in fairness, to be considered together. The materials that were produced in the earlier investigation were for a different investigation. There is a different investigation number. That earlier investigation was settled. It is done.

I don't think that it is particularly fair to consider those materials together with this incident. There is only one