UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

-against-

NADIM AHMED a/k/a NADIM KHAN, MEHREEN SHAH a/k/a MONA SHAH, NURIDE TRANSPORTATION GROUP, LLC, NYC GREEN TRANSPORTATION GROUP, LLC, MED TRANS EB-5 FUND, LLC, NYC EV MOBILITY LLC, GRAVITAS NYC REGIONAL CENTER, LLC f/k/a NYC TRANSPORTATION REGIONAL CENTER, LLC, and MONA SHAH & ASSOCIATES, PLLC,

Defendants.

Case No. 23-CV-10210-VSB

**THE NURIDE DEFENDANTS' OPPOSITION TO THE**
**SEC'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS**

**MORRISON COHEN LLP**

Jason Gottlieb
Emma McGrath
909 Third Avenue
New York, NY 10022
(212) 735-8600

*Attorneys for Defendants Nadim Ahmed a/k/a Nadim Khan, NuRide Transportation Group, LLC, NYC Green Transportation Group, LLC, and NYC EV Mobility LLC*

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ........ 1

STATEMENT OF FACTS ........ 4

ARGUMENT ........ 8

I. The Commission's Requests Are Not Proportional to the Needs of the Case ........ 8

A. Requests for "All Communications" and "All Documents" Are Overbroad ........ 8

B. The Requests Impermissibly Seek Materials "Through the Present" ........ 9

C. The Requests Described as "Central to the Fraud Allegations" Are Not Proportional to the Alleged Fraud Theory ........ 10

II. Proportionality Must Account for the Pending Motion to Dismiss and the Limitations Bar ........ 13

III. The 2016-2017 Documents Remain Privileged, and the Commission's Waiver Theory Fails ........ 15

A. The Commission Cannot Show a Knowing, Intentional Waiver ........ 15

B. The SEC Failed To Fulfill its Own Ethical Obligations ........ 17

C. The NuRide Defendants' Privilege Log Is Sufficient, and Forcing an Individualized Review Is Another SEC Abusive Litigation Tactic ........ 18

IV. Any Production the Court Orders Should Be Limited and Its Cost Allocated ........ 20

CONCLUSION ........ 21

# TABLE OF AUTHORITIES

**Cases** **Pages**

*Chow v. SentosaCare, LLC*,
2020 WL 5623976 (E.D.N.Y. July 21, 2020) .... 9

*Hedgeye Risk Mgmt., LLC v. Dale*,
2023 WL 4353076 (S.D.N.Y. July 5, 2023) .... 8, 9

*In re OpenAI, Inc., Copyright Infringement Litig.*,
800 F. Supp. 3d 602 (S.D.N.Y. 2025) .... 8

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*,
104 F.R.D. 103 (S.D.N.Y. 1985) .... 15

*Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*,
2013 WL 12503118 (E.D.N.Y. July 18, 2013) .... 15

*Quinby v. WestLB AG*,
245 F.R.D. 94 (S.D.N.Y. 2006) .... 8, 20

*Sec. & Exch. Comm'n v. Cohen*,
332 F. Supp. 3d 575 (E.D.N.Y. 2018) .... 14

*U.S. v. Wells Fargo Bank, N.A.*,
2015 WL 5051679 (S.D.N.Y. Aug. 26, 2015) .... 16

*United States ex rel. Bilotta v. Novartis Pharmaceuticals Corporation*,
2015 WL 13649823 (S.D.N.Y. July 29, 2015) .... 12

**Statutes and Rules**

Fed. R. Civ. P. 26(b)(1) .... 8

Fed. R. Civ. P. 26(c) .... 20

Fed. R. Evid. 502(a) .... 15

Fed. R. Evid. 502(b) .... 15

N.Y. Rules of Pro. Conduct 4.4(b) .... 17

Pub. L. No. 116-283, § 6501 .... 13

Defendants Nadim Ahmed a/k/a Nadim Khan, NuRide Transportation Group, LLC, NYC Green Transportation Group, LLC, and NYC EV Mobility LLC (together, the "NuRide Defendants"), submit this memorandum of law in Opposition to the SEC's Motion to Compel the Production of Documents (the "SEC Motion").

## PRELIMINARY STATEMENT

The SEC asks the Court to force four defendants, already rendered functionally insolvent by this case, to undertake an expensive and redundant document-production and privilege-review exercise. Indeed, the SEC is seeking materials it either already possesses or can obtain more easily elsewhere – in a case that has been running, in one form or another, for the better part of a decade. Moreover, the documents the SEC is demanding range from documents that are arguably relevant, but which the NuRide Defendants have already agreed to produce, to documents that are completely irrelevant to claims or defenses in this case. The motion should be denied.

