**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>NADIM AHMED a/k/a NADIM KHAN, MEHREEN SHAH a/k/a MONA SHAH, NURIDE TRANSPORTATION GROUP, LLC, NYC GREEN TRANSPORTATION GROUP, LLC, MED TRANS EB-5 FUND, LLC, NYC EV MOBILITY LLC, GRAVITAS NYC REGIONAL CENTER, LLC f/k/a NYC TRANSPORTATION REGIONAL CENTER, LLC, and MONA SHAH & ASSOCIATES, PLLC,<br><br>Defendants. | CIVIL ACTION No. 23-cv-10210-VSB |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS MONA SHAH, MONA SHAH & ASSOCIATES, PLLC, GRAVITAS NYC REGIONAL CENTER, LLC, AND MED TRANS EB-5 FUND, LLC'S MOTION FOR RULE 11 SANCTIONS**

## PRELIMINARY STATEMENT

The Commission's Opposition ("Opp.") confirms the motion rather than answering it. The Shah Defendants went to considerable lengths to assess the accredited-investor status of the EB-5 investors — diligence the Commission's own exhibits document in detail. Yet the dispositive fact is the Commission's own formal Rule 36 responses. More than two years after it filed this action, the Commission told the Shah Defendants, in its formal Rule 36 responses, that it could neither admit nor deny whether the investors were accredited because, "after reasonable inquiry," it "has not received sufficient supporting documents . . . concerning investors' financial statuses at the time of investment." It said so even while citing the very suitability forms on which its opposition now rests. A plaintiff that, more than two years after filing, cannot even deny accreditation did not have evidentiary support to certify non-accreditation at the outset. And when the Shah Defendants served this motion, the Commission did not answer that problem — it amended the admission away. Rule 11 asks whether the Commission had evidentiary support on November 21, 2023. Its own record answers no.

## I. THE COMMISSION'S DECEMBER 2025 ADMISSION ESTABLISHES THE ABSENCE OF PRE-FILING SUPPORT.

To be sure — and the Commission's exhibits leave no doubt — the Shah Defendants produced an enormous volume of evidence documenting the care they took to evaluate accreditation. The Commission's own Exhibit 38, the July 28, 2023, cover letter from Mona Shah & Associates, PLLC's ("MSA Law") then-counsel, explains, for each of the twelve investors the Staff identified, the basis on which MSA Law reasonably believed that investor was accredited, attaching gift agreements, bank statements, and source-of-funds checklists. The Commission requested those materials (Walker Decl. Ex. 31), received them, and later received the more than 72,000 pages the Shah Defendants produced in January 2026. That is the backdrop against which the December 2025 admission must be read — and it is what makes the admission dispositive.

Asked to admit that all investors in each offering were accredited, the Commission responded in December 2025 that, "after reasonable inquiry, the Commission lacks sufficient knowledge or readily available information to enable it to admit or deny," because it "has not received sufficient supporting documents and/or testimony, including that which concerns [the] investors' financial statuses at the time of investment, to allow it to admit or deny." (White Decl. Ex. 11, Resp. to Req. Nos. 2–3, 6–7, 9.) That is not a hedge about the certainty a binding admission requires. It is a representation about the Commission's own evidence: after reasonable inquiry, it had not received sufficient documents concerning investor financial status — the precise evidence an allegation of non-exemption depends upon.

The Commission answers that the same responses identified, by Bates number, the suitability forms of X.Y., F.E., and K.P. (Opp. at 15-16, 27.) That makes the point. With those very forms in hand, and after reasonable inquiry, the Commission still told the Shah Defendants it "has not received sufficient supporting documents" to admit or deny accreditation. The Commission does not explain how forms it judged insufficient to deny accreditation in 2025 were sufficient to allege non-accreditation in 2023. And one of the three forms it cited no longer bears even the weight the Commission placed on it: the Commission now concedes that later records "raise a possibility" that F.E. "may have had additional assets or income." (Opp. at 17 n.8.)

Two consequences follow. First, the Commission could not even deny accreditation. Its complaint alleges that the offerings "were not eligible for exemptions" because "at least one investor's eligibility form indicated that the investor was not accredited." (Compl. ¶¶ 43, 47–48.) Had the Commission held evidence for that allegation, it could have denied the Shah Defendants' requests to admit that the investors were accredited. It did not — it said it lacked the documents to admit or deny. A plaintiff that cannot deny accreditation two years after filing a complaint did

not have the evidence to allege it at the outset. Second, the gap was only wider in 2023: if the Commission's documents were insufficient in December 2025, they were insufficient at filing, when it had gathered even less. An allegation the pleader itself later admits it lacked the documents to support is an allegation made without evidentiary support. Fed. R. Civ. P. 11(b)(3).