The SEC's starting premise is the misleading assertion that the NuRide Defendants "have produced just 27 documents" and have refused to participate further in discovery. That is false. The NuRide Defendants made **ten productions** during the SEC's pre-suit investigations, as well as making numerous substantive informational presentations. In addition to these prior productions, the SEC also collected over 119,000 documents from the Shah Defendants, along with taking sworn investigative testimony, and extensive third-party discovery (including documents and testimony). The SEC's "27 documents" figure thus refers only to a litigation-stage production request the NuRide Defendants agreed to answer, and ignores the substantial trove of the NuRide Defendants' records already in the SEC's possession. If the SEC did not have the documents before bringing this case, that does not speak to the NuRide Defendants' unwillingness to produce; it speaks to the SEC's sloppy investigation and premature rush to Court before having

information that the SEC now says is necessary to prove that what it said in its Complaint was true.

Inexplicably, the SEC further ignores that the NuRide Defendants agreed (in a July 27, 2026 meet-and-confer) to perform numerous additional searches and reviews for responsive documents that they agreed to produce, including materials related to (1) vehicle registration information for all vehicles purchased by NYC Green; (2) contracts, agreements, and invoices between NYC Green and Uber Technologies, Inc. and any other rideshare or taxi company; (3) contracts, agreements, and invoices between NuRide and Uber Technologies, Inc. and any other rideshare or taxi company; (4) NYC Green and/or NuRide personnel who drafted and/or distributed NYC Green offering documents; (5) general ledgers, balance sheets, and financial statements for NuRide, NYC Green, EV Mobility, and Med Trans through the present; and (6) contracts, agreements, loans, promissory notes, and employment agreements between the NuRide Defendants, the Shah Defendants, and Terrazola Builders. The SEC complains that these documents have not yet been produced, in order to portray the NuRide Defendants as uncooperative, but the reality is far more prosaic: the NuRide Defendants lack the resources to conduct more than a single review and production, let alone multiple rounds, which incur both lawyers' time costs and true third-party "hard costs" for vendors. Accordingly, the NuRide Defendants are awaiting resolution of this Motion to Compel before incurring those costs and undertaking any further production.

Finally, the SEC has not "narrowed" its requests, as it claims. The April 16, 2026 Letter ("April 16 Letter") referenced in the SEC's Motion, Dkt. 102 (Corrected Walker Decl.), Ex. 10, expressly states that it is "not a withdrawal of our demand for all documents requested" in the SEC's original 138 requests. And even the purportedly narrowed requests encompass twenty

categories, many with multiple subparts, directed to four defendants and rife with demands for "all communications" and "all documents" – the very formulations courts routinely recognize as hallmarks of overbroad and unduly burdensome discovery. *Id.*

Against this backdrop, the SEC's Motion should be denied for three reasons.

First, the requests are disproportionate to the needs of the case. The SEC bears the burden of establishing both relevance and proportionality. But much of what the SEC seeks is cumulative of materials already collected, obtainable from more convenient sources, or wholly unrelated to the claims alleged in the Complaint. The SEC should not be allowed to compel financially distressed defendants to underwrite duplicative discovery without a good faith basis.

Second, many requests target conduct that falls outside the applicable limitations period. Given the NuRide Defendants' pending motion to dismiss, these claims are unlikely to survive, mooting the SEC's requests.

Third, the SEC is not entitled to privileged documents from 2016-2017 produced by the Shah Defendants (on behalf of the NuRide Defendants). Those documents were produced years ago by counsel who were participants in the underlying communications during a separate investigation that has since settled. The documents remain privileged, and the SEC's waiver theory is incorrect. The NuRide Defendants should not be required to undertake a manual review of thousands of documents to confirm the self-evident proposition that communications between the NuRide Defendants and their counsel are privileged.

Worse yet, the SEC's insistence as to these privileged documents reflects a wholesale abdication of the SEC's ethical duties. By the SEC's own account, Mona Shah & Associates, PLLC ("MSA") produced documents that were on their face privileged, but the SEC said nothing, sat on them for years, and is only using them now to bring another case. Under the applicable

ethical rules of professional conduct (notably Rule 4.4 of the New York Rules of Professional Conduct), the SEC should have alerted Ms. Shah at the time that the production contained privileged documents that were inadvertently produced. The SEC did no such thing, violating its ethical duties – and is now attempting to weaponize its own ethical lapse.

The Court should deny the SEC's motion. If the Court orders any additional discovery, it should limit production to genuinely relevant, non-duplicative materials, and account for the parties' dramatically unequal resources in allocating any associated costs.

* * * * *

As the NuRide Defendants have stated throughout these proceedings, the SEC's overbearing investigation has destroyed their businesses, bankrupting them in the process. The SEC is now attempting to prevail in litigation by forcing the NuRide Defendants to bear untenable costs. The strategy is clear: inflict costs so high that counsel is forced to withdraw; and because the entities cannot proceed *pro se*, the NuRide Defendants will be forced to default, granting the SEC a "win" without ever having to prove its (improper and baseless) allegations. The SEC can then seek a judgment of over $66 million, and seek to hold that against the entities' principal, Mr. Ahmed. Through this plan, the SEC thus seeks to impoverish a human being for the rest of his natural life, which is, short of prison, the worst punishment the government can possibly impose. This Court should not countenance such strongarm tactics from the federal government, or from an agency charged with upholding the law.