The Commission's response to its own admission was to erase it. After the Shah Defendants served this motion under Rule 11's safe harbor, the Commission amended its December 2025 responses — deleting the "has not received sufficient supporting documents" language and converting its answers to flat denials, now resting only on the objection that the question "remains the subject of discovery." (Compare White Decl. Ex. 11 with White Decl. Ex. 17.) A plaintiff cannot cure a Rule 11 deficiency by withdrawing, mid-safe-harbor, the admission that reveals the deficiency. The amendment confirms the point it was meant to bury: the Commission firmed up its position only after the motion, not before the complaint. The Commission's trial counsel confirmed as much at the April 1, 2026, conference, acknowledging that the Staff "had to . . . drop everything" to review the January 2026 production after receiving a letter from the Shah Defendants notifying the SEC of their intention to file a Rule 11 motion. (White Decl. Ex. 16.)

Anticipating this, the Commission will urge that Rule 11 requires only "evidentiary support," a lower bar than the certainty needed to admit a request under Rule 36. The distinction does not help it, because the December 2025 admission was not about certainty — it was about documents. The Commission did not say it had support but preferred to await discovery; it said, after reasonable inquiry, that it "has not received sufficient supporting documents . . . concerning investors' financial statuses." That is a statement about the evidentiary record — the same record that had to support ¶ 43 of the Complaint. Where the pleader concedes it lacked the documents its

allegation required, the allegation was "utterly lacking in support" in the sense the Commission itself invokes. *Kiobel v. Millson*, 592 F.3d 78, 83 (2d Cir. 2010).

Nor do the Commission's authorities for the proposition that Rule 11 "requires a reasonable inquiry, not an exhaustive one," help it. (Opp. at 19, 23–24 (*citing SEC v. Rayat*, No. 21-cv-4777 (LJL), 2022 WL 1423300, at *3 (S.D.N.Y. May 5, 2022); *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 401–02 (1990); *DRE Health Corp. v. Two Canoes, LLC*, No. 23-cv-10643 (NRB), 2026 WL 550185, at *10 (S.D.N.Y. Feb. 27, 2026)).) The motion does not fault the Commission for failing to gather every investor's file; it shows that the Commission's own account is that the evidence it did gather was insufficient. And if the Commission needed discovery to support non-accreditation, Rule 11(b)(3) told it how to plead: by specifically identifying contentions that "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." It did not. It certified ¶ 43 of the Complaint as supported, and then told the Shah Defendants it lacked the documents to deny accreditation.

The length of the investigation changes nothing. The Commission emphasizes a June 2021 formal order and more than 60,000 pages from banks and USCIS. (Opp. at 6.) But those materials went to fund flows and source of funds — an inquiry the Commission itself calls "distinct from the accreditation inquiry." (*Id.* at 5.) Its accreditation-specific requests began only in June 2023, five months before filing (*id.* at 7–10), and they produced the records the Commission later said were insufficient.

## II. THE COMMISSION'S "FACIALLY NON-ACCREDITED" CLAIM CANNOT BE RECONCILED WITH ITS OWN ADMISSION.

The Commission's opposition asserts that the suitability forms it held before filing showed the investors to be unaccredited "on their face." (Opp. at 10–11 (*citing* Walker Decl. ¶¶ 17, 19).) That assertion collapses against the Commission's own conduct and its own admission.

The Commission did not treat the forms as self-proving. Its June 13, 2023, subpoena demanded, for each of the thirty identified investors, not only the suitability form but "supporting documentation evidencing that investor's net worth at the time of investment and/or the investor's income for the two most recent years." (Walker Decl. Ex. 31.) A litigant already holding facially dispositive proof of non-accreditation does not subpoena the financial records required to establish it. The subpoena is the Commission's own acknowledgment that the forms did not answer the question.