## **STATEMENT OF FACTS**

The SEC initially served investigative subpoenas in a 2016 investigation, *In the Matter of NuRide Transportation*, NY-9454. Dkt. 102, Exs. 14-16. In November 2016, certain of the NuRide Defendants – through their then-counsel – produced roughly 119,000 documents in

response to those subpoenas. SEC Motion at 4. As part of that same investigation, the SEC also took sworn testimony from Nadim Ahmed and Mona Shah, and an additional NuRide employee. *Id.* That investigation resulted in a 2018 settlement by Edwin Shaw LLC, and is long closed. *Id.* at 5.

The pre-suit investigation underlying this action, *In the Matter of NYC Green Transportation, LLC*, NY-10138, generated still more document and testimonial discovery. The NuRide Defendants made ten separate productions during the investigation, in addition to making numerous factual presentations to the SEC. The SEC further collected extensive third-party discovery, including bank records belonging to the NuRide Defendants. Dkt. 105, Ex. 16, Discovery Conference Transcript at 19:10-11, 46:13-14; Dkt. 82, NuRide Defendants' Letter to Hon. Robert W. Lehrburger Regarding Discovery Disputes; *see also* Dkt. 81, Exs. 5-8, NuRide Objections to SEC RFPs (referencing 10 productions bearing Bates Nos. TNGSEC_0000001-0019392).

After filing this litigation (and arguing that discovery should not be stayed pending the defendants' motions to dismiss), the SEC served its First Requests for Production in December 2025: 45 requests on Ahmed, 43 on NuRide, 26 on NYC Green, and 24 on EV Mobility. SEC Motion at 2. The NuRide Defendants objected on January 8, 2026, on numerous grounds including undue burden, relevance, proportionality and that the requests sought documents the SEC already possessed. Dkt. 81, Exs. 5-8, NuRide Objections to SEC RFPs.

After a meet-and-confer on February 4, 2026 in which the NuRide Defendants demonstrated the vast overbreadth of the requests as compared to the SEC's needs or the relevance of the requested documents, the SEC sent the April 16 Letter which purported to "narrow" the requests. Dkt. 102, Ex. 10. That purported "narrowing" set out twenty numbered request

categories, many with multiple subparts and most directed at multiple defendants, and expressly stated that the list "is not a withdrawal of our demand for all documents requested" in the original requests. *Id*. at 1 (emphasis added). The April 16 Letter, sent on a Thursday, requested a response just three business days later, on Tuesday, April 21, 2026.

On April 21, the NuRide Defendants responded, agreeing to produce (and then producing) documents responsive to Request 5 (the $11 million management-investment materials) and objecting to the remainder on grounds of relevance, undue burden and cost, timeframe, the statute of limitations, and privilege. Dkt. 81, Ex. 11, NuRide Defendants' Response Letter.

Further meet-and-confer conferences ensued. In one such meet-and-confer with the SEC on July 27, 2026, the NuRide Defendants agreed to search for, and produce (to the extent responsive materials exist) documents in response to the following of the SEC's requests:

- Request 3: Documents sufficient to identify vehicle registration information for all vehicles purchased by NYC Green.
- Request 4: All contracts, agreements, and invoices between NYC Green and Uber Technologies, Inc. and any other rideshare or taxi company; and all contracts, agreements, and invoices between NuRide and Uber Technologies, Inc. and any other rideshare or taxi company.
- Request 10: Documents and Communications sufficient to identify NYC Green and/or NuRide personnel who drafted and/or distributed NYC Green offering documents.
- Requests 13 and 14: General ledgers, balance sheets, and financial statements for NuRide, NYC Green, EV Mobility, and Med Trans through the present.
- Requests 16, 17, and 18: All contracts, agreements, loans, promissory notes, employment agreements between the NuRide Defendants, the Shah Defendants, and Terrazola Builders.

Because the NuRide Defendants lack funds, and for the sake of efficiency, the NuRide Defendants are waiting for this motion to resolve before conducting all required searches at once. Of course, the NuRide Defendants contest the relevance of these documents; the NuRide Defendants made

this production offer in an attempt to reach a compromise, but the SEC is not interested in any compromises in this case.

Unlike the requests above, Request 20 seeks the release of roughly 5,721 documents (the so-called "2016-2017 Documents") that the NuRide Defendants produced in the 2016 NY-9454 investigation and later identified as privileged. Dkt. 102, Ex. 26, NuRide Defendants' April 2, 2024 Letter to SEC. Those documents were produced on the clients' behalf by Defendant MSA – counsel who were themselves participants in many of the communications at issue. *See id*. During the 2016-2017 investigation, when MSA produced these documents – many of which consist of obvious attorney-client communications or other documents protected by the attorney work-product doctrine – the SEC notably failed to observe to MSA that the production contained privileged documents, as is required by the applicable ethical rules. N.Y. Rules of Pro. Conduct R. 4.4(b).