Nor could they. Accreditation for these EB-5 investors is not a face-of-the-form determination; it turns on the composition of net worth, the character and timing of any gift, and the tracing of funds across multiple accounts — the very "supporting documents . . . concerning investors' financial statuses at the time of investment" the Commission said it needed. The Commission's own Division of Corporation Finance treats a high minimum investment as significant evidence bearing on accredited status, *see* Securities Act Release No. 33-9415, 78 Fed. Reg. 44,771 (July 10, 2013); Latham & Watkins LLP, SEC No-Action Letter (Mar. 12, 2025), and these offerings required a $500,000 minimum. The point is not that any particular investor was accredited; it is that the determination the Commission's claim depends upon is a documented, fact-intensive inquiry, not a glance at a form.

The Commission's investor-by-investor recitation (Opp. at 22–23) does not change the analysis. The Complaint did not allege that six investors were unaccredited; it alleged that the offerings "were not eligible" for exemption (Compl. ¶¶ 43, 47–48), which under the Commission's own authority turns on whether the issuer reasonably believed a purchaser was accredited based on all the information available at the time of sale. *SEC v. GenAudio Inc.*, 32 F.4th 902, 942–43 (10th Cir. 2022). A form shows what an investor wrote, not what the issuer knew. That is why

the Commission subpoenaed the supporting records — and why, once it had them, it still could not deny accreditation.

The Commission's treatment of Med Trans investor F.E. illustrates the same error. The Commission concedes that F.E.'s form "left the income section blank" (Opp. at 12, 22; Walker Decl. Ex. 55 at 3, 7), but accredited status is disjunctive — net worth ***or*** income, 17 C.F.R. § 230.501(a)(5)–(6) — as the form told investors. A form silent on income makes no representation that the investor failed the income test, and it cannot support the Complaint's allegation that the investor "represented a net worth and annual income below that of an accredited investor" (Compl. ¶ 140); a blank field is an unanswered question a reasonable inquiry would have asked, not evidence of non-accreditation.

The Commission's NYC Green showing also disregards the exemptions that offering actually claimed. NYC Green offered its interests under Section 4(a)(2), Regulation D, and Regulation S — not Rule 506(c). (Opp. at 4; Compl. ¶¶ 67–68.) Regulation S may be relied upon for offshore sales "even if coincident offers and sales are made in accordance with Regulation D inside the United States," 17 C.F.R. § 230.500(g), and an offshore sale to a non-U.S. person — a status that turns on residence, *id.* § 230.902(k) — neither requires accreditation nor integrates with the domestic offering. *See* Release No. 33-9415, 78 Fed. Reg. at 44,786. Yet the Commission offers J.T.S. as an "unaccredited" NYC Green purchaser (Opp. at 11, 22) on a form identifying a U.K. citizen residing in Manchester, employed in the U.K., with no U.S. address or visa history and assets held "abroad" in the "UK." (Walker Decl. Ex. 44, ECF No. 120-18 at 2–7.) The I-526 materials the Commission held before filing identify his U.K. passport and trace his investment from U.K. accounts to escrow. (*Id.* Ex. 48, ECF No. 120-22 at 2, 4.) The Commission's own residence showing omits him. (Opp. at 13; Walker Decl. ¶ 18.) The point is not J.T.S.'s status; it

is that the Commission counted, as proof that NYC Green was ineligible for any exemption, a purchaser its own file placed outside the United States — applying a one-purchaser rule borrowed from an exemption NYC Green never invoked. That is not a reasonable inquiry into the exemptions actually claimed.

The Commission cannot hold both positions at once. If the forms showed non-accreditation "on their face" in 2023, the Commission could not truthfully have represented in December 2025 that it still "ha[d] not received sufficient supporting documents . . . concerning investors' financial statuses at the time of investment" to admit or deny accreditation. The statements are irreconcilable. Either the forms were self-proving, in which case the December 2025 admission was unfounded, or they were not, in which case the Commission certified non-exemption in 2023 without the evidence its own admission shows the determination required. Rule 11 requires the latter answer.

None of this asks the Court to decide whether any investor was accredited. It establishes only that the Commission alleged non-exemption without performing — and, by its own account, without the documents required to perform — the inquiry its claim demanded.

## III. THE COMMISSION'S REMAINING ARGUMENTS DO NOT RESCUE ITS OPPOSITION.

*The September 2026 email.* The Commission devotes a section to the charge that the motion mischaracterized its September 11, 2026 email. (Opp. at 18, 27.) The motion quoted that email in full, including the sentence the Commission accuses it of omitting — that "the evidence developed in discovery does not change [its] conclusion." (White Decl. Ex. 18.) There was no misquotation. And the point does not turn on which clause one emphasizes: the Commission's September 2026 assertion that it "had a basis to deny" the accreditation requests "when [it] served [its] original responses" cannot be reconciled with those original responses, which stated that it

lacked sufficient documents to admit or deny. The contemporaneous response is the admission; the later account is argument.