After the NuRide Defendants asserted privilege over those documents in this action, the SEC sequestered the documents and the testimony transcripts in which they appear, pending resolution of this dispute. The NuRide Defendants prepared and provided a computer-assisted privilege log, Dkt. 81, Ex. 13, but the SEC has insisted that the NuRide Defendants manually review each and every one of these documents to see if privilege really applies. Gottlieb Decl., Ex. 1, SEC May 24, 2024 Letter Re Privilege Log. The NuRide Defendants estimate that such a review would easily cost over $100,000, and the result would be merely to confirm that an overwhelming majority of the documents are privileged.

# ARGUMENT

## I. THE COMMISSION'S REQUESTS ARE NOT PROPORTIONAL TO THE NEEDS OF THE CASE

Rule 26(b)(1) permits discovery of material that is both "relevant to any party's claim or defense and proportional to the needs of the case." As the movant, the SEC "has the initial burden of demonstrating relevance and proportionality," and only if it meets that threshold does the burden shift to the responding party to show undue burden. *In re OpenAI, Inc., Copyright Infringement Litig.*, 800 F. Supp. 3d 602, 612 (S.D.N.Y. 2025). The proportionality inquiry expressly weighs "the parties' resources," and the cost-shifting factors this District applies include "[t]he total costs of production, compared to the resources available to each party" and "[t]he relative ability of each party to control costs..." *Quinby v. WestLB AG*, 245 F.R.D. 94, 102 (S.D.N.Y. 2006). Here, the disparity could not be starker: the NuRide Defendants are effectively bankrupt, while the movant is a federal agency. Considered in their totality, the controlling proportionality factors – the parties' relative access to the information, their relative resources, and the marginal benefit of the requested discovery – all weigh strongly against compelling any production of materials that are not narrowly focused, obviously relevant, and unavailable from any other sources.

### A. Requests for "All Communications" and "All Documents" Are Overbroad

The SEC's Request Nos. 4, 6, 15, 16, 17, and 18 demand various categories of "all contracts," "all communications," and "all agreements, contracts, loans, promissory notes" between the NuRide Defendants and third parties. *See* SEC Motion at 13-19. This Court has held that where, as here, requests begin with "All Documents" or "All Communications," such requests are "a red flag for overbreadth and undue burden" and "presumptively improper." *Hedgeye Risk Mgmt., LLC v. Dale*, 2023 WL 4353076, at *1 (S.D.N.Y. July 5, 2023). Even where some discovery from a party is warranted, it "must be proportional, not overly broad, and not an undue

burden," and the appropriate course is to narrow overbroad requests, not to grant them wholesale. *Id.* at *2. Because each of the SEC's Request Nos. 4, 6, 15, 16, 17, and 18 demand "all" of at least one category of document, they are presumptively overbroad and should not be compelled unless severely limited to only documents that are absolutely relevant and necessary to obtain from the NuRide Defendants.

### B. The Requests Impermissibly Seek Materials "Through the Present"

Request Nos. 13 and 14 seek general ledgers and financial statements "through the present." *See* SEC Motion at 18. In other words, the SEC seeks materials covering a period **three years after** the Complaint was filed in November 2023. The appropriate temporal scope of discovery is determined through "balancing the nature of the claims, the relevance and nature of the information sought, and the burden of producing the information" and courts regularly limit attempts to extend discovery "to the present" absent a showing of relevance for the later period. *Chow v. SentosaCare, LLC*, 2020 WL 5623976, at *4-5 (E.D.N.Y. July 21, 2020) (ordering a time-frame extension of one year, as opposed to the requested four years, on grounds of relevance) (collecting cases).

The SEC offers no explanation for why post-Complaint financial performance bears on its allegations, except to say that "the Defendants continued to provide status updates concerning the NuRide Offering projects to investors well after they invested" and that "[s]uch additional communications with investors are relevant." SEC Motion at 19. But Request Nos. 13 and 14 do not even mention communications with investors. They only ask for "[g]eneral ledgers, balance sheets, and financial statements," and the SEC has not tied the relevance of these financial documents to the alleged "communications with investors" or stated whether those investor communications occurred after November 2023.

Given the SEC's failure to justify the relevance of the requested time period for which discovery is sought, the Motion to Compel should be denied, at a minimum, as to all documents created after the Complaint was filed.

### C. The Requests Described as "Central to the Fraud Allegations" Are Not Proportional to the Alleged Fraud Theory

The SEC's motion next identifies six categories of documents that it characterizes as "Central to the Fraud Allegations." Two are no longer relevant here: the NuRide Defendants have produced documents responsive to the SEC's request concerning the alleged $11 million management contribution; and discovery concerning the 2018 Edwin Shaw payment is unwarranted because that claim falls outside the applicable statute of limitations. *See infra*, Section II.