*The call notes and Wells submissions.* The Commission leans on a former staff attorney's notes of a June 13, 2023 call with Ms. Shah, then unrepresented. (Opp. at 8, 20, 24.) The notes are the Staff's own unsworn, after-the-fact summary of its own interview, offered for the truth of what Ms. Shah supposedly said — self-serving hearsay entitled to little weight, and in all events silent on any investor's finances. At most they describe a general practice, not any investor's accreditation. Ms. Shah's sworn testimony a month later is to the contrary: MSA Law did not permit anyone to invest until "we're satisfied with the source of funds and with all the documentation." (Walker Decl. Ex. 1 at 135:14–23.) Nor does the October 23, 2023 Wells submission help the Commission. A statement that diligence "may not have been 100% complete" on "a few occasions" (Opp. at 13–14) is advocacy urging the Commission not to sue — not a concession that any investor was unaccredited, and not evidence the Commission possessed about any investor's financial status.

*The proper vehicle.* The Commission's reliance on *Hernandez v. Miller*, No. 22-cv-6964 (VSB), 2022 WL 17584025 (S.D.N.Y. Dec. 12, 2022), and *Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d 407 (S.D.N.Y. 2003), misapprehends the motion. The Shah Defendants do not ask the Court to adjudicate any investor's accreditation on a sanctions motion. They ask whether the Commission had evidentiary support when it certified that no exemption applied — a question its own admission answers, without any weighing of the evidence. That the certification may also fail on the merits does not immunize it from Rule 11; it underscores the deficiency. Nor is the motion directed to any alternative exemption theory: it challenges the certification that the offerings were ineligible for exemption because at least one investor in each was not accredited.

*Purpose and delay.* Finally, the suggestion of improper purpose and delay inverts the record. The motion was not held back for advantage; it awaited the Commission's own December 2025 admission and the January 2026 production that exposed the pre-filing deficit — events whose timing the Commission alone controlled. And a measured public statement describing a filed motion is not an improper purpose; it is a defendant's ordinary account of its own case, and it bears not at all on whether the Commission satisfied Rule 11(b) when it signed the complaint.

## CONCLUSION

For the foregoing reasons and those stated in the opening memorandum, the Shah Defendants respectfully request that the Court grant the motion and award the relief sought therein.

Dated: New York, New York
November 4, 2026

Respectfully submitted,

**MCGUIREWOODS LLP**

*/s/ Molly M. White*
Molly M. White (pro hac vice)
1800 Century Park East, 8th Floor
Century City, CA 90067
Telephone: (310) 956-3423
MWhite@mcguirewoods.com

Lauren H. Mann
1251 Avenue of the Americas, 20th Floor
New York, NY 10020
Telephone: (212) 548-7042
LMann@mcguirewoods.com

**INVESTOR CHOICE ADVOCATES NETWORK**

*/s/ Nicolas Morgan*
Nicolas Morgan (pro hac vice)
453 S. Spring Street, Suite 400
Los Angeles, CA 90013
Telephone: (310) 849-0384
nicolas.morgan@icanlaw.org

*Attorneys for Defendants Mona Shah, Mona Shah & Associates, PLLC, Gravitas NYC Regional Center, LLC, and Med Trans EB-5 Fund, LLC*

## LOCAL RULE 7.1(c) CERTIFICATION

I hereby certify that the foregoing Reply Memorandum of Law complies with the word-count limitations set forth in Local Rule 7.1(c). The foregoing Reply Memorandum contains 2,707 words, exclusive of the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates, but does include material contained in footnotes, according to the word processing software used to prepare it.

Dated: New York, New York
November 4, 2026

Respectfully submitted,

**McGuireWoods LLP**

*/s/ Molly M. White*
Molly M. White (pro hac vice)
Lauren H. Mann

**Investor Choice Advocates Network**

*/s/ Nicolas Morgan*
Nicolas Morgan (pro hac vice)

*Attorneys for Defendants Mona Shah, Mona Shah & Associates, PLLC, Gravitas NYC Regional Center, LLC, and Med Trans EB-5 Fund, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of November, 2026, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will automatically send an email notification of such filing to all attorneys of record in the above-referenced case.

Dated: New York, New York
November 4, 2026

*/s/ Molly M. White*
Molly M. White