According to the SEC, the four remaining categories, which include Request Nos. 3, 4, 7, 8, 9, 10, 13, 14, 15, 16, 17, and 18, are relevant because (again, according to the SEC) investors were misled concerning the structure of NYC Green and NuRide's role in managing it. SEC Motion at 12-19. However, the documents the SEC seeks in relation to this claim are, among other things, vehicle-registration records, rideshare agreements and invoices with Uber, documents identifying the individuals involved in preparing offering materials, and years of entity financial records, including documents concerning Terrazola Builders, an entity that "appears to be owned, at least in part, by Ahmed." *Id.*

As a threshold matter, the Complaint did not articulate any theory of fraud in connection with these issues. Instead, it alleged only that the "structure and operation of NYC Green's business was inconsistent" with representations made to investors. Dkt. 1, Compl. ¶ 101. As the NuRide Defendants explained in their motion to dismiss, the Complaint failed to identify what specific representations were supposedly false, to whom they were made, or why they were

misleading. Dkt. 33, Motion to Dismiss ("MTD") at 5, 20-21. Now, in attempting to justify expansive discovery, the SEC is attempting to backfill a fraud narrative that the Complaint omitted.

Indeed, in discovery, the NuRide Defendants have learned that the SEC now contends investors were misled regarding NuRide's role in managing NYC Green. But that contention is nonsense: the offering documents amply disclosed that relationship. The Private Placement Memorandum informed investors that "The Issuer, NYC Green Transportation Group, LLC will be managed by NuRide Transportation Group, LLC" (Gottlieb Decl., Ex. 2, PPM at 32), and that "All management and other powers relating to day-to-day control of the LLC will be held and exercised by the Manager [NuRide], to the maximum extent permitted by law" (*Id.* at 12). Likewise, the Operating Agreement provided that "The LLC shall be managed by the Managing Member, NuRide Transportation Group, LLC ('NuRide Transportation Group'), and that NuRide could "Acquire by purchase, lease or otherwise any real or personal property which may be necessary, convenient or incidental to the accomplishment of the purpose of the LLC" and "Engage in any kind of activity and perform and carry out contracts of any kind (including contracts of insurance) necessary or incidental to, or in connection with, the accomplishment of the purpose of the LLC" (Gottlieb Decl., Ex. 3 at § 5.1).

These were not obscure internal records. They were core offering documents provided to investors, and produced to the SEC during its investigation. They expressly disclosed that NuRide would manage NYC Green and exercise day-to-day control over its operations. Having possessed those documents for years before initiating this action, the SEC cannot now justify broad and expensive discovery by asserting a novel theory that depends on investors having been misled (about a relationship that those same documents repeatedly described). Because the offering documents expressly disclosed NuRide's managerial role, the SEC has not shown why broad

discovery into NuRide's role managing vehicle registrations, Uber contracts, Terrazola Builders, offering-document preparation, and years of financial records is relevant at all, much less proportional to any theory alleged in the Complaint.[1]

Courts have rejected the SEC's strategy here of pleading a broad theory of fraud to justify additional discovery that might uncover new wrongdoing. For example, in *United States ex rel. Bilotta v. Novartis Pharmaceuticals Corporation*, 2015 WL 13649823, at *4 (S.D.N.Y. July 29, 2015), the government attempted to justify discovery beyond the relevant time period by arguing that such discovery "may assist it in discovering information relevant to those claims" and "the additional years' worth of information increases the likelihood that relevant trends and fluctuations will become clear." The court denied the request on the grounds that the government had identified no "specific instances" of wrongful conduct in the sought additional time period and thus found that "the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Because the SEC has identified no specific instances of misconduct tied to its discovery request, and only advanced generalized theories of wrongdoing, the Court should deny the SEC's remaining requests (Request Nos. 7, 8, 9, 15).[2]

---

[1] While the SEC offers that the NuRide Defendants need not reproduce the "over 300 documents [it has received] from Uber," it does not acknowledge that the time it would take for the NuRide Defendants to identify and review these 300 documents, which it has not done due to costs, and then screen them out of any hypothetical production, would be more costly than simply reproducing all the materials. Given the NuRide Defendants' precarious financial circumstances, they should not be required to produce, or re-produce, third-party materials that the SEC either already has or cannot rationally tie to a claim in the Complaint.

[2] While Request Nos. 3, 4, 7, 8, 9, 10, 13, 14, 15, 16, 17, and 18 are all improper and unjustified by the SEC's generalized, non-particular allegations of fraud, the NuRide Defendants have agreed to search for, and produce (to the extent responsive materials exist), documents responsive to Request Nos. 3, 4, 10, 13, 14, 16, 17, and 18. That said, if the Court finds any further document production unwarranted, the NuRide Defendants, lacking funds, would gratefully accept that limitation as well.

## II. PROPORTIONALITY MUST ACCOUNT FOR THE PENDING MOTION TO DISMISS AND THE LIMITATIONS BAR

A substantial portion of the requested discovery reaches conduct that is likely time-barred, as argued in NuRide Defendants' pending motion to dismiss. *See* Dkt. 33, MTD at 9-12. Indeed, most of the SEC's case will be shown to be time-barred if (when) the Court ultimately determines that virtually all of the SEC's claims are untimely, because the William M. Thornberry National Defense Authorization Act for Fiscal year 2021 ("NDAA") Pub. L. No. 116-283, § 6501, 134 Stat. 3388, 4626 (2021), which amended the statute of limitations applicable to securities fraud claims, does not apply retroactively. Dkt. 33, MTD at 12-19.[3]

As set forth in the NuRide Defendants' motion to dismiss, only one investor in NYC Green invested after November 21, 2018. As such, the SEC's Section 5 claims are untimely as to all but that one investor, regardless of any finding on the retroactivity of the NDAA, as the NDAA change only applies to scienter-based offenses. Additionally, when the plain language of the NDAA is applied, the fraud claims will be time-barred for all but that one investor as well.

For example, in regard to Request No. 6, the SEC alleges that the operative transfers "in connection with Edwin Shaw's 2018 payment to the Commission" occurred on or about February 5, 2018 – more than five years before the Complaint was filed on November 21, 2023. Dkt. 1, Compl. ¶ 117. Accordingly, the Edwin Shaw payment is outside of the applicable statute of limitations. The SEC asserts that the NDAA supplies a ten-year limitations period for its scienter-based claims and applies retroactively – but that retroactive application is contrary to clear

---

[3] Put simply, the 10-year statute of limitations for fraud applies to cases "pending on, or commenced on or after" the date of the NDAA. This case was neither – it was brought years later. Accordingly, the NDAA does not apply retroactively to this case. While we concede, as we must, that some courts have found otherwise, we respectfully submit that those courts have simply misread the statute, and we are confident that the district court or Second Circuit will apply the statute as written, not as the SEC imagines it to be.

Supreme Court precedent, and is precisely what the NuRide Defendants have challenged in their pending motion to dismiss. SEC Motion at 15. Granting the SEC's motion to compel discovery for Request No. 6 would thus necessitate taking a position on the merits of this dispute that exceeds the scope of these discovery motions.

Further, the SEC's Complaint was impermissibly vague about what statements were alleged to be fraudulent, to whom those statements were made, and when, as set forth in the NuRide Defendants' Motion to Dismiss. *See, e.g*., Dkt. 33, MTD at 20-22. Given that the vast majority of investors in NYC Green – all but one – made their investments outside the limitations period, and there is no specific allegation as to what misstatement was made to any particular investor, the SEC's requests are nothing more than a wide trawling net on a fishing expedition. *See id.* at 12 n.1. Since the SEC apparently uses documents from long-closed investigations to bring new ones later, there is all the more reason to preclude the SEC from conducting widescale dragnets to collect documents it can hold apparently forever, and use whenever it wishes.

The NuRide Defendants do not ask the Court to resolve the statute of limitations question here, but the pendency of that dispute bears directly on proportionality. Courts have declined to permit discovery into claims that appear time-barred on the face of the complaint, reasoning that "[a]llowing discovery to proceed with respect to claims that appear to be time-barred ... would constitute entertaining those claims." *Sec. & Exch. Comm'n v. Cohen*, 332 F. Supp. 3d 575, 587 (E.D.N.Y. 2018) (citations and alterations omitted) . At a minimum, the possibility that the pre-November-2018 claims – and the Edwin Shaw allegations in particular – will not survive the motion to dismiss weighs heavily against imposing on these defendants the cost of discovery directed at them.

## III. THE 2016-2017 DOCUMENTS REMAIN PRIVILEGED, AND THE COMMISSION'S WAIVER THEORY FAILS

Request No. 20 is not a request for discovery at all; it is an effort to strip the NuRide Defendants of privilege over roughly 5,721 documents produced years ago in a since-closed investigation, where the underlying actions are likely outside the statute of limitations.

Under Federal Rule of Evidence 502(b), a disclosure to a federal agency in a federal proceeding "does not operate as a waiver" where the disclosure was inadvertent, the holder took reasonable steps to prevent disclosure, and the holder promptly took reasonable steps to rectify the error. *See generally Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co*., 104 F.R.D. 103 (S.D.N.Y. 1985). Privilege belongs to the client. A waiver must typically be intentional or knowing and an inadvertent, later-rectified disclosure is "a mistake, rather than a knowing waiver." *Id.* at 105. Where, as in *Lois* itself, only a small fraction of a large production is later claimed as privileged, the evidence supports a finding of inadvertence. *Id.*

### A. The Commission Cannot Show a Knowing, Intentional Waiver

Rule 502 distinguishes intentional disclosures, governed by Rule 502(a), from inadvertent ones, governed by Rule 502(b); and "an inadvertent disclosure of protected information can never result in a subject matter waiver." *Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*, 2013 WL 12503118, at *7 (E.D.N.Y. July 18, 2013).

The SEC's theory of intentional waiver rests on the absence of a privilege log at the time of the 2016 production, and general statements such as Ms. Shah's statement that NuRide met its "obligations under the subpoena by searching carefully and thoroughly for everything called for by the said subpoena" and Mr. Ahmed's statements that he "welcome[d] the opportunity to clear the air regarding potential wrong doing" and "welcomed [the SEC] to read my texts and emails."

SEC Motion at 21-22. Neither of these comes anywhere close to saying that a production of privileged documents was being made with full knowledge and intent of a privilege waiver.

Mr. Ahmed is not a lawyer, and his general statements were not waivers of privilege, but most obviously read as general statements that he was fine to produce documents to the SEC, because he had done nothing wrong. Ms. Shah, for her part, is an immigration lawyer, not a litigator. She does not regularly prepare 100,000-document productions to the SEC that require a privilege screen.

The SEC's argument that the production of privileged documents was intentional relies on these generic statements. SEC Motion at 21. But there is no explicit indication that Ms. Shah was intending to waive privilege by producing "everything called for," shorthand that obviously implied the exclusion of privileged materials. The SEC also relies on its form subpoenas and instructions to assert that Ms. Shah's production of privileged materials must have been purposeful – without any indication that was actually the case.

Courts in this district routinely find that the production of a small percent of privileged documents does not constitute waiver. "[G]iven the scale of document production in contemporary litigation, errors – even those involving multiple documents – are inevitable." *U.S. v. Wells Fargo Bank, N.A.*, 2015 WL 5051679, at *3 (S.D.N.Y. Aug. 26, 2015) (finding that the "number of documents clawed back cannot be considered in a vacuum, but rather must be viewed in relation to the total number of documents produced" and that where 1,000 privileged documents made up less than 1% of a total production, the production was inadvertent) (quotations and citations omitted). Under these circumstances, and where the production of privileged materials ultimately amounted to less than 5% of the total number of documents, such production cannot be considered intentional.

### B. The SEC Failed To Fulfill Its Own Ethical Obligations

The SEC should have followed the governing ethical rules in 2016-17. It did not. Under New York Rules of Professional Conduct 4.4(b), "A lawyer who receives a document, electronically stored information, or other writing relating to the representation of the lawyer's client and knows or reasonably should know that it was inadvertently sent shall promptly notify the sender." Although this Rule does not specifically require that the receiving lawyer refrain from reading or continuing to read the document, a lawyer who "continues to read a document that contains privileged or confidential information may be subject to court-imposed sanctions, including disqualification and evidence-preclusion." Rule 4.4(b), Comment 2. Such sanctions – at the very least, preclusion of use of the documents – are warranted here.

Many of the documents the SEC now claims are fair game are privileged on their face. Some of these materials include emails between Mr. Ahmed and his counsel seeking legal advice. The SEC could have alerted Ms. Shah that she produced materials that are on their face privileged; and the SEC's failure to flag those as potentially privileged was (and is) a serious ethical breach. The SEC chose to sit on them until years later, when, in a separate investigation, the SEC is trying to use the same privileged documents against the NuRide Defendants. Remarkably, even after being expressly informed that the materials were privileged, the SEC continues to claim that the production must have been purposeful, despite never bothering to confirm that conclusion.

In its Motion to Compel, the SEC faults the NuRide Defendants for not somehow responding sooner. The SEC argues that the Defendants should have taken some action after it allegedly used "at least three documents now on the NuRide Privilege Log in Shah's 2023 testimony and one in Ahmed's 2017 testimony." SEC Motion at 24. Meanwhile, during the subsequent NY-10138 Investigation, the SEC purportedly sent counsel communications that are

now also asserted to be privileged, so that counsel could "explain Shah's dual role as attorney and marketer of NuRide securities." SEC Motion at 24.

Though the SEC implies that these oversights are somehow concessions of a deliberate production, neither the Motion, nor the Declaration it cites back to, explains the exact documents to which the SEC is referring, or the manner in which they were presented to the Defendants. The SEC certainly is not arguing that it flagged the documents as potentially privileged and asked for confirmation of the waiver (which would have been the appropriate measure). The Court should not credit the SEC's implication that the privileged nature of these documents, or their production source, should have been immediately evident from their face and caused the Defendants to claw back such materials. Instead, the Court should inquire why the SEC did not think to reach out to Defendants and inquire whether certain material was privileged when it began to review communications between a lawyer and her clients concerning legal matters.

To be sure, once the SEC raised the source of these documents to experienced securities litigation counsel (the undersigned), the NuRide Defendants immediately asserted privilege – literally at the first occasion it was possible to do so. It is highly unethical for the SEC to have played "hide the ball" contrary to the New York Rules of Professional Conduct, and then to blame the NuRide Defendants – who had no particular reason to know of these inadvertent productions – for some lapse in asserting the privilege.

### C. The NuRide Defendants' Privilege Log Is Sufficient, and Forcing an Individualized Review Is Another SEC Abusive Litigation Tactic

Once the NuRide Defendants asserted privilege, the NuRide Defendants also produced a privilege log for each of their 5,721 entries. Dkt. 102, Ex. 26, NuRide Defendants' April 2, 2024 Letter to SEC. Based purely on speculation, the SEC objects to this privilege log.

To begin with, the privilege log was generated in large part by a computer-assisted search. This method is prima facie reliable, and if the SEC has particular concerns about any particular documents on the log, it could have raised questions about those particular documents at any time. *Id.* Instead, the SEC has maintained its insistence on a broad, enormously expensive manual review of the entire log.

The SEC uses the privilege log issue as yet another club to batter the Defendants economically. The SEC has been insisting not that the NuRide Defendants look at any particular documents, but instead that the NuRide Defendants review **each** of the 5,721 entries and make particularized findings as to each entry. SEC Motion at 25-28. The cost implications are enormous. If NuRide counsel spent only 1 minute on each of those 5,721 entries – including reading the document, considering its privilege status, and noting the result – that would total 95.35 hours of attorney work. That time alone would cost mid-five-figures. And if counsel had to spend an average of 5 minutes on each one of just one-quarter of the documents (a reasonable assumption, given that privilege calls are sometimes more involved), that review would add another 120 hours, more than doubling the cost. Thus, we estimate that the review the SEC is insisting on would cost financially bereft parties more than $100,000. Ultimately, that review, should it occur, would likely confirm that the overwhelming majority of the documents are privileged (with the few that may not be privileged turning out to be not particularly relevant in any event).

We further note that the SEC is unwilling to eat its own cooking: the SEC's privilege logs have not been nearly as detailed or informative as the NuRide Defendants' logs. The SEC has instead relied on "categorical" privilege logs that simply declare vast categories of documents to be privileged, even where (1) there is reason to think that many of those documents are not privileged, and (2) the dates, senders, and recipients of those documents are highly relevant to

defenses that the NuRide Defendants may assert. *See* Dkt. 98, NuRide Defendants' Memorandum of Law in Support of Motion to Compel at 10-11; Gottlieb Decl., Ex. 5, SEC's Privilege Log.

If the SEC – which can surely afford to perform the requisite review – is not willing to produce a detailed log, then it has no basis to assert that the NuRide Defendants must do so. Frankly, we respectfully suggest that the Court should find it offensive that the SEC is loudly insisting that Defendants meet a standard that the SEC is not itself willing to meet – particularly where the stakes are so horribly one-sided. A person's financial life is at stake; the SEC should be held to at least the same standards it is insisting the NuRide Defendants uphold. If the SEC is not willing to produce a particularized, human-reviewed privileged log, then it should not be heard to insist that the Defendants it impoverished must do so.

## IV. ANY PRODUCTION THE COURT ORDERS SHOULD BE LIMITED AND ITS COST ALLOCATED

This Court should not order any further productions from the NuRide Defendants. But if the Court is inclined to compel any further production, it should tailor the relief. First, it should sharply narrow the requests to genuinely relevant, specifically identified, non-cumulative materials, and strike the SEC's requests which call for "all communications," "all documents," materials concerning post-Complaint activity, and documents concerning the SEC's claim that the NuRide Defendants committed fraud by misrepresenting NuRide's managerial role in NYC Green.

Second, given the extraordinary disparity in the parties' resources, the Court should condition any burdensome search on an appropriate allocation of cost under Rule 26(c), which authorizes the Court to protect a responding party "from undue burden or expense by conditioning discovery on the requesting party's payment of the costs of discovery." *Quinby v. WestLB AG*, 245 F.R.D. 94 (S.D.N.Y. 2006).

Third, as to the 2016-2017 privileged documents, the Court should deny the SEC's motion in full. The documents are privileged, and they are appropriately logged. If the Court is minded to order anything further on that issue, the Court should direct the SEC to specifically identify which among them are apparently non-privileged from the face of the privilege log, **and also** actually relevant to any claims alleged in the Complaint and then proceed with individualized review of what should be an extremely small subset of documents.

## CONCLUSION

For the foregoing reasons, the NuRide Defendants respectfully request that the Court deny the SEC's motion to compel in its entirety.

Dated: October 1, 2026

**MORRISON COHEN LLP**

By: *Jason Gottlieb*

Jason Gottlieb
Emma McGrath
909 Third Avenue
New York, NY 10022
Telephone: 212.735.8623
Facsimile: 212.735.8708
jgottlieb@morrisoncohen.com
emcgrath@morrisoncohen.com

*Attorneys for Nadim Ahmed, NuRide Transportation Group, LLC, NYC Green Transportation Group, LLC, and NYC EV Mobility LLC*

## WORD COUNT CERTIFICATION

Pursuant to Local Civil Rule 7.1 of the Southern District of New York, I hereby certify that the total number of words in this memorandum of law, excluding the caption, table of contents, table of authorities, signature block, and this word count certification, is 6,365.

*/s/ Jason Gottlieb*
JASON GOTTLIEB